**IN THE MATTER OF THE DISCIPLINARY PROCEEDING BETWEEN**

**NEW YORK CITY**                                          **SED File No. 31,399**
**DEPARTMENT OF EDUCATION**
                    **Complainant**

    **and**

**REYNA ARROYO**
                    **Respondent**

————————————————/

**Before:**        Lisa D. Pollack, Hearing Officer

**Appearances:**   <u>For the Department</u>
                   Chrishana White, Esq.

                   <u>For the Respondent</u>
                   David Barrett, Esq.

### BACKGROUND

The New York City Department of Education (hereinafter the "Department") brought this action, pursuant to Education Law §3020-a against the Respondent, Reyna Arroyo, for incompetent and inefficient service, neglect of duty and unwillingness and/or inability to follow procedures and carry out normal duties, during the 2014-2015, 2015-2016 and 2016-2017 school years. (Department Exhibit 1) Reyna Arroyo (hereinafter referred to as "Respondent") entered the New York City Department of Education approximately 13 years ago. Respondent, under File #0726249, is a tenured teacher assigned to The College Academy (06M464), located in District 6 in Manhattan. She has no record of prior 3020-a discipline.

Prior to my appointment, a prehearing conference was held on November 15, 2017 by phone conference. The undersigned was thereafter appointed to hear and decide whether there is just cause for the disciplinary action against the Respondent. The hearing was held before me on November 28, 29, 30, December 8, 13, 14, and 15, 2017 and on January 5, 16, 17 and 18, 2018 at the offices of the New York City Department of Education at 100 Gold Street, New York, New York. [1] The parties agreed that closing statements would be made in lieu of written briefs.

---

[1] At a prehearing conference on November 16, 2017 as well as at the November 28, 2017 arbitration Mr. Barrett called for the production of any records on SOHOs and IEPs for students in Ms. Arroyo's class. At the November 16, 2017 prehearing telephone conference I ruled that the request was

## RESPONDENT'S MOTION TO DISMISS

By Motion dated November 8, 2017, Respondent filed a Motion to Dismiss in the instant matter. In this regard, Respondent submits that the charges proffered against her are defective as they failed to adhere to Education Law §3020-a(2)(a), as there has been no vote by the employing board on probable cause. In this regard, Respondent claims that the "Notice of Determination of Probable Cause on Education Law §3020-a Charges" has no date for the Executive Session as mandated. Respondent further claims that the charging papers were signed by Principal Timothy Sigerson and not the school board as required. Thus, Respondent claims that the Hearing Officer has limited, if any, authority to rule or issue any penalty or determine just cause on the charges presented by the Department in this matter. In so doing, Respondent relies upon Matter of Schumer v. Holzman, 60 N.Y. 2d 46, 51.

In support of her argument, Respondent relies on the language of Education Law §3020-a(2)(a) ("[T]he employing board... shall determine...whether probable cause exists to bring a disciplinary proceeding against an employee pursuant to this section.") and Education Law §2590-j(7)(b)("Charges may be initiated by the community superintendent against such employee.") Respondent further argues that although Education Law §2590-h grants the Chancellor the same powers as the employing Board, the statute limits the Chancellor's ability to delegate those powers by specifying that the Chancellor may delegate such duties to community superintendent. In other words, Respondent argues that the language permitting the delegation of authority to community superintendents also serves to prohibit delegation of that authority to anyone else.

The Department argues that the School Board does not need to vote on probable cause. In this regard, although Education Law §3020-a(2)(a) does state that upon receipt of charges, the employing board shall vote whether probable cause exist to bring a disciplinary proceeding against an employee, it cannot be read in isolation. Instead, it should be read in conjunction with New York Education Law §2590-h. New York Education Law §2590-h states, in pertinent part, that the Chancellor shall have the following powers and duties:

"(19) Delegate any of his or her powers and duties to such subordinate officers or employees as he or she deems appropriate and to modify or resend any power and duty so delegated."

Thus, Section 2590-h unambiguously gives the Chancellor the authority to bring the charges against the tenured employee and gives the Chancellor authority

---

overbroad and denied it. At that time, I advised counsel that if he had a specific student in mind, he could raise that at the arbitration. At no time did Counsel for the Respondent ask for the records of any specific students and he admitted that there were no specific problems, including no behavior problems with the students. In view of his failure to do so, I ruled that this request was overbroad and not relevant to the issue of Ms. Arroyo's pedagogy on November 28, 2017. I affirm this ruling for the same reasons here.

to delegate that power to other employees, including school principals like Timothy Sigerson. Consequently a school board vote was not required and the charges against the Respondent were brought properly and in compliance with the law.

To find any other way would require me to disregard the plain and unambiguous language of subsection (19), which on its face contains no restriction on the Chancellor's ability to delegate "any of his or her powers and duties." Educ. Law §2590-h(19). It would require me to read into this section a restriction that is not there-that the Chancellor may delegate authority to bring disciplinary charges to no one other than the community superintendent.

**      Respondent' argument has been rejected over and over again. See *New York City Dep't of Educ. v. Menchin*, SED file No. 16,739; *New York City Dep't of Educ. v. Janet Washington*, SED file 27,918, *White-Grier v. New York City Dep't of Educ.*, Index No. 106335/2011 (Sup. Ct. New York Court 2012), Art. 75 decision, p. 6-15. Consequently, the procedure followed in this case complied with the statutory requirements. Respondent's motion to dismiss the charges for lack of standing is hereby denied.

### Demand for Materials and Information

On or about November 8, 2017, Respondent filed a request for certain materials, information, and particulars concerning the Charges and Specifications that are the subject of this proceeding. While the Department provided certain documents requested, it did not provide 5 and 6. Respondent's request 5 asks for the following: With respect to all charges alleged against Respondent provide copies of the Suspensions and Office of Hearing Online (SOHO) applications and any Principal's suspension for each student with such reports in the Respondent's classes during the charged years. Respondent's request 6. asks for the following: With respect to all charges alleged against Respondent provide the number of students with Individualized Education Plans (IEPs) for each student with such reports in the Respondent's classes during the charge years. Respondent's request 8 also asked for the following: Provide copies of Respondent's class rosters for the charged school years. There was no evidence presented during the hearing as to whether request 8 was not provided nor was any evidence presented, if not provided, as to why this information is needed. Thus, inasmuch as Respondent did not raise this issue at the arbitration, I find it unnecessary to address this issue herein as insufficient evidence was presented to warrant a finding that providing this information was necessary.

With regard to the remaining 2 requests, the Department objects to them because they are overbroad and there is no nexus between why the Respondent needs this material when there is nothing in the Specification that relates to the need for applications or the student suspensions. Further there is no need for the IEPs. The Specification doesn't address any student behavior. Respondent does not claim that teaching students with IEPs affected her pedagogy. The Specification

simply addresses her pedagogy during these charge years, and that she failed to properly, adequately, and/or effectively plan, and/or effectively execute separate lessons. It does not say anything about student behavior or managing the students' behavior. The Department also claims the material is too burdensome to produce, and that Respondent is merely engaging in a fishing expedition. I agree. To produce records for every student would invade a student's privacy unless there is some connection between these records and the allegations in the charges. If the Respondent could have named certain individual children who made her teaching more difficult those records should be produced. Respondent never produced those names and provided no reason why she needed this material. Thus I find the request overly broad and I deny its production.

## SPECIFICATIONS

1.      During the 2014-2015, 2015-2016 and 2016-2017 school years, Respondent failed to properly, adequately, and/or effectively plan and/or execute separate lessons as observed on or about each of the following dates:

        a.      November 12, 2014;
        b.      March 18, 2015;
        c.      May 14, 2015;
        d.      December 4, 2015;
        e.      May 6, 2016;
        f.      May 18, 2016;
        g.      September 29, 2016;
        h.      January 4, 2017;
        i.      February 16, 2017;
        j.      March 23, 2017; and/or
        k.      May 22, 2017.

2.      Respondent failed, during the 2014-2015, 2015-2016 and 2016-2017 school years, only and/or consistently implement directives and/or recommendations for pedagogical improvement and professional development provided in observation conferences with administrators and/or outside observers; instructional meetings; teacher improvement plans; one-on-one meetings with administrators, school-based coaches, and/or outside observers; as well as schoolwide professional development, with regard to:

        a.      Proper planning, pacing, and/or execution of lessons;
        b.      Using appropriate methods and/or techniques during lessons;
        c.      Demonstrating knowledge and content of pedagogy;
        d.      Designing coherent instruction;
        e.      Using questioning and discussion techniques;
        f.      Using assessment in instruction; and/or
        g.      Student engagement.

THE FOREGOING CONSTITUTES:

1.   Just cause for disciplinary action under Education Law §3020-a;
2.   Incompetent and/or inefficient service;
3.   Conduct unbecoming Respondent's position;
4.   Conduct prejudicial to the good order, efficiency, or discipline of the service;
5.   Neglect of duty;
6.   Substantial cause rendering Respondent unfit to properly perform obligations to the service; and
7.   Just cause for termination.[2]

## DECISION

The evidence presented consisted of the testimony of 5 witnesses and the presentation of 46 exhibits on behalf of the Department, and the testimony of the Respondent and six of her witnesses and presentation of 8 exhibits on behalf of Respondent. Eight joint exhibits were admitted. The evidence, the authorities cited, and the positions and arguments set forth on behalf of the parties have been fully considered whether or not cited or referred to herein. Both parties had full opportunity to present evidence and witnesses, to cross-examine witnesses, make arguments in favor of the respective positions, to make opening and closing statements, and to provide legal authority supporting their positions.

The parties presented their closing statements on January 18, 2018.  A stenographic record was made of all proceedings and complete transcripts were received by the parties and the Hearing Officer. On receipt of the final transcript the record was closed.

Based on my review of the record, my assessment of the credibility of the witnesses, and my review of the probative value of the exhibits and evidence, I find that the Department has met its burden and shown that the Respondent has performed incompetently with respect to the allegations in Specifications 1.a-k, and in specifications 2.a-g. The Specifications proven by the Department in this case constitute just cause for disciplinary action under Education Law §3020-a.

As set forth below, I find the appropriate disciplinary penalty for the violations committed is dismissal.

## THE CREDIBILITY OF THE WITNESSES

---

[2] The Department's exhibits are referred to herein as "D." followed by the appropriate exhibit number. Joint exhibits are referred to herein as "Jt. Exh." and the Respondent's exhibits are referred to herein as "R." followed by the appropriate exhibit number.  Transcript references are noted by "T." followed by the appropriate transcript page number.

The Department called 5 witnesses: The College Academy's Past Principal, Peter Sloman, Assistant Principal at The College Academy, Karen Remer, Assistant Principal at The College Academy, Wendy Poveda, Assistant Principal at the Global Learning Center, Stacey Batista, and The College Academy's present Principal Timothy Siegerson. I find that all five Department witnesses testified credibly and were very persuasive. The demeanor of the administrators, the contents of the observation reports and common sense all point in favor of the administrators. Each of the Department's witnesses has extensive experience in the Department. They all were very concerned that students receive the best education possible and followed the observation system called Advanced and The Danielson Framework for Teaching as they were intended to evaluate Ms. Arroyo. There is nothing in the record that suggests that these individuals were anything but professional in their dealings with Ms. Arroyo. They each gave thoughtful and honest answers. There is no evidence of collusion. In this regard their testimony was consistent with the written Observations. All witnesses stood up to vigorous cross by Mr. Barrett. Furthermore, some of these witnesses did not know other individuals who did observations lending further support to finding their testimony credible. Their testimony is supported in part by Respondent's own witnesses who testified that even though some of them were ethnically Dominicans, they did not feel mistreated by the Administration.

Karen Remer, as did the other Department witnesses listed above, testified credibly as to the failings of Ms. Arroyo's pedagogy. The testimony of Ms. Remer, in particular, was consistent with what she wrote in the evaluator forms three years earlier. No credible evidence was presented as to support Respondent's allegation that Remer was somehow predisposed to give Ms. Arroyo negative evaluations. In this regard, Remer made no effort to "spin" her testimony and gave credit, as did the other evaluators, to Respondent wherever possible. Thus, in most instances I credit the Department's witnesses whenever Respondent and her witnesses contradict them.

With regard to Respondent's witnesses, Respondent presented 7 witnesses: teachers Marlene Sanchez, Jose Tomas Garcia, Jose Medina, Rodolfo Santos, two students referred to as Students "I" and "J," and herself.

I further find that Respondent's six witnesses testified credibly as to what they believed to be the truth. I do not believe that any of them intentionally misrepresented any fact. However for the reasons stated below I do not find their testimony relevant for the events occurring in the charge period, or as credible as the Department's witnesses. I especially do not credit the testimony of Respondent. Her testimony was at best inconsistent with documentary evidence.

Respondent presented several witnesses in her defense. I reviewed their testimony as follows:

Marlene Sanchez is presently a teacher in the South Bronx working for the New York Board of Education. She taught at the College Academy from September 2005 through June 2012. In September 2012 she began work at her current school. She testified that she knew Arroyo when she started to work at the College Academy in 2005 and that Arroyo gave her a lot of support at that time and guided her through her first year of teaching. She observed Arroyo teaching about once a week that first year. Sanchez testified that Arroyo trained her to be a good teacher. Sanchez believes Arroyo to be an excellent teacher. As a result of the training she received from Arroyo, Sanchez believes she received an "effective" rating as a teacher. However, her testimony is irrelevant. Sanchez was never formally assigned by her principal or assistant principals to observe Arroyo. Sanchez never observed her teaching after June 2012. She never did a rated observation of her. Ms. Sanchez is not an administrator and has never conducted a rated observation. Finally the Danielson Rubric was not in effect during the time she taught at the College Academy. At most, Ms. Sanchez is a character witness for Ms. Arroyo.

Jose Tomas Garcia was a teacher at the school during the charged years and did not co-teach with Ms. Arroyo but they shared the same classroom frequently. He was a special-education teacher at the school through the spring of 2016. He worked at the College Academy from 1999 through the spring of 2017 except for 2016/2017 when he was excessed as an ATR. Garcia testified that when he was in her room the students were actively engaged in working, the students were behaving and that Arroyo circulated around the room. Thus, Garcia testified that he saw what he believed was good teaching.

However Mr. Garcia never conducted a rated observation under Advance for Ms. Arroyo. He is not an administrator, an assistant principal nor a principal. He did not observe any of the observations that are listed in the Specification herein. Right now he is not teaching but is a truant officer. Under these circumstances, his testimony is not relevant, as he does not have the necessary credentials to judge Ms. Arroyo's pedagogy.

Mr. Garcia supported Respondent's claim that the Department was unlawfully biased against her. In this regard, Mr. Garcia testified that Ms. Arroyo was discriminated against because she was Dominican and that he felt that Ms. Remer treated Arroyo and Mr. Pena, another teacher, with a little bias because they did not speak the language well. However, this evidence does not support such a finding. In this regard, Mr. Garcia is Hispanic but Ms. Remer rated him effective over and over again. Also, there are several other Dominican teachers at the school who are not on a TIP and there was no negative testimony regarding discrimination by the other individuals who did observations of Ms. Arroyo's pedagogy. Further there is no evidence that Ms. Remer's feelings towards Ms. Arroyo affected her review of Ms. Arroyo's pedagogy, especially since other reviewers concurred with Ms. Remer's findings. Finally, although Garcia testified that Remer was exacting and always wanted more, this is not necessary a negative.

Jose Medina, a social studies teacher, worked for the DOE 17-18 years. During the 2014/15 and 2015/16 school years he worked at the College Academy. He has known Ms. Arroyo for approximately 12 years and was Dean of Students at the Academy for 1 year. Medina has been in Arroyo's classroom and observed her teaching, although not for a formal or informal observation. Medina testified that Arroyo has a very good background in her area of teaching, that her classroom was always in order, and he never had an incident in her classroom that he had to attend to as Dean of Students. Medina also testified that Ms. Arroyo had control of her classroom and was always prepared with a valid lesson. He testified that there was friction between Remer and the bilingual staff. He testified that when Remer spoke to teachers Pena and Arroyo, it was in a condescending matter. She yelled at Mr. Pena once when she was trying to make him understand what she was telling him. Medina testified that at least 70% of the staff felt that Sloman made Remer his "hit man" before he retired. However, as with the other witnesses of Respondent, Medina is not an administrator, is not licensed to conduct observations and is not an AP (Assistant Principal). He never did an observation of Arroyo and was not present when the observations took place. Further, for the reasons I set forth with regard to Mr. Garcia's testimony, I do not find Mr. Medina's testimony relevant.

Rodolpho Santos has a PhD in Chemistry. Presently he is an ATR. He has never been a principal, vice principal and is not licensed or trained to conduct observations. Santos started working at the Academy in 2000 when it was called The High School of Business and Finance as a chemistry teacher. He testified that he has known Arroyo for about 10 years and has had the opportunity to observe her teach in the 2014/2015 school year on many occasions. However on cross-examination Santos admitted that he was excessed during the 2014/2015 school year. He testified that in prior years, he would go by to observe her teach as it helped him with how to handle discipline of students and how to make his lesson plans more accessible to his students. Santos testified that he and Arroyo collaborated with lesson planning, that he felt her teaching style to be appropriate, and that she had the most students who passed the Regent examinations. He testified that he saw bilingual teachers having problems with the administration but admitted that he did not see bias anywhere. Since he was excessed the entire 2014-15 school year, he did not testify about events during the time in question here and his testimony is not relevant.

The two students referred to as students "I" and "J" basically testified that they felt that Ms. Arroyo was an excellent teacher. Student "I" testified that she passed the Regent's exam in Chemistry by 1 point. She testified that she was not good in science but that Arroyo helped her and encouraged her to take the Regent's exam. She did testify that several students used to say, "Why she was speaking Spanish." She said that Arroyo spoke both languages to help both the new arrivals that did not speak English well. Student "I", testified that there was discipline in the classroom, students did not speak without raising their hands and the teacher went around the room to help students. Student "J" was a student of Arroyo's in 2016-2017. He passed the chemistry Regent with a score of 79. Student "J" described Ms.

Arroyo's teaching style and felt it was helpful in learning Chemistry and passing the Regents. He was the class valedictorian. However neither of the student witnesses knew anything about the Danielson rubric, what is expected of the teacher or what comprises the essence of teaching. There is no indication that either student would have failed the Regent without Ms. Arroyo's help. For those reasons, I find their testimony irrelevant.

I do not find Ms. Arroyo's testimony credible. While Ms. Arroyo was able to remember minute details on direct, she was unable to remember, or articulate attending professional development sessions, attending mid-year and end of the year TIP meetings, particularly when she signed those documents memorialized at the meetings and never submitted a rebuttal stating that the meetings hadn't occurred. She said she never received the 2016-2017 TIP although her signature is on it and it is the same signature that appeared on several documents that she signed. In addition, I find D 19 particularly troubling. D 19 are backdated rebuttals submitted by Ms. Arroyo to Mr. Sigerson on November 8, 2017 claiming they were written contemporaneously to the observations. There are several issues were with these rebuttals. First, they were not submitted in a timely manner in direct response to Arroyo receiving an observation. Second, some of the rebuttals were dated prior to her having her post-observation conference and thus prior to even seeing her ratings, and third, she testified that she did not write these rebuttals. Rather, Ms. Arroyo said that she told her daughter what to write on her behalf, and after which her daughter wrote them. Ms. Arroyo then sent them to Betsy Combier, the assistant to Ms. Arroyo's attorney herein who then sent them back to Ms. Arroyo. At that point Ms. Arroyo sent them to Mr. Sigerson. It is clear from reviewing the documents that they were written on Ms. Combier's computer. In this regard the documents themselves indicated that they were created on Ms. Combier's computer. At best Ms. Arroyo may have worked with Ms. Betsy Combier, in preparing this document. Ms. Arroyo does not deny this. I do not believe it was made in response to Ms. Arroyo's receipt of the Informal and Formal Observations submitted herein. Ms. Arroyo did not testify that she prepared any responses upon receiving her various performance review. Therefore, I find DE 19 to have been made in anticipation of the arbitration and find this exhibit irrelevant to my determination herein. The submission of these documents by Ms. Arroyo to Mr. Sigerson firms up my belief that Ms. Arroyo was not credible in her testimony.

## PROOF, POSITIONS OF THE PARTIES, AND FINDINGS

### Proof

### 2014-2015 School Year.

The Respondent, Reyna Arroyo, is a tenured teacher employed by the Department of Education of the City of New York at The College Academy (06M464) a high school located in New York City's Washington Heights. She has been

9

teaching full-time for approximately 19 years. She has been teaching at The College Academy for approximately 17 years. She earned her undergraduate degree in chemistry in the Dominican Republic from Universidad Autonoma de Santo Domingo in 1990. She is licensed to teach in New York State as a general science and chemistry teacher. Until the last three years, Arroyo received satisfactory ratings. She worked at the College Academy during the 2014/15 and 2016/17 school years. At the end of the 2015 school year Arroyo received a letter stating that she was an excess or ATR (absent teacher reserve.) During the 2015/16 school year she was an ATR teacher and did not teach at The College Academy because the budget at the school was too low to support one chemistry teacher. During the year that she was an ATR she taught in different schools.

There were approximately 525 students at the College Academy in the 2014/2015 school year. Students' ages ranged from 14 to almost 22 years old. The demographic makeup of the student population was between 96 to 97% Dominican. However not all of the students were Spanish speaking.

The College Academy, like all New York City schools, uses a teacher practice observation system called "ADVANCE," which is an online system used to track a teacher's professional performance by entering ratings for observations in the classroom, and keeping track of other statistics. The Advance system was put in place between 2011 and 2013. Administrators receive training in the ADVANCE system through workshops and professional development sessions.

The Danielson Framework for Teaching is a framework that was developed by Charlotte Danielson and it gives educators a way to delve into the different domains of pedagogy utilizing this rubric. This rubric, a four-point scale, shows in each of the domains whether a teacher falls within the ineffective, developing, effective or highly effective range. The evaluators base their ratings for observations on the Danielson Rubric. This Rubric, agreed upon by both the Department and the Union, is used for supporting and evaluating teacher pedagogy. When doing an observation, low-inference notes are taken of all observable data without utilizing any biases so that a clear picture of what is happening can be determined. Evaluators take what they observe and match it to the Danielson framework. During an observation lesson at The College Academy, teachers are often observed by more than one administrator.

All teachers are evaluated through the Danielson Rubric and Advance. Teachers are expected to have either highly effective or effective overall rating. Each year teachers receive an MOTP score that's cumulative of the observations and a MOSL score. The overall rating is an average of those two together with the MOSL counting for 40% of their overall rating and the MOTP accounting for 60% of their overall rating. When a teacher receives a Developing or Ineffective rating they get what is called a TIP, a Teacher Improvement Plan. A TIP is basically a guide for a teacher so that they can improve their pedagogy and hopefully move into the effective and highly effective range.

Witnesses uniformly testified that the teachers were evaluated in a number of ways. There were formal observations that would entail a pre-observation lesson, if requested by the teacher, and a post-observation, which was feedback. An informal observation was similar but no pre-observation was required. Informal observations lasted for a minimum of 15 minutes or longer. "Learning walks" were conducted where administrators would pop into classes to observe the lesson for a minute or two.   Each year the teacher can choose the method by which her pedagogy was to be evaluated. During the 2014/2015 school year Arroyo chose to have a minimum of six informal observations. She also did not consent to videotape evaluative classroom observations

The administrative team at the College Academy consisted of Peter Sloman and his vice principals during the 2014/2015 school year.  There were between 38 to 51 teachers that Sloman supervised during the time he was principal at the College Academy.  Sloman retired August 8, 2016. Presently he is a field supervisor, part time, under F-status. He does observations and support for teachers who are in excess. He has worked for the Department since September 1990. For the last six years prior to his retirement, Sloman was principal at the College Academy in Washington Heights. Mr. Sloman had the opportunity to evaluate Ms. Arroyo during the 2014-2015 academic year. He had areas of concern with regard to her pedagogy in the areas of questioning and discussion techniques, assessment and lesson planning. Sloman also had concerns regarding her classroom atmosphere as it lacked student engagement. At the end of the year, Sloman's overall assessment of Ms. Arroyo's pedagogy was low performing and incompetent.

Karen Remer has been an assistant principal at the College Academy approximately six years. She has worked for the Department of Education since 2003. She is currently in charge of the Science Department, as well as the Math Department. She is also the testing coordinator and arranges all the state and local tests, such as the Regents, SATs, PSAT's, etc. Remer also holds several other positions at the school. She does the observations for the math and science teachers. She ensures that the math and science teachers meet for department meetings, and that they have adequate supplies in professional development, and whatever assistance that they need. She also teaches one class.

Specification1.a. concerns an informal observation conducted by Vice Principal Karen Remer on November 12, 2014. This was a chemistry class.  While Remer gave Arroyo "Effective" ratings in demonstrating knowledge of content and pedagogy and growing and developing professionally, she rated the lesson "Developing" in the areas of "Creating an environment of respect and rapport," "Managing student behavior and "Engaging students in learning," and "Ineffective" in areas of "Using questioning and discussion techniques" and "Using assessment in instruction." Some of the following comments by Remer justify her ratings:

- Patterns of classroom interactions, both between teacher and students and among students are generally appropriate but may reflect occasional inconsistencies, favoritism, and disregard for students' ages, cultures, and developmental levels.
- There is no student work on display, no word wall on display, constant talking from the students, and a low level of student ownership of learning.
- With regard to managing student behavior, Remer noticed student talking, students with their heads down, one student standing until told to sit down, students walking in late without passes and students not having notes in their notebooks.
- Almost no student discussion as only approximately 14 out of the 25 students present are intellectually engaged in the lesson. There was no AIM on the board to help focus students.
- Feedback is absent or of poor quality. Students do not engage in self or peer assessment.

The report listed a series of "Recommendations," including the following:

- Add student work to your classroom.
- Highlight student achievement and command positive efforts, both written and oral.
- Immediately add science content and non-content vocabulary word walls to the room. Engage students through connection to prior knowledge
- Keep an AIM on the board.
- Give positive feedback for students during the observation.
- Choose at least one strategy to monitor students learning during instruction so that you can assess if students master the planned learning outcome.
- Leave more time for circulating and responding to students' queries.
- E-mail a lesson plan for Remer to review.
- Set up an appointment to meet with Remer for additional support.

Arroyo never sent in a lesson plan or set up an appointment to meet with Remer.  However they did assign another teacher Ms. Moreno to work with Ms. Arroyo by visiting her classroom and helping her with lesson plans.  Moreno was an instructional lead at the College Academy.

Arroyo testified at the arbitration concerning this observation.  She testified that Remer was in her room for about 10-20 minutes and later testified that Remer was in her room for 12 minutes and even later in her testimony she stated Remer was present in the room for 15 minutes.   She disagreed with all the negative findings in the observation, including that a student was sleeping in the class.  Arroyo claims that her students respect her and each other.  Contrary to Remer, Arroyo claims that she did write the AIM of the lesson on the Board and complained to Remer about that.  However the observation report was not changed to reflect that.  Arroyo did not send in a response at the time of the observation.  She claims

that she disagreed with the observation finding but did not complain to the principal, only Remer.

As stated above Remer was an extremely credible witness. She gave credit to Respondent whenever possible, and offered to meet with Ms. Arroyo to help her with her pedagogy, an offer that Ms. Arroyo did not accept. It thus appears that the evidence supports the conclusion that Respondent failed to properly plan and/or execute this lesson and no learning took place during this lesson. Respondent's perception that she performed satisfactorily in this lesson is incorrect. The record supports the conclusion that lesson was in fact unsatisfactory and the ratings given in this lesson were properly given.

Accordingly, I find that the department has proven Specification. 1(a).

On or about December 15, 2014, Ms. Remer gave Ms. Arroyo a TIP (Teacher Improvement Plan). Under this TIP, Arroyo is supposed to improve her pedagogy in the following ways:

- Having learning activities aligned with the instructional outcomes and following an organized progression.
- Planning and implementing learning activities designed to cognitively engage students and advancing through the content.
- Monitoring student learning by planning ongoing assessments carefully in advance and weaving them seamlessly into the lesson so that it is clear whether students learn the intended outcomes.

The TIP also lists many activities and ideas that were to help Arroyo meet the goals of her TIP. Arroyo never told Ms. Remer that she was working with two of her colleagues in order to achieve the goals of her TIP. Although Arroyo sent in two lesson plans, she never met with Remer to discuss them and the lesson plans sent were deficient according to Remer.

Remer did her next informal observation of Arroyo on January 7, 2015. She was rated better on this observation than she had been on her previous observation. Many areas were rated effective. Ms. Arroyo's use of questioning and discussion techniques improved from "Ineffective" to only "Developing" as she was still using low level questions.

Ms. Remer 's next informal observation of Ms. Arroyo was on January 22, 2015. She was rated better on this observation than she was on her previous observations. She was rated "Effective" in all areas. Remer described to Ms. Arroyo areas that she could still work on including working on having students not call out answers and respond to one another during discussion. She gave other suggestions that if Arroyo followed would make her pedagogy even more effective. Remer also asked Arroyo to send her a lesson plan to review.   Arroyo testified that she

disagreed in the section of the observation where she was marked "Developing." This section concerned "Using questioning and discussion techniques." Arroyo also testified that she disagreed with Remer's conclusion that there were few instances of students responding to other students, and during the group activity students were told to discuss but most were working independently. Ms. Arroyo claimed that her students worked well together.

On January 26, 2015 Arroyo met with Remer to have their Mid-year Professional Conversation in reference to her TIP for 2014-2015. During this conversation, Arroyo was advised that there was a clear and steady improvement in her lesson planning and implementation. She was told that the students no longer call out, the lesson had a clear beginning, middle, and end, and the instructional outcomes seem to be better aligned both within the lesson, and within the unit. Arroyo was advised to continue to work on areas of increasing systems for collecting and managing assessment data, using the assessment for increased individualized differentiation, and enhance the rigor and genuine student discussions for increased engagement.

Ms. Arroyo's next informal observation as noted in Specification 1.b. was conducted by then Principal Peter Sloman on March 18, 2015. The class was a chemistry class. He rated the lesson "Developing" in the areas of "Creating an environment of respect and rapport," "Engaging students in learning," and "Using assessment in instruction," and "Ineffective" in the area of "Using questioning and discussion techniques" He did find that Arroyo had coherent instruction and managed student behavior and marked her "Effective" in those areas.

In supporting his ratings, Sloman wrote that with regard to creating an environment of respect and rapport, the students in the back of the class were not circulated to, and that the students were not in groups but in messy clumps throughout the front of the room leading to a disorganized feel and making it difficult for the teacher to circulate and see how each and every student was doing.

With regard to using questioning and discussion techniques, Sloman wrote, "teacher's questions are of low cognitive challenge, with single correct responses, and are asked in rapid succession The teacher accepts all contributions without asking students to explain their reasoning-Students were calling out wrong answers and teacher never stopped to diagnose why. Questions were rapid fire with minimal wait time and occasionally teacher would answer her own questions-There was no student to student discussion or higher order thinking questions to have students explain their thinking (such as, can you explain how you got that answer? Does anyone else have a different answer or a different way to get to the answer, how can we explain that in different words...)"

With regard to engaging students in learning, Sloman wrote that while "groupings of students are moderately suitable to the activities," "there was some student active participation" and that "the lesson has a recognizable structure," "the pacing of the lesson may not provide students the time needed to be intellectually

engaged," "students were not grouped" and "the pace of the lesson was so fast that most students could not reflect on their learning."

With regard to using assessment in instruction, Sloman wrote "the teacher monitors understanding through a single method, or without eliciting evidence or understanding from students," "teacher uses rapid fire questioning aimed at the students in the front of the room" and students sometimes called out wrong answers without assessment as to their gap in knowledge."

Sloman's testimony at the arbitration was consistent with what he wrote in his evaluator form.

The report listed a series of "Recommendations," including the following:

- Despite the coherence in the chemistry content, the classroom environment did not support all learners.
- The classroom seems to be split into two, with two thirds of the students near to the front but sitting in a jumbled mass of desks, and one third of the students sitting against the back wall, not partaking in the class at all. You did not circulate to the students in the back of the room. There should be no students allowed to sit up against the wall in the back. All students should be sitting in well-organized, heterogeneous mixed ability groups that are clearly defined, neat and organized... (In his testimony, Sloman stated that the jumbled mass he saw that day was consistent with other times when he dropped into Ms. Arroyo's classroom.)
- ... Please make sure student raise their hands, take turns and learn to listen to each other. Using academic conversation prompts can help this effort. In addition you may want to post clear classroom rules that include hand raising, think time, and respectful listening to each other's responses.
- You went through the material very quickly, using rapid fire level questioning. Slow down. Ask one question and give wait time for students to come up with the answer. Then ask, one at a time, several students to share. Have the students respond to each other's answers using the academic conversation prompts model...
- In regard to students calling out the wrong answers, "you did not address the wrong answers to diagnose why the students were making mistakes." This impeded assessment. "If you slow down some students are heard and then ask, why do you think 5, and why do you think 6, and then have student to student discussion to come up with a consensus. Assessment must be individualized so that you know which individual students understand the material and which need more differentiated practice." (In his testimony, Sloman did not find any assessment of the student's being done.)
- You told students not to copy rules from the PowerPoint in order to save valuable practice time in the class. However to address students' requests for the rules, "I suggest having roles or notes photocopied onto handouts that

students keep in their folders" and "encourage students to keep an organized folder of the notes and activity regents practice handouts."

At the end of the evaluation, Sloman offered for Arroyo to email him a lesson plan to review. He also offered that if additional support is needed, Arroyo could set up an appointment to meet with him. At that meeting Sloman testified that Arroyo did not disagree with Sloman's assessment of her pedagogy, and signed the Informal Observation assessment. To his memory, Sloman never received a rebuttal to Arroyo's March 18, 2015 rating.

Arroyo testified at the hearing about this observation and disagreed with its conclusions. She basically disagreed with all of Sloman's observations. Thus, she claims that she has control over her classroom as she has rules, which the students obey. Arroyo testified that she circulates around the classroom and never sits down. She testified that the students were in organized groups not in clumps. She admits to using rapid-fire questioning but does it so the students learn the reference tables. Arroyo pointed out that Sloman could not know the correct answers to her questions, as he is not familiar with Chemistry.

As stated above Sloman was a very credible witness. He, like Remer, gave credit to Respondent whenever possible, and offered to meet with Ms. Arroyo to help her with her pedagogy, an offer that Ms. Arroyo did not accept. It thus appears that the evidence supports the conclusion that Respondent failed to properly plan and/or execute this lesson and no learning took place during this lesson. Respondent's perception that she performed satisfactorily in this lesson is incorrect. The record supports the conclusion that lesson was in fact unsatisfactory and the ratings given in this lesson were properly given.

Accordingly, I find that the Department has proven Specification. 1(b).

Ms. Arroyo was next observed by Ms. Remer on April 20, 2015. Again Ms. Remer rated Arroyo "Effective" for most of this observation. She did find her "Developing" in the area of "Using assessment in instruction" as Ms. Arroyo monitored understanding through a single method, or without listening for evidence of understanding from students. Her students were on task during this class and she did use Regent's questions. Remer advised Arroyo on methods that she could implement to ease the number of students calling out of turn as well as to improve how she assesses students. Remer also offered to review a lesson plan for Arroyo. Ms. Arroyo did not take Remer up on this offer of assistance.

The next time Arroyo was observed was on May 14, 2015. This was an informal observation conducted by Assistant Principal Karen Remer and is listed as paragraph 1.c. in the Specification. Remer rated the lesson partly "Effective" and partly "Developing." The class was a Chemistry class. In this observation Remer found "Effective" Arroyo's "Creating an environment of respect and rapport," and "Managing student behavior." Remer also found positive Arroyo's use of Regent's

based materials in the lesson and her making frequent references to Regent's materials. However Remer found Arroyo's "Using questioning and discussion techniques," and "Engaging students in learning" to be "Developing."   Remer also listed what occurred during the class that day. In reviewing the lesson, Remer wrote:

- The teacher attempts to engage all students in the discussion, to encourage them to respond to one another, and to explain their thinking, with uneven results (Remer gave examples where students would not know what a correct answer would be as no clear answers were given.)
- Questions were given in rapid secession without any processing time needed by students.
- Only 4 or 5 students were answering the questions in a class of 30.  Not all the students were given a chance to participate.
- 5 students did not have handouts and were sitting doing nothing.

Remer's testimony was consistent with the contents of this observation.

After the observation Remer met with Arroyo to go over the observation. She made several suggestions to her both in person and on the observation including:

- Have a cart available for students to obtain materials for the day so they will have materials even if they come in late.
- Have a specific place for students to place their homework.
- Practice calling on students who don't initially volunteer so that students learn they need to be accountable at all time.
- Try to make more frequent references to "real world" examples.
- Visit the classroom of fellow teacher Jay Rodriguez who has certain techniques that will help your pedagogy.
- E-mail Remer lesson plans for review.
- Set up an appointment with Remer if extra help is needed.

Remer testified that Arroyo did not state that she disagreed with the observation.  She never e-mailed a lesson plan or asked for additional help from Remer.

Arroyo testified about this observation at the arbitration hearing. She testified that Remer was present in the room for approximately 10 minutes. With regard to Remer's concern that Arroyo asked only low-level questions, Arroyo stated she asked a mixture of questions and that low-level questions were needed for the low-level learner. Arroyo testified that she evaluates the students learning by the responses she gets to her questions. Arroyo stated that she did not discuss the evaluator notes with Remer after the observation, as she did not receive them. However, Arroyo did sign the Evaluator form.

I again credit Ms. Remer's testimony over that of Ms. Arroyo's for the reasons given in the credibility section above. Only after years had elapsed did Ms. Arroyo provide any evidence that she disagreed with the findings in this observation. Ms. Remer provided Ms. Arroyo with many suggestions to improve her pedagogy, suggestions that Ms. Arroyo obviously ignored or could not follow. Ms. Remer again offered to meet with Ms. Arroyo to help her with her pedagogy, an offer that Ms. Arroyo did not accept. It thus appears that the evidence supports the conclusion that Respondent failed to properly plan and/or execute this lesson and no learning took place during this lesson. Respondent's perception that she performed satisfactorily in this lesson is incorrect. The record supports the conclusion that lesson was in fact unsatisfactory and the ratings given in this lesson were properly given.

Accordingly, I find that the department has proven Specification. 1(c).

An end of the year conference is held every year to assess a teacher's ability. Assistant Principal Karen Remer held such a conference with Ms. Arroyo on May 26, 2015 to discuss her End of the Year Professional Conversation in reference to her Teacher Improvement Plan for 2014-2015. In this conversation Arroyo was advised that her progress that year had been inconsistent. She advised Ms. Arroyo as follows: There were improvements in her written lesson plan as well as with students not calling out, however questioning continues to be rapid fire, low level, and with minimal feedback to students to indicate whether they have the correct answer or not. Although she used Regent's based materials consistently, Remer pointed out that the classroom environment was such that not every student was engaged, differentiated to, and individually assessed. Remer noted, "Engagement and assessment were both areas of focus on your TIP for this year." She was given advice on how to improve and was advised that her MOTP score for the year was in the Developing range. She was advised that at that time she had not fulfilled the TIP requirements of teacher responsibility to present evidence to his/her evaluator that demonstrates the progress the teacher has made towards achieving improvement in the outlined activity. She was also advised that receiving an overall rating of developing (or ineffective) for two consecutive years may lead to further disciplinary action.

At the end of the school year, Ms. Arroyo received the letter advising that she had been placed in excess from the College Academy for the 2015/2016 academic year. She was excess because there was a loss in the number of students at the school. Thus for financial reasons two teachers were excessed.

**2015-2016**

Stacey Batista is assistant principal at the Global Learning Collaborative in the old Brandeis Building. She has worked for the Board of Education for approximately 20 years. Before working as assistant principal at the Global Learning Collaborative, she was a supervisor for the ATR (Absent Teacher Reserve) teachers.

She was Ms. Arroyo's immediate supervisor during the 2015-2016 school year. She worked as an Assistant Principal for 10 years supervising all departments. She was not given any background as to Ms. Arroyo's pedagogy prior to meeting her. During that year Ms. Arroyo received assignments to work at different schools for periods of anywhere between a month and six weeks. Ms. Batista testified that as an ATR teacher, Ms. Arroyo was expected to have generic lesson plans at all times.

On or about October 28, 2015, Ms. Batista gave Ms. Arroyo a Plan of Assistance, created by Battista with Arroyo. This plan set out goals for Arroyo to work on including:

1. To engage students in learning by using creative motivating activities to make lessons interesting;
2. To demonstrate effective and varied questioning techniques as a strategy to differentiate instruction and support the development of critical thinking skills; and
3. To increase her cache of effective teaching methods and techniques.

Under each goal, Arroyo was given a list of activities and types of assistance that were available to her in order to achieve these goals. She was also advised on the methods that would be implemented in order to assess her mastery of these goals.

Field Supervisor Stacy Batista conducted a formal observation on December 4, 2015 that is referred to in the Specification as 1.d. Batista rated the lesson "Unsatisfactory." The class was a 10th grade science class. In this observation Batista listed what occurred during the class. In reviewing the lesson, Batista wrote:

- Through your use of visuals and technology, preparedness with materials, review worksheet from the regularly assigned teacher and discussion with that teacher and the students prior to the lesson, it was evident that planning had gone into this lesson.
- You had a pleasant demeanor and were enthusiastic about the content you are teaching. You are also organized with your distribution of materials.
- The first goal on your Plan of Assistance is related to creating motivating activities that will hook the students from the beginning of class,...[the motivating activity used in the class] was low cognitive rigor[3], and you were relying on the visual to stimulate motivation. In the future, I would suggest you switch the order of activities. Show the visual and start discussion about cells from the onset of the lesson, provide the review worksheet [which Arroyo did at the beginning of the class] with a purpose greater than just

---

[3] Batista testified that the motivating activity, looking at a picture of a girl looking through a microscope and asking what the girl was doing, was more appropriate for elementary school.

having it done as review and then use the worksheet as a segue into the lesson on identifying organizational levels.

- Be sure to include CCLS standard(s) in your lesson plan
- I commend you for selecting visual material to present to students as well as text. However you must pay close attention to the material you select. For example, I am positive that you could have found the outline of the human body to depict the human body as an organism without the detail of the male productive organ, which created a reaction from the students. You must be more careful in the selection of material in the future.
- With regard to four Regents questions presented to the students, vital information was missing. Some of the labels on the accompanying diagram were written in Spanish which is unacceptable. The exit slip, which was distributed, to the students had many errors.

When confronted that her lesson was repetitive, Ms. Arroyo explained that was how students learned. Arroyo was informed that this is one way in which students learn but with so much repetition and reiteration of the same words and the order of words, the concept may have been lost and only the words/terms memorized. It was suggested to Arroyo that she review the Depth of Knowledge wheel or chart and Bloom's Taxonomy. [Those documents were provided to Arroyo.]

Batista discussed the observation with Arroyo. When Batista advised Arroyo that the lesson had an "Unsatisfactory" rating, Arroyo was not happy but she did not indicate to Batista that she was unclear about her recommendations and suggestions. Arroyo signed the observation and did not write a response at that time.

In this instance, I credit Ms. Batista's testimony. Ms. Arroyo did not respond to this observation. Thus Ms. Batista's testimony stands without contradiction. In any event I would credit Ms. Batista. Her testimony is consistent with the observation that she wrote over two years earlier. She appeared to be concerned with helping Ms. Arroyo to improve her pedagogy. Ms. Batista provided Ms. Arroyo with many suggestions to improve her pedagogy, suggestions that Ms. Arroyo ignored or could not follow. It thus appears that the evidence supports the conclusion that Respondent failed to properly plan and/or execute this lesson and no learning took place during this lesson. The record supports the conclusion that lesson was in fact unsatisfactory and the ratings given in this lesson were properly given.

Accordingly, I find that the department has proven Specification. 1(d).

Later, Arroyo, per Batista's request produced two lesson plans, one in science and one in health.

The Department entered a Log of Assistance from January 22, 2016 as D 11. This Log of Assistance did not count as an observation. However Batista observed part of a class and gave Arroyo suggestions on how she could better her pedagogy such as including critical thinking questions in her lesson plans. The Department entered it solely to show that Arroyo received assistance on that date.

On March 31, 2016, Batista conducted another formal observation of Arroyo's pedagogy. Arroyo prepared this lesson with the assistance of another teacher who remained in the classroom for the entire period. While this observation was found to be "Satisfactory," Batista was concerned about Arroyo's pedagogy in two areas: Questioning techniques and student engagement.

On April 8, 2016, Batista conducted "professional development" which was not an observation. In her notes while commending Arroyo on her pleasant demeanor, Batista indicated concern in the lack of improvement shown with regard to effective and varied discussion and questioning techniques.

On May 6, 2016 Field Supervisor Stacey Batista conducted an informal observation that is referred to in the Specification as 1.e. The class was a chemistry class. She did not rate the lesson but rather noted items that Ms. Arroyo would be expected to work on.

In reviewing the lesson, Batista wrote:
- There was no AIM on the board.
- There were few higher-level questions teacher and their peers
- The class was not built around a variety of entry points, learning styles and assessments.
- The regular teacher needed to take over the class

Batista's testimony was consistent with the contents of this observation. She recommended that Arroyo focus on for the duration of the 2015-2016 school year on planning and preparation and questioning techniques. She was told to continually review the written assistance provided for her and her Plan of Assistance. Ms. Arroyo did sign the observation acknowledging that she received it. Ms. Arroyo did not file a response to this observation at that time.

I credit Ms. Batista's testimony. Ms. Arroyo did not respond to this observation. Thus Ms. Batista's testimony stands without contradiction. In any event I would credit Ms. Batista. Her testimony is consistent with the observation that she wrote over two years earlier. She appeared to be concerned with helping Ms. Arroyo to improve her pedagogy. It thus appears that the evidence supports the finding that Respondent failed to properly plan and/or execute this lesson and that no learning took place during this lesson. The record supports the conclusion that lesson was in fact unsatisfactory.

Accordingly, I find that the department has proven Specification. 1(e).

On May 18, 2016, Field Supervisor Stacey Batista conducted a formal observation of Arroyo's class. This observation is referred to in the Specification as 1.f. This was a chemistry class. Batista rated the lesson "Unsatisfactory." Batista did note that Arroyo wrote the "Aim" of the lesson on the blackboard for the students to see and treated the students with respect. However, in reviewing the lesson, Batista wrote:

- The questions asked during the lesson were recall questions with low cognitive challenge.
- With regard to student engagement/classroom management, most students were mostly off-task from the beginning of the lesson. Students were observed with their heads down, engaged in side conversations, cursing, using electronic devices. Students refused to do the work. While you tried to shush students and raised your voice because of the volume of the class, there was not much success with controlling the class.
- You did not "hook" the students with an interesting activity.
- There was no closing or summarizing assessment to this lesson. Because there was no summarizing activity or way for students to discuss their learning, there was no way to determine whether or not students were able to understand the meaning of the numbers and letters in the boxes in the Periodic Table.

The report listed a series of "Recommendations," including the following:

- You are encouraged to script questions into your lesson plan.
- You are encouraged to use Plan of Assistance, Depth of Knowledge And Blooms Taxonomy when planning your lessons.
- Make sure you are asking questions of higher cognitive challenge, and familiarize yourself with the various levels of thinking questions that will strengthen your ability to ask a variety of questions throughout the lesson.
- Use a motivating activity in the beginning of the class which might result in you having less trouble managing their behavior and more success in engaging students in the content.
- When designing and executing your lesson plans, be sure to require the students summarize the lesson based on their own self-discoveries.
- In the future, it is important for you to close out your lessons with more of a clear student outcome.
- When creating your AIM be sure to use the Depth of Knowledge wheel so that the learning objective is one that is measurable and can be assessed.

At the end of the Formal Observation Batista advised Arroyo that failure to improve her teaching practice may lead to an unsatisfactory rating and charges that

may lead to her termination. Batista's testimony at the arbitration regarding this observation was consistent with what she wrote in his evaluator form.

Arroyo signed the Formal Observation and did not submit a response at the time of the observation. She also did not testify about this observation at the hearing. Again, Ms. Batista's testimony stands uncontradicted. In any event I would credit Ms. Batista. Her testimony is consistent with the observation she wrote over two years earlier. Ms. Batista appeared to be concerned with helping Ms. Arroyo to improve her pedagogy. It thus appears that the evidence supports the finding that Respondent failed to properly plan and/or execute this lesson and that no learning took place during this lesson. The record supports the conclusion that lesson was in fact, "Unsatisfactory."

Accordingly, I find that the department has proven Specification. 1(f).

## 2016-2017

Timothy Sigerson is the principal at the College Academy. He has held that position for over one year. At the time he became principal of the College Academy in September 2016, there were approximately 440 students registered at the school. Many of the students come from the Washington Heights area, District 6. Approximately 90% of the students are Hispanic, 5% are African-American and the last 5% is a mix. Not all of the Spanish students speak Spanish. There were 23 teachers at the College Academy at the beginning of the 2016/2017. He has a background in math and computer science. There were approximately 440 students that year. During 2016/2017 school year there were four Assistant Principals.

In August 2016 Sigerson hired Arroyo back as they were a financially sound school. He met with Arroyo at that time as he did with other teachers. He met with her at the school office. At this meeting Sigerson noticed that Arroyo had a lack of understanding of the English language and the conversation was challenging as he only spoke English. Sigerson told Arroyo that she would be teaching Chemistry which is only offered in English in New York State. Further, she needed to speak English when teaching Chemistry as the Regents exam was only given in English. Arroyo was also advised that she would also be teaching Living Environment which is something she advised that she was comfortable teaching in Spanish.

On or about September 15, 2016 Arroyo chose to have a minimum of one formal observation and a minimum of three informal observations for the upcoming year.

On September 29, 2016, Vice Principal Karen Remer conducted an informal observation of Ms. Arroyo's 11th/12th grade Chemistry class. The results of this observation are found in the Specification as 1.g. She rated the lesson Ineffective.

In her observation Remer listed what occurred during the class. In reviewing the lesson, Remer wrote:

- The teacher displays little or no understanding of the range of pedagogical approaches suitable to student learning the content. In this regard the written lesson plan consisted of "verbal instructions." "I will show some mixture demonstrations"
- Learning activities are poorly aligned with the instructional outcomes, do not follow an organized progression, are not designed to engage students in active intellectual activity, and have unrealistic time allocations. In this regard, Remer pointed to the students being handed a confusing activity with unclear directions with three minutes left to class. No one finished the activity.
- Patterns of classroom interactions, both between teacher and students and among students, are mostly negative, inappropriate, or insensitive to students' ages, cultural backgrounds, and developmental levels. In this regard she noted that a student in the back of the class was refusing to take notes and upset because he said that the teacher ignored his raised hand and that he wanted to go to the bathroom. Further a student asked the question in Spanish and the teacher answered in Spanish. (Chemistry tests are done in English only.
- There appeared to be no established standards of conduct, or students challenge them. The teacher had to shush the students who were talking. When a student talked back to the teacher, she did not respond. Students do not raise their hand and all answers are accepted from the chorus.
- Interaction between the teacher and the students is dominantly recitation style, with the teacher mediating all questions and answers.
- The lesson has no clearly defined structure, or the pace of the lesson is too slow or rushed. The teacher spent 19 minutes on a lecture and rapid fire questions then she modeled an experiment then showed slides and then went back to identifying compounds, elements and mixtures all rapid fire. None of the students completed the activity that day because the directions were unclear.
- Students do not appear to be aware of the assessment criteria and there is little or no monitoring of student learning.

The report that listed a series of "Recommendations," including the following:

- Students need to be interacting with the material in chemistry. Instead of mixing items at the front of the rooms, students should be in groups and each group should be given the definitions of heterogeneous mixture and homogenous texture, given two substances to mix and then need to explain to the class which one they had.
- Tables can be made by placing four desks together to form a table.

24

- Give very clear directions and guidelines and that each group be given only two items to create a mixture in order to avoid unwanted student misbehavior.
- Your lessons should be planned with a more linear approach to student objectives.
- Furthermore, the directions on the activity were so unclear that students were writing the definition to element, compound, and mixture instead of labeling them. To remedy this put the activity into a chart format and make the directions clear so that students could complete the activity.
- In order to remedy the problem of students struggling to follow the lesson, you should also add in a motivational question to connect students to the day's objectives. Also go through the mini lesson in a method that goes from one topic to the next, stopping for student activities and assessment.
- Make the mini lesson shorter and talk slower so that students can follow the lesson.
- Bring a lesson plan on Wednesday, October 5, 2016 to review with Ms. Remer.
- Use the lesson plan format that many teachers use successfully. It is attached to this observation.
- If additional support is needed, set up an appointment to meet with Ms. Remer.

Ms. Remer testified that following the feedback, Ms. Arroyo just said that she was trying. She did not say that she did not understand the suggestions made to improve her pedagogy. Arroyo never reached out to Remer for individual help.

At the Arbitration, Respondent presented R 2, which was the lesson plan she prepared for the observation listed above. She testified that she disagreed with much that was written in the observation. In this regard she claims that she demonstrated the difference between mixtures and compounds in front of the students. She claims that at the beginning of the class she made demonstrations for her students to help the student understand the topic during the period. With regard to Remer's conclusion that learning activities are poorly aligned, Arroyo testified that Remer could not accurately assess her because she missed the beginning of her class. However, Arroyo did not address the point made by Remer that no students finished a confusing activity and that they were only given three minutes to finish the activity. Arroyo also denied that students never interrupt her in class. When she met with Remer, Arroyo denied that Remer asked her to do things such as meet with her or provide lesson plans.

For reasons given above, I credit Ms. Remer over the testimony of Ms. Arroyo. Her testimony is consistent with the observation she wrote over one year earlier. Ms. Arroyo, on the other hand, signed the Observation and did not submit a response at the time of the observation. Ms. Remer appeared to be concerned with helping Ms. Arroyo to improve her pedagogy. It thus appears that the evidence

supports finding that Respondent failed to properly plan and/or execute this lesson and that no learning took place during this lesson. The record supports the conclusion that lesson was in fact unsatisfactory.

Accordingly, I find that the department has proven Specification. 1(f).

On or about October 11, 2016, Karen Remer provided Ms. Arroyo with a Teacher Improvement Plan (TIP) for the 2016-2017 school year. In her TIP Ms. Arroyo was given the following Areas for Improvement:

> Monitoring student behavior, being attuned to what's happening in the classroom, and moving subtly to help students, when necessary, re-engage with the content being addressed in the lesson; having learning activities represent significant cognitive challenge; and using questioning and discussion techniques to cognitively engage students and advance them through the content.

Arroyo's TIP also included actions and activities to help her achieve these goals. During the arbitration, Arroyo denied receiving this TIP. However, a copy of this TIP was presented by the Department as Department Exhibit 36. Arroyo's signature appears on page 2 of this exhibit and it appears to be the same as her signature on several of the observations offered by the Department, and not objected to, by the Respondent. Therefore in view of my discussions above regarding credibility of the two witnesses, I credit Ms. Remer's version of the event over that of Ms. Arroyo.

On or about October 27, 2016, Remer conducted a non-evaluative observation of Arroyo. On that date, Rener sent Arroyo an e-mail setting forth ways she could improve her lesson.

On or about December 2, 2016 Remer made another non-evaluative observation of Ms. Arroyo's classroom and sent her an e-mail setting forth ways she could improve that lesson in the future, including not having empty seats in the front of the class.

On January 4, 2017, Principal Timothy Sigerson and Vice Principal Karen Remer [4] conducted an informal observation the results of which are referred to in the Specification 1.h. Sigerson rated the lesson mostly "Unsatisfactory." The class was an 11th/12th grade Chemistry class. Sigerson's testimony at the arbitration was consistent with what he wrote in his evaluator form. In his observation Sigerson

---

[4] Remer attended the observation as well as the following two observations with Siegerson as Ms. Arroyo went to Principal Siegerson to tell him that Remer did not like her. Siegerson did the observation so Ms. Arroyo would get a more varied view of her pedagogy and to respond to Ms. Arroyo's wishes.

listed what occurred during the class. In reviewing the lesson, Sigerson did find that Arroyo was generally effective in managing student behavior but wrote:

- The teacher displays a lack of awareness of how these concepts [content and pedagogy] relate to one another.
- Learning activities are poorly aligned with the instructional outcomes.
- Patterns of classroom interactions, both between teacher and students and among students, are generally appropriate but may reflect occasional inconsistencies, favoritism, and this regard for students' ages, cultures, and developmental levels. In this regard Sigerson pointed out that students called out throughout the lesson; 4 students were wearing hoods, 6 students had not copied the aim and 4 students do not have periodic table; during circulation teacher asked [student] to remove his hood and he did not comply.
- After a 3-minute pause, teacher asked if students had finished copying and several responded no but teacher continued on with lesson.
- Interaction between the teacher and students is predominantly recitation style, with the teacher mediating all questions and answers.
- Teacher only required rote responses, with only one approach possible... Few students are intellectually engaged in the lesson.
- There is little or no monitoring of student learning; feedback is absent or of poor quality.

The report listed a series of "Recommendations," including the following:

- Increase student engagement by having students respond to the real-world questions about x-rays through turn and talk.
- Ask [students] if they can think of other examples of radiation.
- Make clear connections between the aim, the mini lesson, and the activity.
- Perhaps revise the aim to include all the objectives for the lesson, such as, How did the discovery of radioactivity allow for beneficial and harmful uses out the ice attempts?
- Additionally, include Regents questions on handouts to increase rigor and help prepare students for the exam.
- Set up an appointment with him if she needed additional support.

Sigerson concluded that the lesson was not properly planned nor executed. Arroyo signed off on the observation. She did say that she did not agree with it but did not send a response until after the hearing in the instant arbitration began. Further Sigerson testified that Arroyo never set up an appointment with Sigerson for additional support.

While this observation occurred on January 4, 2017, the post-observation conference did not occur until January 20, 2017, the date which both Sigerson and Arroyo signed the observation. Arroyo's response to this was sent on November 8,

2017 but was dated January 9, 2018, eleven days before the post-observation conference. Not only does the late-filed response raise questions as to the veracity of the response, the fact that it was dated before the observation raises the specter that this response is not valid. As a result, as noted above, I do not credit Arroyo's testimony. Rather, I credit Sigerson's testimony.

Accordingly, I find that the department has proven Specification. 1(h).

On February 16, 2017, Principal Timothy Sigerson and Karen Remer conducted another informal observation the results of which are referred to in the Specification 1.i. Sigerson rated the lesson partly Developing and partly Unsatisfactory. The class was an 11th/12th grade Chemistry class. Sigerson's testimony at the arbitration was consistent with what he wrote in his evaluator form. In his observation Sigerson listed what occurred during the class. In reviewing the lesson, Sigerson did find that Arroyo was generally effective in creating an environment of respect and rapport, but wrote:

- The lesson plan (written and implemented) lacked step-by-step directions for students on how to do the criss-cross method.
- Lesson plan (written and implemented) did not utilize any Regent's questions.
- Standards of conduct appear to have been established, but their implementation is inconsistent. In this regard students continually call out answers and teacher accepts all responses.
- With regards to using questioning and discussion techniques, the teacher's questions are of low cognitive challenge, with single correct responses and are asked in rapid succession. Interaction between the teacher and students is predominantly recitation style, with the teacher mediating all questions and answers; the teacher accepts all contributions without asking students to explain their reasoning.
- With regard to engaging students in learning, the learning tasks and activities are partially aligned with the instructional outcomes but require only minimal thinking by students and there is little opportunity for them to explain their thinking, allowing most students to be passive or merely compliant
- Using assessment in instruction, students do not appear to be aware of the assessment criteria, and there is little or no monitoring of student learning.
- With regard to growing and developing professionally, teacher has not abided by the timelines set in the TIP. Teacher has not conducted any inter-visitations or send any lesson plans for review as indicated by the TIP.

The report listed a series of "Recommendations," including the following:

- Increase wait time after questions.
- Insists that students raise their hands and take turns speaking.

- As a teacher, step back from direct teaching during the 'we do' and 'you do' (emphasis added) sections so that students can work through problems on their own.
- A list of a summary of on-going supports was provided, including but not limited to the following: professional development meetings, department meetings, assistance from collaborative teachers, etc.

In concluding this report, Mr. Sigerson found that no progress had been made in the pedagogy or lesson planning of Ms. Arroyo. In this regard while Ms. Arroyo was given a TIP in September with specific tasks and dates that indicate professional development undertakings to improve pedagogy, Sigerson found that Ms. Arroyo has not handed in one item or adhered to any due date. Although suggested by Sigerson, Ms. Arroyo did not send monthly email updates about their progress in working through the information on the TIP. Sigerson further found that Ms. Arroyo had not reached out to TCA's master teacher or peer collaborative teacher for assistance, nor participated in a round of inter--visitations with any teacher. Ms. Arroyo was advised that the due dates in the TIP are still valid and items are expected to be handed in so that [the principal and vice principals] can review them and be sure that [they] are offering support needed to improve future pedagogy. In order to achieve her goals, Arroyo was given a lighter schedule to give her more time to prepare her lessons.

During her testimony, Arroyo identified RE 3 as the lesson plan she wrote before this observation. RE 3 was received into evidence. She testified that she used this lesson plan during this class. She also testified that Siegerson lied because he did not do the post observation. Rather Ms. Remer conducted the post observation. Ms. Arroyo also claimed the her "essential questions," i.e. "How to write formulas?; How can you write a compound from its elements?; How can you use oxidation number to write chemical formula?" were Regent's questions. In this regard, Ms. Arroyo explained that these were all things you had to do on your Regent's exam. In her post observation she claimed that she pointed out that these were Regent's questions to Ms. Remer. She also explained that the students had learned the criss-cross method earlier so she did not have to repeat it for this class. She claims that she provided time for the student's to practice the lesson in class. While she states that she tries to keep the students from calling out answers, Arroyo claims this shows that the students are merely motivated and passionate about learning.

Ms. Arroyo also disagreed with the "Ineffective" she received for using questioning and discussion techniques. However she claims her use of rapid-fire questions is effective. She claims she can assess students by their responses to the rapid-fire questions. Arroyo also disagreed with the assessment that her students did not have notebooks and claimed that she gave notebooks out to those students who came without them. Arroyo claims, contrary to the observation notes, that she was not teaching criss-cross in that lesson. Finally, Arroyo claims that she never

received a TIP that year so she could not be found to have not complied with it. She claims the signature on the TIP was not hers and is thus forged. I find this totally unbelievable as I reviewed Ms. Arroyo's signatures on several documents and find the TIP document was the same as other documents that she admitted that she signed. Moreover, her TIP is referred to in other documents throughout the year. Further, because Ms. Arroyo did not receive an effective rating the prior two years, she, as an experienced teacher would have expected one for the 2016/2017 school year, and would have questioned her superiors about this. Therefore I find that the evidence establishes that she did receive a TIP that year as testified credibly by Ms. Remer and Mr. Sigerson. Ms. Arroyo also claimed that she did not provide lesson plans as no one asked for them. I do not credit this claim as the Department witnesses testified credibly that they offered on multiple occasions to review submitted lesson plans for her.

Ms. Arroyo signed the observation on February 28, 2017, the date of her post observation while Mr. Sigerson did not sign the observation until 3/1/2017. Ms. Arroyo did not submit any comments on the observation at that time. Rather, her response to this observation was e-mailed on November 8, 2017. That response was dated February 20, 2017, 8 days before the post observation occurred. For the same reasons, I discussed above in Specification (h) I find her response suspect at best, and I do not credit Arroyo's testimony. Rather, I credit Department's witnesses.

Accordingly, I find that the department has proven Specification. 1(i).

On February 28, 2017, Remer had a midyear professional conversation with Ms. Arroyo as per New York City Advance requirements. Remer told Arroyo at that time that it was expected that they would see significant progress from Arroyo given all the supports that were provided to her. Remer advised Arroyo that she failed to meet some of the requirements in her TIP and did not email Remer with her progress or lesson plans, despite her having received at least two copies of her TIP and no explanation why she failed to do so.

During her testimony Ms. Arroyo testified that all her students had notebooks in class. However, Ms. Remer conducted an instructional round on March 20, 2017 Ms. Arroyo's classroom. This was done for all teachers and the teachers were advised that there would be an instructional round in the future. Ms. Remer found that Ms. was not in compliance with instructional round as only 17 out of 26 students had a notebook on their desk. When questioned on cross, Arroyo said that the students did not need their notebooks open as they were doing a quick test. However the Department contends that does not account for why some had notebooks open. I agree.

Ms. Arroyo was informed that a formal observation was going to be conducted on March 23, 2017. Prior to this observation, Ms. Remer met with Ms. Arroyo on March 15, 2017 to do a pre-observation conference. The pre-observation

conference was a chance for Arroyo to have really clear expectations. Arroyo had the opportunity to bring her lesson plan to review before the actual observation. Arroyo claims she never met with Sigerson or Remer before this observation. As the observation itself refers to the 3/15/2017 conference with Ms. Remer, as Ms. Arroyo did not mention that she did not have a pre-observation conference at any time around the observation, and as I have found Ms. Arroyo not to be a credible witness, I do not credit Ms. Arroyo's testimony that she did not have a pre-observation conference.

On March 23, 2017, Principal Timothy Sigerson and Karen Remer conducted Specification a formal observation of Ms. Arroyo's pedagogy that is referred to in the Specification 1.j. Mr. Sigerson rated the lesson "Developing" in the areas of "Demonstrating knowledge of content and pedagogy," "Managing student behavior," and "Using questioning and discussion techniques," and "Ineffective" in the areas of "Designing coherent instruction," "Engaging students in learning," and "Using assessment in instruction." The class was an $11^{th}/12^{th}$ grade Chemistry class. Sigerson's testimony at the arbitration was consistent with what he wrote in his evaluator form. In his observation Mr. Sigerson listed what occurred during the class. In reviewing the lesson, Sigerson did find that Arroyo was generally effective in creating an environment of respect and rapport, but wrote, *inter alia*:

- The teacher's plans and practice reflect a limited range of pedagogical approaches to the discipline or to the students.
- Learning activities are poorly aligned with the instructional outcomes, did not follow an organized progression (example- incorrect instruction on handout)
- While standards of conduct appear to have been established, their implementation is inconsistent (example- two students eating, one not taking notes and just playing with the calculator)
- The teacher attempts to ask some questions designed to engage students in thinking, but only a few students are involved.
- The learning tasks/activities, materials, and resources are poorly aligned with the instructional outcomes; or require only rote responses; with only one approach possible. (Example-directions on handout are unclear as the first table says to write the formula but the formula is given so some students are writing the name of the formula while others are writing if the formula is an acid or base. Teacher did not make verbal a clarification until 11 minutes after the activity started.)
- There is little monitoring of student learning; feedback is...of poor quality. Students do not engage in self or peer assessment. (Example-teacher did not explain to student why he is incorrect when he said the formula was the molarity formula.)
- Teacher engages in no professional development activities to enhance knowledge or skill
- Teacher continued non-compliance with TIP suggestions and directives.

The report that listed a series of "Recommendations," including the following:

- Check to see who understands the naming process and who doesn't. Then once you understand that, students could get differentiated handouts, one that had more step-by-step directions while the other could be a bit more rigorous.
- Brainstorm ways to incorporate more checks for understanding as the lesson progresses so that students are able to be successful and reach the daily objectives and goals in a manner that allows for understanding that is rigorous enough to allow them to be successful on the Regents exam in Chemistry.
- Finish your curriculum map for the Chemistry class.
- Chapter 10 and 11 of "Principles of Learning" and "Models of Training"... To hear strategies about creating and maintaining daily written lesson plans that aligned to student needs and can increase engagement with rigorous content information. Send an email regarding your reflections on what strategies you want to apply.

In his notes, Sigerson wrote that Ms. Arroyo had a pre-observation with the Vice Principal who set out her expectations as to what should have been included in the lesson. He also noted that although Ms. Arroyo had a mid-year review meeting on 2/28/17 where Ms. Remer offered additional supports, Ms. Arroyo "has not handed in, emailed, or scheduled a meeting to discuss any aspect of your TIP." Sigerson also offered to have her set up an appointment if she needed additional support. She did not make such an appointment. Sigerson concluded that the lesson was not properly planned or executed. He did not see any evidence of learning in this lesson. Arroyo claims that she did not discuss her TIP at her mid-year meeting.

However, at the hearing, Ms. Arroyo disagreed with the conclusions of this observation. Arroyo testified that though Remer and Siegerson were present at this observation, only Ms. Remer was there for the entire class and she did her post observation with Ms. Remer. She claimed that Mr. Siegerson was only there for 7 minutes. Ms. Arroyo testified that during the class she tested the pH of materials. She disagreed with the observation's conclusion that this did not relate to the class objectives of learning to write the names of acids and bases.    Thus in her lesson plan it clearly stated that the "Instructional Objectives" of the lesson included "Identify the pH of acid and base indicators" and "Naming and identifying acids and bases." Arroyo also denied the observations statement that students ate, used cell phones or used a calculator, in her class if they were not solving problems. She also claimed that she used both lower level and high-level questions in her lesson plan and that all of her students had reference tables. She claimed that students were learning in her class because they performed the demonstration. She also claimed that the observation report was inaccurate, as she never used the term "molarity" in

the lesson.  Ms. Arroyo also claimed that she did engage in professional development activities. She continued to deny ever having received a TIP for that year.

Ms. Arroyo did not send in a response to this observation at the time of the review. Ms. Arroyo sent a response to this observation that is dated May 24, 2017 but not e-mailed to Sigerson until November 28, 2017.  Arroyo said that she wrote the responses but since English is not her first language, she gave her notes to her daughter to write.  However her daughter had no time so she gave it to Betsy Combier who returned it to her for review.  For the reasons, I have already given, and the inconsistencies in Ms. Arroyo's testimony and documents submitted, I give little weight to Ms. Arroyo's testimony and her November 2017 response.  Rather I credit Ms. Remer and Mr. Siegerson whose testimony was consistent with the documentation presented.

Accordingly, I find that the Department has proven Specification. 1(j).

On or about April 4, 2017 Ms. Remer met with Ms. Arroyo to remind her that all chemistry classes must be done in English only. She also advised Arroyo on how she should handle situations in which a student responds in Spanish. (D 40)

On or about May 9, 2017, upon observing some students of Ms. Arroyo in the hallway, Ms. Remer entered Ms. Arroyo's classroom and noticed that Ms. Arroyo was not paying attention to students in the back of the room.  She confirmed this observation in an e-mail dated May 22, 2017 and asked her to make an appointment to see her in reference to TIP compliance.  Ms. Remer asked Ms. Arroyo to set the appointment because she had not done anything with her TIP. (D 41)

Wendy A. Poveda has been an assistant principal in organization at the College Academy since May 2017. She is responsible for leading the Language Arts Department. She designs all professional learning at the school as part of the Professional Development Committee. She has worked for the Department of Education since 2005. She is very familiar with the Danielson framework. Her last rating was "highly effective. She taught in a dual language program" as she is a bilingual certified teacher.

On May 22, 2017, Assistant Principal Wendy Poveda conducted an informal observation of Ms. Arroyo's 11th/12th grade Chemistry class, the results of which are subject of Specification 1.k. Assistant Principal Douglas George accompanied Ms. Poveda on this observation. Ms. Poveda was not given any information about Ms. Arroyo before she did the observation.   Poveda rated the lesson mostly "Unsuccessful" and partly "Developing." Ms. Poveda was consistent with her testimony at the arbitration, and her low inference notes taken while she observed the class were consistent with what she wrote in his evaluator form.   In her observation Ms. Poveda listed what occurred during the class. In reviewing the lesson, Poveda did find that Arroyo was generally effective in creating an environment of respect and rapport, but wrote:

- The teacher displays little or no understanding of the range of pedagogical approaches suitable to student learning of the content.
- Do now was extended beyond 20 minutes. (Usually should be shorter).
- Mini lesson was not evident.
- Learning activities are poorly aligned with instructional outcomes.
- Teacher attempts to respond to disrespectful behavior with uneven results (teacher acknowledged two students that called out.)
- The teacher's questions are of low cognitive challenge, with single to correct responses, and are asked in rapid succession.
- The lesson has no clearly defined structure, or the pace of the lesson is too slow or rushed.
- Questions and assessments are rarely used to diagnose evidence of learning. (Students were unable to work collaboratively or independently)
- No evidence that TIP recommendations were implemented.

The report that listed a series of "Recommendations," including the following:

- Focus on the clear alignment between objectives and learning activities. Consider the following questions when planning, what steps do you take to align learning objectives to tasks and activities? How do you determine when learning activities will lead to student mastery of the lesson objective? Also, consider using a timer to help you with pacing during your lesson. You can aim for your "do now" to be between 5-8 minutes, your mini-lesson 10-12 minutes followed by 30 minutes of small group or independent work.
- Create systems and routines that will support student independence.
- When students engage in collaborative learning tasks, ensure that each group member has a clear role to promote equity of voice and participation.
- Identify how the lesson activities will provide opportunities for student-to-student discussion, high-level thinking, differentiation, and literacy development. Ask yourself "where in this lesson can I stop to ask the question that will spur student-to-student discussion?" And "how can I add in the higher order thinking question in this topic?" After asking questions, provide time for students to process the question, "wait time."


Ms. Poveda also offered to have Arroyo email her a lesson plan to review and to set up an appointment to meet with her. Her offer was made into an assignment in an email dated 5/24/2017. A copy of the lesson plan was included in the review. During the post observation interview Ms. Arroyo never defended her pedagogy. Also, Ms. Arroyo never took Ms. Poveda up on her offers to meet with her or to review a lesson plan.

Ms. Arroyo disagreed with the comments in the observation. Thus, Arroyo testified that when Poveda entered her classroom she had already finished the "do

34

now" portion of the lesson, and the "mini lesson" had just finished.   She stated that her students were working in groups after the mini lesson, and that they were practicing for the Regents. Ms. Arroyo also claims that she had finished the Power Point portion of the lesson before Poveda entered the classroom. She testified that Poveda spent 34 minutes in her class and that she never asked what occurred in the classroom before or after Poveda was in the classroom. Ms. Arroyo testified that her students never called out and were involved in the class, as they had to take the Regent exams. Ms. Arroyo pointed out that the student who told Poveda that he did not understand the class was one who rarely showed up for class. Ms. Arroyo also explained that sometimes she asked low-level questions as the students were on a low level. Also she did not help a student who was on a low level as she had a paraprofessional in the class to help with those students who work on a lower level. Ms. Arroyo testified that Ms. Poveda was not competent to evaluate her, as she was not knowledgeable in chemistry, and had not been in the school long enough to know about high school students and how they work. Ms. Arroyo also testified that she used low-level questions sometimes in order to help the students understand the reference table and she felt that low-level questions were the best way to accomplish this. She also testified that in the post observation, they never discussed about her growing and developing professionally. Ms. Arroyo did not send a response to this observation at that time.

I have problems as noted above with crediting Ms. Arroyo's testimony, as she made no complaints at the time of the observation. Yet without contemporaneous notes she remembers that Ms. Poveda spent 34 minutes in her class that day but throughout her cross-examination she could not remember other events at all such as attending certain professional development lessons.  Ms. Poveda, on the other hand, testified consistently with the notes in the observation.  No evidence was presented showing any bias on the part of Ms. Poveda in making her observation of Ms. Arroyo's pedagogy.   I also find no merit to Ms. Arroyo's claim that that Ms. Poveda was not competent to evaluate her, as she was unfamiliar with the school and with the teaching of chemistry. Rather I agree with the Department's claim that pedagogy is a part from the subject matter.  It is a method of teaching that Ms. Poveda is extremely knowledgeable. Her observation notes were very clear and were consistent with the other witnesses who observed Ms. Arroyo's pedagogy. As a result, as noted above, I do not credit Arroyo's testimony. Rather, I credit Poveda's testimony.  It is clear from the observation that Ms. Arroyo's pedagogy during this lesson was not acceptable.

Accordingly, I find that the Department has proven Specification. 1(k).

On June 15, 2017, which was the end of the 2016/2017 academic year, Ms. Arroyo received her MOTP score.  Her score was ineffective. Ms. Arroyo signed this document as having received it.

On September 15, 2017, Principal Sigerson met with Ms. Arroyo where she was given her 2016-2017 Advance Overall Rating for the previous school year. In

that report her MOTP rating was "Ineffective" and her MOSL rating was "Effective."
Her Annual Professional Performance Review found her overall rating to be
"Developing." Ms. Arroyo did not sign this document upon advice of counsel.  Only 2
of her chemistry students passed the Regents that year.

During the hearing, Ms. Remer testified that Arroyo's efforts to improve her
pedagogy in 2014-2015 and 2016-2017 school years were minimal. She further
testified that the only time she saw a little bit of progress was when Ms. Morano put
a very hands-on approach to helping Ms. Arroyo, almost writing Ms. Arroyo's daily
lesson plans. However as soon as that internal scaffolding was taken away, there
was a slip back in Ms. Arroyo's pedagogy. This occurred despite the offering of
numerous assistance on the part of the DOE as discussed more fully below.

PROFESSIONAL DEVELOPMENT OFFERED TO ARROYO

Over the three years that the Specification covered, Ms. Arroyo was offered
ample professional development.  Thus, during the-2014/2015 school year, school
wide common planning was held at least once a week where all teachers could get
together and go over school wide initiatives. They also held department meetings.
Teachers who had so requested had assistance from Assistant Principals (APs) and
from lead teachers. Remer met with Ms. Arroyo to elaborate on how to utilize ARIS
Learn modules. Ms. Arroyo was given a "tool-kit" handout packet of strategies to
areas identified in TIP. Ms. Arroyo also has assistance from AP Karen Remer and the
lead science teacher Ms. Moreno.   She received information to improve her
pedagogy after each observation. Mr. Sloman presented a document showing that
Arroyo regularly attended common planning sessions.  That year, the School set up
common planning three days a week for teachers to be able to have pedagogical
discussions with colleagues, conduct gap analysis and consultancies, and create
rigorous lesson plans, implementation, and assessment strategies. They also had
pop-in visits which are short visits where it's a chance to take a little bit of low
inference notes and make suggestions without any ratings attached.

Arroyo admits signing a TIP in 2014/2015.  She did not submit anything
rebutting that TIP. Arroyo admits talking to Remer about her TIP mid year but not
at the beginning or the end of the year.  Arroyo does not recall if she met with Mr.
Sloman on May 26, 2015, the end-of-the-year conference. Arroyo never sent a letter
to Remer stating that she did not agree with anything on the May 26, 2015 letter.
Arroyo claims that Ms. Remer never told her the way she wanted her to do things.

As noted above at the beginning of the 2015/2016 school year, Arroyo
received a TIP in which she was advised of what parts of her pedagogy needed to be
improved.  She again received information to improve her pedagogy after each
observation.

D 13 was also evidence of personal assistance to Ms. Arroyo that did not
count as an observation. Ms. Batista observed part of the class that day and gave her

suggestions on how she could better her pedagogy such as, but not limited to, using the resources given to her and asking more critical thinking questions during the lesson. Arroyo met with Batista and agreed to implement Batista's recommendations in her plans. Arroyo was receptive to the suggestions. Arroyo never articulated concerns regarding these suggestions. That year Ms. Arroyo was given advance notice when the formal observations occurred and had opportunities to prepare and ask for advice. She did not ask for advice. Arroyo was advised to get information from regular teachers before doing a class the second year. She was told to have a basic lesson always ready.

As noted above at the beginning of the 2016/2017 school year, Arroyo again received a TIP in which she was advised what parts of her pedagogy needed to be improved. She again received information to improve her pedagogy after each observation. During that school year professional development was also offered at the College Academy. Thus, all the teachers had the opportunity to meet twice a week during the first semester when the students were having lunch. Topics at these meetings ranged from how to engage students better to working on questioning techniques. Ms. Remer ran science department meetings at least once a week.

During the second semester Arroyo's number of classes that she was teaching was restructured from five classes to four classes so that she would have more time to prepare and implement some of the structures that were given to her in professional development. That year Remer recommended that Arroyo read chapter seven and chapter eight in the "the Skillful Teacher." This book had been given out to all teachers, including Ms. Arroyo, at the beginning of the year as a resource. The chapters are separated into subjects such as classroom management, planning, different seating arrangements, etc. The school also provided the use of teacher assistance from a company called Blue Engine. These individuals are experts in math and have ideas on how to implement and how to scaffold. It was suggested that Arroyo work with them. Arroyo did not use them. In addition, 90-minute department meetings were held. The school also provided peer collaborative teacher Mr. Maller as a resource to Arroyo. Maller is a highly effective teacher who Ms. Arroyo could have gotten help from with her pedagogy.

Although suggested to Arroyo, Arroyo provided no information that she worked with ELA teachers to gain literacy information on her students. If she did, it would have helped the English language learners in her class to do better on the Chemistry tests, which are taken in English. In 2016/2017 Arroyo admitted attending professional development on collaborative learning, but could not remember if she did ones on shared instructional focus or on how to do successful Regent's prep.

Ms. Remer also has an open door policy which Arroyo did not take advantage of. Nor did she ever schedule an appointment to meet with Remer. Ms. Arroyo never discussed her unit plans with Remer. Ms. Remer had no feedback on whether

Arroyo engaged with an inter-visitation with another teacher, Mr. Abril so she could study his successful handling of a class.  In this regard Ms. Arroyo never handed in the College Academy Intervisitation Tool to Ms. Remer.

The Department also presented a true and accurate copy of Ms. Arroyo's 2016-2017 log of assistance. This is a record for Ms. Arroyo because she had a TIP the year before and the Department wanted to document the intensity of the support they were offering Ms. Arroyo.  These documents showed that Ms. Arroyo received assistance in her pedagogy numerous times during the 2016-2017 school year.  The Employer also presented a document entitled Professional Learning Calendar 2016-2017 that showed all the opportunities of professional development offered by the school to Ms. Arroyo and other teachers at her school.

The Department also presented evidence that Arroyo did attend several professional development meetings during that year and received a plethora of materials to help her with her pedagogy.  Arroyo met her 175-hour professional development during her time at the College Academy.  Arroyo attended training on the topics of questioning and discussion techniques, on engaging students in learning but then she said she does not remember even though she signed in. Arroyo admits never requesting additional assistance from administrators during the 14/15 school year.  She admits never working with Ms. Moreno on one-to–one professional development, on lesson plans.  Arroyo claims she followed the school inter-visitation protocol but admits that she did not go to the teacher recommended by Remer but rather went to a science teacher, Jeremiah Rodriguez she thought would be more helpful to her, and did not fill out The College Academy inter-visitation form. Arroyo claims that she asked Remer to model for her how it should be done in the classroom but never put these requests in writing or in an e-mail. Arroyo stated that asking rapid-fire questions is one of her teaching techniques.  She admits never sending Sloman any of her lesson plans to look over.

It is clear from the above recitation of aid provided to Ms. Arroyo, more than adequate assistance, support and guidance by her supervisors was given to her during the three charge years.  That Ms. Arroyo failed to follow through with, or ignore, the assistance of her supervisors is not the fault of the Department.  Nor is her failure to implement the recommendations of her supervisors the failure of the Department.

**Positions of the Parties:**

**Department's Position.**

The Department has alleged and contends that it has overwhelmingly proven, that over the course of three charge school years, Ms. Arroyo has exhibited an inexcusable pattern of incompetent and inefficient service and failed to comply with directives designed to remedy the ever-increasing deficiencies observed during that time by administrators. The Department contends that it has clearly proven

that Ms. Arroyo lacks the capacity to be effective in her instructional delivery and that it has met its burden of proof to prove its Specifications by a preponderance of the evidence on the grounds that:

    A. Each of the Department's witnesses has extensive experience in the Department and testified credibly.

    B. Ms. Arroyo has not testified credibly or clearly.

    C. Ms. Arroyo was provided with significant assistance, support and guidance by her supervisors but failed to not only accept the recommendations but refused to implement the recommendations to improve her performance and pedagogy.

The Department also alleges that it has met all of the necessary elements for just cause on the grounds that:

1. Ms. Arroyo was put on notice as to the performance levels required and
2. The Department's expectation that Ms. Arroyo properly instruct her students and comply with all professional duties is reasonably related to the efficient and orderly operation of the Department's business.
3. A full and fair investigation of facts was conducted with respect to each specification and Ms. Arroyo was provided with an opportunity to respond to each specification and Ms. Arroyo was provided with an opportunity to respond to each of the observation reports and letters presented to her.
4. There is no evidence to indicate that the administrators were not fair and objective in their evaluations of Ms. Arroyo's performance or in their investigation of her conduct.
5. There is clear and convincing testimony and documentary evidence supporting the fact that Ms. Arroyo rendered incompetent and inefficient service and engaged in acts of insubordination.
6. There is no evidence to suggest unequal or unfair treatment.
7. Ms. Arroyo's conduct warrants termination.

Thus, the Department claims that the administrators testified clearly and incredibly to Ms. Arroyo's incompetence. The Department claims there is no reason not to credit their testimony. The Department claims that there is no evidence that the administration expected anymore from Ms. Arroyo than they expected from any other teacher.

The Department claims that the witnesses presented by the Respondent should be given little weight, as none of them were administrators who were trained in conducting classroom observation. With regard to Ms. Arroyo, the Department claims that her testimony should not be credited in view of the inconsistencies in her testimony and her submission of backdated rebuttals on November 8, 2017.

The Department also points out that Respondent receives more than sufficient support from the administration to help her develop a good pedagogy, but that she did not either learn from it or rejected the assistance offered to her.

The Department claims that cases it cited support Ms. Arroyo's discharge and that *Arak*, cited by Respondent, is no longer relevant and instead cited several more recent cases in which arbitrators discharged teachers without citing *Arak*.

Finally, in support of the Department's position the termination is the only appropriate remedy, and penalty, the Department claims that a fine or suspension would put teachers who cannot teach in the classroom and would jeopardize children's futures, citing several cases in support.

## RESPONDENT'S POSITION

Respondent claims that Ms. Arroyo is a highly intelligent, innovative and hardworking chemistry teacher, who was targeted at her school for no valid reason. Respondent claims that she knows her content area, chemistry and is highly skilled in classroom management, and that others copy her pedagogy. Respondent claims that it presented in the form of witnesses that showed the bias of administrators against keeping Respondent in the classroom, the prohibition of senior transfers for UFT members, high salary jealousy and vindictiveness.

Arroyo claims that she feels that she is being attacked because of her country of natural origin and because her first language is not English. She claims that Remer says negative things about her. Arroyo also claims that while she received most of the observations, nothing in the observation suggestions helped her.

Respondent further claims that the Department failed to show that the Respondent was incompetent and failed in their efforts to validate the Specification in this case. Respondent claims that the proper standard to apply was defined by Arbitrator Carol Daugherty

1. Did the employer give the employee forewarning or foreknowledge of the possible or probable disciplinary consequences of the employee's conduct?
2. Was the employee's role or regulation reasonably related to A, the orderly, efficient, and safe operation of the Department of Ed's schools' educational guidelines; and B, the performance that the employer might properly expect of the employee?
3. Did the Employer, before administering discipline to an employee, make an effort to discover whether the employee did, in fact, violate or disobey a rule or order of the administration?
4. Was the Employer's investigation conducted fairly and objectively?
5. Did the investigator obtain substantial evidence or proof that the employee was guilty as charged?
6. Has the Employer applied its rules, orders, and penalties evenhandedly and without discrimination to all employees?

7. Was the degree of discipline considered by the Employer reasonably related to, A, the seriousness of the proven offense, and B, the record of the employee in his or her service with the Employer?

Respondent relies heavily on the case *Arno Arak*, 28 ED rep. 302 (1988). In that case a three-member panel dismissed the charges of incompetence against Arak, saying that although Arak was not a good teacher, his performance "did not fall below the minimal level expected of a reasonable teacher." Rather according to this case the following criteria should be followed in deciding whether or not a teacher should be dismissed:  1. Requisite knowledge of subject matter content. 2. Ability to communicate content facts. 3. Ability to motivate interest in students 4. Ability to maintain a classroom environment reasonably conducive to learning and 5. Ability to assess and evaluate students' performances.   Respondent claims that this is what has always been applied against tenured teachers.

Respondent also claims in the case of *New York City Department of Education and Madeline Postman*, SED File No.25,283, gave a threefold burden of proof with regard to each charge including: 1. The Department must establish the factual allegations the Specifications charged by a preponderance of the credible evidence. 2. It must prove that the proven facts legally rise to the level of the grounds enumerated in the Charge. And 3. The Department must establish that the proven offense is grounds for the imposition of discipline under the just cause doctrine. The Respondent maintains that because the Department has failed to meet this three fold burden, the Charges against the Respondent must be dismissed.

Respondent also contends that Ms. Arroyo was the more forthright and truthful of the witnesses and she and her witnesses should be credited over the Department's witnesses.  Respondent would also have me reconsider my ruling regarding the relevance of the testimony of Marlene Sanchez and Dr. Rudolpho Santos and the production of student records, as she should have been allowed to submit all evidence that she believes necessary for a proper defense.

Respondent is challenging that the Danielson Rubric as flawed.   Thus, Respondent would have me find that an individual who has not taught Chemistry and with no background in the subject could not rate the pedagogy of Ms. Arroyo who has extensive experience in this subject.  Further Respondent would have me find that the observation system is itself flawed, as the individual doing the rating is not present for the entire class and could not get an accurate picture of Ms. Arroyo's pedagogy.  She claims that Students with IEPs have difficulty learning but that the pedagogy she provides them is what helps them learn.  Thus, she uses PowerPoint and lets them use her computer to help these students.

Respondent also contends that the evidence presented against Ms. Arroyo was uncorroborated hearsay.  She further contends that the Department did not present a preponderance of evidence in support of their hypothesis that the Respondent was permanently incompetent either in the past, present or future.

Respondent further claims that there was no meaningful one-on-one assistance from anyone at the school and there was no professional development specifically designed to assist the Respondent. Respondent claims that contrary to the Department, she does engage in assessment of the students through quizzes. Respondent also claims that although she gets little help from the school, she wants to improve and attends professional development sessions every week at school

Finally, Respondent contends that if there should be discipline here, it should be progressive discipline, less than discharge and asks that I review the case of *The Board of Education of the City School District of the City of New York aka the New York City Department of Education (DOE) v. Ann Legra*, SED 23,257 (2014).

## Discussion and Opinion

Ms. Arroyo is a tenured teacher. However, tenure does not give the employee the right to keep his or her job for life. Tenure simply gives teachers the right to due process if charged with either misconduct or incompetency.

There are essentially two questions to be addressed: Did the Department meet its burden of establishing that the teacher was objectively evaluated and found to be not competent in the classroom? And, if so, did the Department meet its burden of establishing that it in good faith attempted appropriate, individualized, and timely efforts at remediation and then either because of the teacher's inability or unwillingness to improve, the remediation efforts were not effective?

I address the Specifications in the order that they appear in the charging document (DOE 2)

1.    During the 2014-2015, 2015-2016 and 2016-2017 school years, Respondent failed to properly, adequately, and/or effectively plan and/or execute separate lessons as observed on or about each of the following dates:

    l.     November 12, 2014;
    m.    March 18, 2015;
    n.    May 14, 2015;
    o.    December 4, 2015;
    p.    May 6, 2016;
    q.    May 18, 2016;
    r.    September 29, 2016;
    s.    January 4, 2017;
    t.    February 16, 2017;
    u.    March 23, 2017; and/or
    v.    May 22, 2017.

The Department sought to prove these allegations through the testimony of their witnesses and the memorialization and documentation of the events set forth in the Proof section above.  As discussed above, the exhibits and testimony of the administration has been persuasive.  As I found above, the allegations in these Specifications have been proven by a preponderance of the credible evidence.

2.    Respondent failed, during the 2014-2015, 2015-2016 and 2016-2017 school years, to consistently implement directives and/or recommendations for pedagogical improvement and professional development provided in observation conferences with administrators and/or outside observers; instructional meetings; teacher improvement plans; one-on-one meetings with administrators, school-based coaches, and/or outside observers; as well as schoolwide professional development, with regard to:

    h.    Proper planning, pacing, and/or execution of lessons;
    i.    Using appropriate methods and/or techniques during lessons;
    j.    Demonstrating knowledge and content of pedagogy;
    k.    Designing coherent instruction;
    l.    Using questioning and discussion techniques;
    m.    Using assessment in instruction; and/or
    n.    Student engagement.

As illustrated by the exhibits offered by the Department, and the testimony of the administrators, a number of opportunities for professional development were available to the Respondent during the years relevant to this case.  She did not change her practice or improve her pedagogy.  The Department has proven Specification 2 by a preponderance of the evidence.

I find no merit to Respondent's defense to these charges.  Thus, in support of its claim Respondent was unlawfully terminated because she was Hispanic, Respondent presented the testimony of Thomas Garcia and José Medino who testified that Remer did not like the bilingual teachers. They gave the example of Mr. Pena as an example. However this is belied by the testimony of the same witnesses who admitted that other bilingual teachers were not treated in a disparate manner. Respondent claims that there was a bias of administrators against keeping Respondent in the classroom.  No testimony was presented to support this allegation. Respondent claims that there was a prohibition of senior transfers for UFT members. No evidence was presented to support this allegation. Respondent also claims that the Department witnesses had high salary jealousy and vindictiveness. No evidence was presented to support this allegation. Further, Ms. Arroyo was not the only Dominican teacher at the school. One of the observers Ms. Pervada is also Dominican.  Arroyo even testified that she is not sure that Mr. Sloman or Mr. Sigerson was trying to target her.  She did think Ms. Pervada was targeting her because she was Latina or Dominican but had no evidence to support this concern.  She thought Remer was targeting her since 2010 but Ms. Remer rated

Ms. Arroyo as "Satisfactory" until 2013. Thus, in the absent of relevant evidence supporting her defense, I find no merit to this defense.

Also, there is no evidence to support Arroyo's claim that the observation reports are inappropriately subjective. Ellentuck v. Green, 202 A.D. 2d 425 (1994). The Danielson rubric and the observation reports are the agreed upon methods of observing and rating teachers between the Union and the Department. As such Arroyo has the obligation to teach in accordance with the Danielson framework.

Respondent also claims that testimony should be let in for more than 3 years prior to her discharge. However the collective bargaining agreement governing these proceedings limit testimony on the merits of this arbitration to no more than 3 years. Thus, the arbitrator is limited to the charge period in the specification. It is not customary to go beyond the scope of the charged period unless it's for the penalty.

I reviewed all the cases submitted by Respondent in support of her charge. I agree with the Department that they are inapposite to the situation here. Those cases were either issued before the implementation of the Advance and the Danielson framework, and therefore not the law that is followed today or involved situations where the Respondent's witnesses were credited over those of the Department, where Respondent's defenses were found to have merit, where the Respondent's pedagogy was found to be satisfactory in certain situations, where Respondent made serious attempts to respond to criticism or improve her pedagogy or where the Department did not provide Respondent with adequate professional development tailored specifically to Respondent's needs. Such is not the case here. Thus, *New York City Department of Education v. Deborah Rykman,* SED 17,731 was a case where the respondent did not receive sufficient help from the Board and the Board did not conduct sufficient observations of Ms. Rykman's pedagogy. *In the Matter of the Board of Education of the Island Trees Union Free School District v. Lawrence Butcher,* 61 AD 2d. 1011 (1978) is an old case that does not involve review under the Danielson framework. *The New York City Department of Education v. Michael Mullen,* SED 17,223 is also a case decided before the implementation of the Danielson framework. New York Department of Education v. Madeleine Postman, SED 25,283 is also inapplicable here as it was a misconduct case.

Respondent cites and relies heavily on *Board of Education v. Arak* as support of her contention that she is a competent teacher. This case cites five specific skills that a teacher needs to possess to deliver a minimally acceptable level of instruction. However even under this case, Respondent cannot be considered a competent teacher. In this regard under her observations Respondent is continuously found not to be able to communicate content facts, to no longer be able to motivate and interest students and maintain a classroom environment reasonably conducive to learning, which are four of these skills. *Arak* is a 2008 case that is no longer relevant as is not required to be followed in these 3020-a proceedings. Many arbitrators don't use it. The post 2008 cases hold teachers to a higher standard. See

*Department of Education City of New York v. Lisa Hayes*, SED 9,771 (2009); *New York Department of Education v. Alan Goddank*, SED 13,877 (2910), *New York City Department Of Education v. Malcolm Mention*, SED 16,739 (2011) *Department of Education v. Patricia Benjamin*, SED 13,761 (2011), *New York City Department of Education v. Carla Postan*, SED 17,699 (2012). *New York City Department of Education v. Claudette Bell*, SED 30,138 (2017).

Further, though Arroyo was rated satisfactory in the past, this cannot excuse substandard performance today. (see *Matter of Patterson v. City of New York*, 96 AD3 565, 566 [1st Dept. 2012], Onwukwe-Nwagwu v.) City of New York, 2017 N.Y. Misc. LEXIS 4678). Rather, in addition to the Respondent's tenure, I considered Respondent's pedagogy during the past three years, efforts made by the Department to assist Respondent in correcting her classroom management style, and Respondent's unwillingness to accept that her pedagogical skills needed improvement.

As described above in my section on Professional Development, I find that the Department provided Ms. Arroyo with professional development in a variety of ways including those given to teachers generally and those tailored specifically to her perceived needs. However, I find that Ms. Arroyo did not use these opportunities to her advantage. Underperforming teachers should at least engage the administrators during post-observation conferences. This did not happen here. Every administrator testified that Ms. Arroyo barely said anything during the post-observation conference. In *New York City Department of Education v. Claudette Bell, supra.*, a respondent was fired who failed to engage in any sincere effort to engage administrators and implement recommendations. Here, despite being on a TIP for three years, Ms. Arroyo repeatedly failed to implement the directives, recommendations and professional development provided to her through observation conferences, teacher improvement plans, and one-on-one instructional sessions.

Here I find that the Respondent has done nothing to improve her pedagogy and did not teach, as she should have. The Respondent failed to execute a single lesson that on balance was more positive than negative. Based on the evidentiary record, I find there is no basis in the record that the Respondent would engage in any meaningful efforts to change her pedagogy. Her lack of participation in the observation conferences and her failure to improve her pedagogy demonstrate that Respondent is unwilling or unable to improve her pedagogy. The Respondent did not take any responsibility for the repeated failure to implement recommendations in differentiation, assessment, meeting lesson goals, managing the class, keeping students on task, asking higher order questions, and did not create an environment conducive to students for learning in her care. Instead, Respondent has told us that her feedback was unhelpful and unnecessary. Respondent insisted that her pedagogy was good and she was not receptive to the efforts of the administration and professional development that was offered. See *The Department of Education of the City of New York v. Allison Chase*, SED 25,138. Considering Respondent's failure

to acknowledge that she needs to improve, and the lack of progress shown during the Charge period, there is no reason to conclude that she would improve with pedagogical assistance.  See *The Department of Education of the City of New York v. Eric Weinstein*, SED 28,357 (2016).   While Respondent is a lovely and pleasant woman who has demonstrated that she cares for her students, dismissal is still appropriate as it would be a disservice to the children attending her school to require the Department to retain her services.

While it is agreed that Ms. Arroyo is a likeable person with many years of service to the Department, this is not enough to maintain her job.  The Department has established just cause for disciplinary action under Education Law Section 3020-a.  The conduct proven with respect to Specifications 1 and 2 constitutes: incompetent and/or inefficient service; conduct unbecoming Respondent's position; neglect of duty; substantial cause rendering Respondent unfit to properly perform obligations to the service; just cause for termination and just cause for disciplinary action under Education Loss section 3020-a.

Having found that the Department has proven Respondent's incompetency, I now must look at remediation efforts.  As set forth above, the evidence introduced documented professional development meetings, training, action plans, some coaching offers, and feedback and suggestions from numerous formal and informal observations.   As of the 2016-2017, Respondent had not improved in any appreciable way.  All of these admonitions and opportunities were designed to improve Respondent's teaching performance.  The Respondent's own testimony clearly established that she knew and understood that the Department was concerned with her pedagogy and that they wanted her to follow their suggestions to better her pedagogy.  It is also clear that Respondent was aware of the consequences if she did not improve her pedagogy. Despite all of the efforts to warn her that she was not actually teaching effectively, she persisted in ignoring administration and supervisors suggests and continued in teaching lessons improperly.

## PENALTY

Having found that the Department has proven Respondent incompetent as alleged in Specifications 1 and 2, and having found that the Department offered sufficient remediation; I must address the issue of penalty. Education Law 3020-a.4(a) allows for a wide range of penalties in the event of an incompetence finding, ranging from written reprimand, fine, suspension without pay, remedial actions, or dismissal. I have reviewed the previous decisions of hearing officers provided to me by the Department and the Respondent. None of these cases involves an identical factual situation, but the results of each are instructive.

However, I have reviewed the Observations and find the same pedagogical weaknesses again and again. I find that the Respondent adamantly resisted any suggestion that her practice needed improvement.  I find that the Department made

significant effort to provide respondent with opportunities for professional development, and I find the Respondent consistently and adamantly resisted those efforts.  While Respondent argues that there is no progressive discipline here, she was made aware on several occasions in the past three years that discharge was a possibility if she failed to improve her pedagogy.

I believe, on the evidence before me, that there is no prospect that Respondent could improve her performance to an effective level if she is offered further remediation. She has not improved over 3 years despite being under a TIP all three years. Her testimony showed that she does not believe that there is any problem to her pedagogy, and there is no indication that she will follow instructions under her past TIPs.  If she were going to change, she would have done so when she was put on notice that she was vulnerable when she received TIP, and she would have engaged in substantive discussions with administrators in post observation conferences.   She would have submitted lesson plans for review with the administrators, which she did not.   Termination is not a disproportionate penalty when measured against the seriousness and harm to the children. I do not believe that a fine or suspension would change her.   Accordingly, I determine that the proper penalty in this case is termination.

## AWARD

Specifications 1 and 2 are sustained.  The Penalty for the violations proven is termination.

Dated, May 30, 2018
Longboat Key, FL

_Lisa D. Pollack_
Lisa D. Pollack, Esq.
Arbitrator

State of Florida
County of Sarasota

I, Lisa D. Pollack, affirm that I am the individual described herein and that I have executed this instrument as my Opinion and Award in this matter.

_Lisa D. Pollack_
Lisa D. Pollack