2018-041621

NEW YORK
COUNTY CLERK'S OFFICE

JUN 0 5 2018

NOT COMPARED
WITH COPY FILE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

_____ x

In the Matter of the Application of
**REYNA ARROYO**                    INDEX NUMBER  100741/18

             **Petitioner,**        **NOTICE OF PETITION**

For a judgment pursuant to
Article 75 of the C.P.L.R.

  -against-

**THE NEW YORK CITY BOARD/DEPARTMENT
OF EDUCATION,**

          **Respondent**

_____ x

I, Reyna Arroyo, am a tenured teacher and the Petitioner pro se, and hereby affirm the following under the penalties of perjury: I am presently the Petitioner in the above captioned action and am fully familiar with all the papers and proceedings had herein, and with all the facts and circumstances hereinafter set forth.

1. Please take notice, that upon the annexed Verified Petition and upon all of the pleadings and proceedings heretofore had herein, I, Reyna Arroyo, "Petitioner" will move this court at the Motion Part Room 130 to be held in and for the County of New York at the courthouse located at 60 Centre Street, New York, New York on the 18th day of July 2018 at 9:30 o'clock of the forenoon of that day or as soon thereafter as parties can be heard for the following:

Pursuant to Article 7511, New York City Board of Education Chancellor's Regulations C-770, and Education Law Section 3020-a, Petitioner requests that this Court grant her the following relief: order the vacatur of the decision of Arbitrator Lisa Pollack("Pollack"),Esq., upon which this timely Notice is filed within the 10- day statute, namely to terminate Petitioner for hearsay comments and false claims as (a) excessive, and unwarranted punishment for unproven allegations (see Matter of Pell v Board of Education, 34 NY2d 222, 356 NYS2d 833; Matter of Colton v. Berman, 21 NY2d 322, 287 NYS2d 647); (b) misconduct by Pollack in procuring the award and in reaching the decision; (c) partiality of Pollack; (d) failure to follow the proper procedures of this article, despite the petitioner's continuing objections to the defects; (e) any other relief that is fit and proper.

Dated: June 5, 2018

New York, NY

Reyna Arroyo

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
————————————————————————x

In the Matter of the Application of
**REYNA ARROYO**                        **INDEX NUMBER 100741/18**

             **Petitioner,**           **VERIFIED AMENDED PETITION
                                        TO VACATE**
For a judgment pursuant to              **ARBITRATION AWARD**
Article 75 of the C.P.L.R.

  -against-

**THE NEW YORK CITY BOARD/DEPARTMENT
OF EDUCATION,**

           **Respondent**
————————————————————————x

I, Reyna Arroyo, am a tenured teacher and the Petitioner pro se,
and hereby affirm the following under the penalties of perjury:
I am presently the Petitioner in the above captioned action and
am fully familiar with all the papers and proceedings had
herein, and with all the facts and circumstances hereinafter set
forth.

### PRELIMINARY STATEMENT

1. Petitioner appeals from an arbitral award which terminated
her after *compulsory arbitration* pursuant to Education Law 3020-
a as and for her petition alleges and states: the decision of
Arbitrator Lisa Pollack, Esq. ("Pollack") in the matter
captioned above is not warranted in the record, has no basis in
law, is arbitrary and capricious, is inappropriate and
excessive, "shocks the conscience", and shows a level of

1

corruption and fraud perpetrated by an Arbitrator who is not

authorized to give herself the jurisdiction to decide probable

or Just cause for the specifications brought against Petitioner

pursuant to Education Law §3020, and §3020-a, and refused to

recognize the many statutory procedural and substantive errors

presented by the Department which did not permit her to decide

the case at all. See EXHIBIT 1, attached. Key to the injustice

of the decision to terminate Petitioner is the lack of a vote in

an Executive Session before charges were served, the fact that

Petitioner submitted a Motion To Dismiss For Lack of Subject

Matter Jurisdiction based upon the procedural error of law which

Arbitrator Pollack denied without any logical reason. Petitioner

never waived her Constitutional rights granted to her pursuant

to Education Law §3020-a(2)(a). Shockingly, Pollack wrote that:

> "In support of her argument, Respondent relies on the language of Education
> Law §3020-a(2)(a) ("[T]he employing board... shall determine...whether probable
> cause exists to bring a disciplinary proceeding against an employee pursuant to this
> section.") and Education Law §2590-j(7)(b)("Charges may be initiated by the
> community superintendent against such employee.") Respondent further argues
> that although Education Law §2590-h grants the Chancellor the same powers as the
> employing Board, the statute limits the Chancellor's ability to delegate those powers
> by specifying that the Chancellor may delegate such duties to community
> superintendent In other words, Respondent argues that the! language permitting the
> delegation of authority to community superintendents also serves to prohibit
> delegation of that authority to anyone else."

Indeed, Petitioner stated exactly the opposite, (See EXHIBIT 2),

that the Chancellor was **never given** a right to vote in an Executive

Session of the PEP according to the PEP Bylaws,(EXHIBIT 3) and

therefore **no delegation** to anyone at any time by the Chancellor
was permitted under Education Law 3020-a. Additionally, Education
Law 3020-a is the controlling law for 3020-a Arbitration. Education
Law 2590 was never mentioned in any part of the charging papers.
Thus Education Law 2590 is irrelevant to the arbitration reviewed
herein and is simply a diversion used by the NYC DOE to hide the
procedural errors which nullify the hearing itself. See Cardinale
v NYC Board/Department of Education, Index No. 85165/2017 (2018),
EXHIBIT 4.

2. Petitioner alleges that Arbitrator Pollack and Respondent,
with flagrant disregard for Petitioner's Constitutionally
protected rights, wantonly, recklessly, maliciously, knowingly
and purposefully, acting *ultra vires* individually and in concert
under a ministerial cloak and under color of state law, have
deprived Petitioner of her protected rights of enjoyment of
liberty and property in order to obtain a penalty of termination
for unproven allegations substantiated without any foundation in
law or fact. Indeed, throughout the hearing Arbitrator Pollack's
lack of knowledge and/or interest in the UFT Collective
Bargaining Agreement as well as Petitioner's rights is
astonishing.

3. In addition, Pollack stated on p. 3 of her decision that:

"Further there is no need for the IEPs. The Specification doesn't address any student behavior."

This is shocking. It is common sense that an incompetent teacher cannot engage students, and IEP students with behavior issues would act up. Good pedagogy teaches a lesson, and the student learns the lesson. The only way that actual evidence can show whether or not a teacher is good or not is to see the behavior of the students in the class, as well as the student outcomes. See Arbitrator Gloria Johnson's Ruling in the 3020-a of Sara Blumenstein, EXHIBIT 5 attached. In the case presented here, no information about student outcomes, behavior data of the students in Petitioner's class, or any facts relating to how the students performed, was submitted. The NYC DOE presented only the opinions of the charging party, Respondent, and thus failed to provide the proof necessary for the arbitrator to make any decision, much less termination of petitioner. Here, the rating process and the standard of review at the hearing followed by the DOE deviated from the guidelines to such an extent as to deprive petitioner of substantial rights. The Department and Arbitrator Pollack disregarded the excellent prior teaching record of Petitioner (See EXHIBIT 1) and ignored the procedures mandated by tenure law 3020-a(2)(a) as well as progressive discipline and the Just Cause Standard in order to validate an undefined characteristic of Petitioner's teaching called "incompetency" that was never defined or proven. The so-called "fact" of incompetency was found, charged, and testified to by

4

the same people, giving no one involved a chance to define or give an objective, unbiased view of what Petitioner's teaching standard actually was. Arbitrator Pollack ignored Respondent's testimony as well as that of her witnesses, showing a clear bias against her and her evidence presented at the hearing. Bias, prejudice, and bad faith were shown in the constant intrusion of comments by Arbitrator Pollack throughout the 3020-a hearing which tainted the testimony and showed her favoritism towards the Department of Education. The decision by Pollack to give credence to the allegations despite the proof that the charges were irrational and untrue is unconscionable and reeks of bad faith. Pollack wrote in her decision that student records were too burdensome to produce and students had privacy. This is wrong, and deliberately biased.   MATTER OF BD. OF EDUC. OF THE ISLAND TREES UNION FREE SCH. DIST. v. BUTCHER, 61 A.D.2d 1011 (1978).

For all of the above reasons, which will be detailed below, this Court must give the Petitioner the relief she requests, that the decision to terminate her be overturned and vacated in favor of an award that is reasonable and just and meets the applicable and relevant laws protecting Petitioner's property, liberty and civil rights. Matter of Pell v Board of Education, 34 NY2d 222, 356 NYS2d 833.

4. Petitioner received the decision of Pollack on May 28, 2018. Therefore, the filing of the Verified Petition on June 5, 2018 is within the 10-day requirement of the statute, and this appeal is submitted to this Court in a timely fashion and is properly placed within this Court's jurisdiction for review.

## PARTIES

5. I, Reyna Arroyo, earned my undergraduate degree in Chemistry in the Dominican Republic from Universidad Autónoma de Santo Domingo in 1990. I began to work in the NYC Department of Education in 1998 as a per diem teacher, and during this time, I took 18 credits in education and earned my Public School teacher Certification. In 2002, I got my Master's degree in Bilingual education from Universidad Autónoma de Santo Domingo in a special program linked with New York City and accepted by New York State. In 2001-2002 I worked in Health Career and Science High School as a chemistry teacher at the George Washington High School Campus. I worked in PS 143 in Washington Heights as a community leader during summer of 2002 - 2005, helping students with Regents Examination preparation. In September 2005, I began to work in International Business and Finance High School. The name of this school was changed in 2010 to The College Academy, where I worked until 2015. I received satisfactory evaluations until 2014. In June 2015 I received a letter that I was in

excess, then I worked as ATR in 2015 - 2016. In 2016 I returned to The College Academy until 2017.

6. During those 18 years of service, I went above and beyond my job description for my students, and acted in a professional manner to create an active, positive learning environment.

7. I had an excellent rapport with students.

### JURISDICTION

8. The venue is chosen because the headquarters of the New York City Department of Education is located at 52 Chambers Street in Manhattan, and the Office of the Legal Services' Administrative Trials Unit is also nearby in Manhattan now at 100 Gold Street.

9. The actions complained about in the case at bar were enacted in the New York City school district headquartered at 52 Chambers Street in Manhattan at a 3020-a proceeding and at the Offices of the Defendants.

10. The decision of the arbitrator shows prejudice against Petitioner and violates Petitioner's rights pursuant to New York State and US Constitutions, and New York City Charter; Education Law 2590-j, 3020-a give this court as the proper venue for §7511 appeals.

11. The actions of Respondents complained of herein are final in nature and cannot be adequately reviewed by another court, entity, or officer.

12. The Respondent made the determination complained of in New York City School District, and Petitioner has made no similar request prior to the case cited herein. CPLR §506 (b).

## FACTS

13. As stated above, Petitioner received the decision on May 28, 2018. Hearings were held at the offices of the New York City Department of Education (Respondent) on November 15, 2017 by phone conference. The hearing was held on November 28, 29,30, December 8,13,14, and 15, 2017 and on January 5,16,17 and 18, 2018.

14. Petitioner is being terminated for Respondent's and the Arbitrator's errors in procedural and substantive due process whereby Petitioner's tenure rights to fairness and Just Cause were ignored. There was no Just Cause for the penalty in this case, and Pollack ignored the improper determination of probable cause cited in the charges, namely the omission of an Executive Session and vote. (Education Law §3020-a(2)(a)).

15. Much of what is in dispute is the incompetency of Petitioner, and Pollack deliberately, recklessly and arbitrarily refused to recognize or believe Petitioner's long history of excellent service.

Petitioner was deprived of her procedural rights due to the neglect of Pollack in recognizing and addressing 3020-a law, the CBA, and the mandate of a vote in an Executive Session to

8

determine probable cause, and she was denied substantive due process by Pollack's prejudicial rulings in the evidentiary part of her arbitration hearing.

In a classroom situation, incompetence in its simplest terms means that a teacher is unable to provide a valid educational experience for students assigned to her classroom. Here, the burden of proof was with the complainant to prove that a valid educational experience was not provided by Petitioner to her students. The Department failed to do this.

One reason for the failure of the Department's case to prove Petitioner's incompetency is the Department's policy and practice of using as proof of their claims the non-final subjective opinions of administrators who observe and then judge Petitioner after supposedly looking at her teaching for 15-minutes. During those 15 minutes the Department reviews the entire panoply of Danielson's rubrics, looking for 100% excellent teaching in each category, in every class, every day. This makes no sense. A lesson is a series of events which are planned out in a lesson plan created by the teacher for a 45-minute or 90-minute class. If the administration decides to come in at the beginning of a lesson for 15 minutes and say that the teacher is ineffective because the assessment of what the students learned did not occur – which usually occurs at the end

of the lesson - there is something wrong with the administration, not the teacher or her lesson. This type of rating process is malicious and undermines the integrity of evaluations because the conclusions are not based on fact, but solely personal opinions.

In this case the administrators admitted not asking

petitioner what happened before and/or after they entered the classroom. This makes no sense, unless the opinion of the lesson and the rating for Petitioner was pre-set, before anyone did the observation. For the administrators who testified in this hearing for the Department, more information was not better, or good.

Facts matter, and according to the kings County Supreme Court and the Second Department Appellate Division, there are no facts or statistical data in observations, only nonfinal opinions. See Elentuck v Green, 202 A.D.2d 425; 608 N.Y.S.2d 701; 1994 N.Y. App. Div. LEXIS 1956, 1994. Observation reports are not public or business records and, Petitioner argues, cannot be the sole evidence used to support any penalty. Opinions of a person whose goal is to get an employee terminated cannot be validated without student outcomes, results, and data. A claim of "incompetency" must have supporting information that proves students in Petitioner's class did not learn what they were

supposed to learn, which was how to handle a school environment and transition to the next grade and beyond. Here, none of this information was presented by the Department except in subjective observations. This is a violation of tenure rights and makes no sense.

Another omission in the Department's case is any student outcomes, results, data, grades, test scores. If Petitioner is a failure at teaching, a proof of her failure is the data on the students, and how they did not succeed. There is no data on the student outcomes here from the Department. Unless more than half of Petitioner's students were kept back because they could not learn the curriculum, which did not happen, Petitioner was a successful teacher. This was stated over and over again.

The omission of any student outcomes and/or failures to learn is a symptom of a rating process currently favored by the Department which has no relevance to the teacher's actual pedagogy. This is unsupported hearsay, nothing more.

But some arbitrators do not agree with the disconnect.

Arbitrator Gloria Johnson ruled in the case of science teacher Sara Blumenstein that any Respondent who needed student outcomes, grades, test scores, or records for his/her 3020-a defense must get this information:

11

Arbitrator Gloria Johnson made a ruling on this issue, from
which this excerpt is taken:

"The Supreme Court of New York held in 1978 that tenured teacher Lawrence Butcher
was entitled to obtain the complete records of his students. However, the Court
required that the students' identities had to be redacted. The Court further determined
that any degree of confidentiality to which the students' records were entitled, must be
subordinated to Mr. Butcher's "right to prepare his defense to the charges made
against his reputation and his competence in his profession."
Therefore, in the instant case, in balancing Ms.
Blumenstein's rights to adequately mount her defense against the student's rights to
privacy, I have determined that redacting the records and having the students
identified as 1, 2, 3 and removing their names such that during the relevant two year
period, student 1 would be traceable to the next year – as opposed to simply
obliterating his name."

Therefore, the Department failed to prove Petitioner's
incompetency because they did not show that any student failed
to achieve and learn in her class. The fact that the Department
kept this data out of these proceeding must be given a lot of
weight.

Any conclusion as to the efficiency and ability of the
Petitioner can only be reached by a leap of faith, because the
Department never defined what a valid educational experience for
students actually is. But a good guess would be that students
were successful in reaching their goals, namely to learn the
curriculum and graduate to the next grade. Unfortunately, the
Department also did not define the data or statistics which
would prove what the valid educational experience was either for

an individual student or for the entire class. In sum, the
Department did not present a preponderance of the evidence in
support of whether or not a valid educational experience was
provided for Petitioner's students, and have failed to meet
their burden.

But the DOE witnesses testified only to their opinion, that they
saw incompetence. There were no supporting data or factual,
objective evidence to support these subjective opinions.

N.Y.C. Arbitrator Josh Javits ruled in a decision (Woda, SED
file #10, 831):

"It would be unacceptable to accept the hearsay evidence of
an individual as conclusive proof of an allegation over the
live testimony of a teacher with fourteen (14) years of
teaching. The Respondent has the right to confront and
challenge the testimony of her accuser, and to have the
accuser's credibility tested. Absent this right, the Hearing
Officer cannot accept that hearsay evidence alone satisfies
the Department's burden of proof with respect to this issue."
Also, in this matter, the hearsay testimony should not have been
given any weight.

"It is well established that a disciplinary charge pursuant to
Education Law 3020-a cannot be sustained when the only evidence
to support a charge is uncorroborated hearsay."  DOE v. Rykman,
SED File No. 17,731 (Bluth, 2012).

And, the Department did not follow the correct procedures to
validate their opinions. Most shocking is the administrators'
reliance on their 15-minute observations both for creating the
Teacher Improvement Plan as well as proving Petitioner's
incompetence. Yet the success or failure of the Petitioner's

13

students is, the Department argues, irrelevant. This is
incredible.

The overpowering evidence showed that this case was brought in
bad faith and, even more disturbingly, was frivolous. The so-
called "evidence" presented by the Department was 100% hearsay
and opinions. This shows bad faith and is unconscionable. The
test of any determination pursuant to the just cause/arbitrary
and capricious standard is whether the determination is "without
sound basis in reason and...without regard to the facts" (Matter
of Pell v BD of Educ. of Union Free School District No. 1 of
towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2 222,
231 [1974].

In this matter the Department offered a buffet of opinions from
several administrators to convince the arbitrator that the
Petitioner is terminally incompetent, that is, unable to ever
become a good teacher. The DOE insists that the opinions of
their witnesses as seen in the observations, are facts, and
these so-called facts provide a preponderance of evidence that
the Petitioner simply will never be a good teacher no matter
what the administrators do to help her.

Guilt may only be found on a charge or specification where there
is a preponderance of evidence to support that charge (Martin v.

<u>Board of Education</u>, 65 NY 2d 975 [1986]; <u>Matter of the Bd. of
Ed. of the City of New York</u>, 29 Ed Dept Rep 302 [1990]).

No determination that termination is proper is possible under
the circumstances presented here. The Department has failed to
meet their burden of proof for any of the specifications
submitted at the 3020-a of Petitioner. This is a reason for
alarm, considering the procedural errors of law in ignoring
Education Law 3020-a(2)(a).

In the case of Gongora v NYC Department of Education, Judge Lucy
Billings wrote that "Under Education Law § 3020-a(3)(c), in
contrast, where a respondent employing board must sustain its
statutory burden at a hearing to set forth fully and fairly the
evidence against the employee, a more stringent standard, the
respondent must present more than hearsay that initiated the
disciplinary action."

Where the argument for guilt is based solely on circumstantial
evidence, the nature of that evidence must exclude all other
reasonable explanations. A stringent standard exists for
measuring the sufficiency of circumstantial evidence to minimize
the "danger legitimately associated with circumstantial evidence
– that the trier of fact may leap logical steps in the proof
offered and draw unwarranted conclusions based upon
probabilities of low degree" *People v Guiliano, 65 N.Y.2d 766,*

*768, 492 N.Y.2d 939 (1985)*. The first failure of the Department is to ignore and/or omit any facts from their case against Petitioner.

A fundamental purpose of § 3020-a hearings is to determine whether a school's charge of inadequate performance is justified, as well as to determine whether there is any possibility that an inadequately performing teacher can be rehabilitated. This is a result of § 3020-a's specific mandate for "progressive discipline," with a focus on teacher rehabilitation. Incompetent teaching, if documented with statistics and data on the failure of students to learn what they need to learn, in and of itself is not grounds for dismissal under § 3020-a.

Petitioner is not incompetent, but an asset to the Department. She showed that she loved her job, is caring, professional, and efficient in handling all the children in her classes, even those who have behavior issues.

The Department did not meet its burden of establishing just cause to discipline Petitioner according to the laws governing Education Law Section 3020-a disciplinary hearings. They have not substantiated, by a preponderance of the evidence, any of the specifications preferred.

16. Petitioner argues that the fallacy here is to use a subjective standard to judge whether incompetency may be determined by a hearing officer who does not have subject matter jurisdiction. Legally, an objective, rational standard must be used to make a determination. Clearly, Pollack's decision is arbitrary and capricious.

17. A proper determination of probable cause is a pre-condition established by statute for 3020-a arbitration to begin and for charges to be filed against a tenured employee of the Department. Here, the Department has failed to show that there was a vote by the employing board in an Executive Session, pursuant to Education Law 3020-a(2)(a), despite the charging papers served on petitioner before the hearing began stated that there was an Executive Session.

Petitioner argues that pursuant to law, specifically Education Law 3020-a(2)(a), and the mandate of a proper determination of probable cause in an Executive Session of the employing board and with a vote by the majority of the members, she should have been given notice of the vote and the public meeting at which the Executive Session took place. Without this information, and indeed the Department never gave this to Petitioner, the Arbitrator in this proceeding discussed herein had no subject matter jurisdiction and the charges against Petitioner should

have been dismissed without penalty of any kind. Arbitrator
Pollack did not have the authority to hear this case.

18. In Attilio Ricca v Board of Education 47 NYS2d 385 1975, the
Court of Appeals explained that Education Law 3020-a is the
cornerstone of the protective statutory tenured structure which
is found in the Education Law and which is an expression of this
state's public policy. The Court held that the tenure system is
a legislative expression of a firm, public policy determination
that the interests of the public and the education of our youth
can best be served by a system designed to foster academic
freedom in our schools and to protect competent teachers from
the abuses they might be subjected to if they could be dismissed
at the whim of their supervisors.

Here, there was no just cause for the penalty given.

### AS AND FOR A FIRST SEPARATE AND DISTINCT CAUSE OF ACTION THE HEARING OFFICER EXCEEDED HER AUTHORITY BY FAILING TO RENDER FINDINGS IN ACCORDANCE WITH THE STATUTORY AUTHORITY TO WHICH SHE WAS BOUND IN ASSESSING PENALTY.

19. Repeats and realleges each and every allegation set forth
in paragraph 1-18 of the petition with the same force an effect
as if herein more fully set forth.

20. In assessing the penalty of termination the Hearing Officer
exceeded her authority and misapplied the plain language of the
statutory authority binding her which, pursuant to Education Law
3020-a(2)(a), and 3020-a(4), was dependent on: a proper

18

determination of probable cause; and  the information provided
to reach a statutory Just and Probable Cause standard. Pollack
ignored her statutory responsibilities in making the decision to
terminate Petitioner without first obtaining subject matter
jurisdiction.

## AS AND FOR A SECOND SEPARATE AND DISTINCT CAUSE OF ACTION THE PUNISHMENT SHOCKS THE CONSCIENCE

21. Repeats and realleges each and every allegation set forth in
paragraph 1-20 of the petition with the same force an effect as
if herein more fully set forth.

22.  The punishment shocks the conscience.

23.  The penalty imposed here is disproportionate to any fair
minded, and dispassionate arbiter.

## AS AND FOR A THIRD CAUSE OF ACTION DENIAL OF DUE PROCESS

24. Repeats and realleges each and every allegation contained in
paragraphs 1-23 with the same force and effect as if herein more
fully set forth.

25. The Department failed to provide a preponderance of the
evidence to substantiate the charges against Petitioner and
overcome the many violations of law and procedure cited herein,
yet the Arbitrator ignored these shortcomings and terminated
Petitioner anyway.

## AS AND FOR A FOURTH SEPARATE AND DISTINCT CAUSE OF ACTION THE ARBITRATOR SHOWED BIAS AND PREJUDICE IN HER DECISION

**26.** Repeats and realleges each and every allegation contained in paragraphs 1-25 with the same force and effect as if hereinafter set forth.

27. The Hearing Officer, in administering a double standard on the issue of the admissibility of documents and credibility of testimony, exhibited bias.

### AS AND FOR A FIFTH SEPARATE AND DISTINCT CAUSE OF ACTION ARBITRATOR POLLACK EXCEEDED HER POWER

**28.** Repeats and realleges each and every allegation contained in paragraphs 1-27 with the same force and effect as if hereinafter set forth.

29. The Hearing Officer has ignored the requirements of Education Law § 3020-a(2)(A), Education Law 3020-a(4), Education Law §2590-h, and the NYC Charter in assessing the penalty and, in so doing, has exceeded her authority.

30. The decision of Pollack violates the Just Cause standard which encompasses seven (7) elements which are not present in the matter cited herein, and therefore this Court should vacate the suspension in its' entirety.

31. No prior demand for the relief requested herein has heretofore been made.

**WHEREFORE,** the decision to terminate the employment of Petitioner must not be allowed to stand. At best it is excessive and relies on hearsay and inference rather than facts; at worst, this decision was made in violation of lawful procedure, is affected by material and prejudicial errors of law of such a nature that it does not rest upon any appropriate legal basis, is an unauthorized assertion of power and collusion, and a violation of procedural and substantive due process rights.

Vacatur of the award in its' entirety is a fair and equitable remedy for the Petitioner's alleged conduct in the cited proceeding.

It is respectfully requested that a judgment be entered herein, vacating and setting aside the decision of Arbitrator Pollack as excessive, unwarranted punishment for unproven allegations, and give Petitioner any other relief that is just and fair.

Dated: June 15, 2018

    New York, NY

_Reyna Arroyo_

Reyna Arroyo

21

**VERIFICATION**

STATE OF NEW YORK:
                          :SS
COUNTY OF QUEENS:


   Reyna Arroyo being duly sworn deposes and says that she is
the Petitioner in this proceeding; that she has read the annexed
Notice of Petition, Verified Amended Petition, RJI, and all
other documents attached herein and knows the contents thereof;
that the same is true to the knowledge of deponent except as to
the matters therein stated to be alleged upon information and
belief, and as to those matters he believes it to be true.

Dated: June 18 2018
       New York, N.Y.

*Reyna Arroyo*

                                        Reyna Arroyo


Sworn/Affirmed Before me

*Dominga Pimentel*
Notary Public




DOMINGA PIMENTEL
Notary Public, State of New York
No. 02PI6330615
Qualified in New York County
Commission Expires Sept. 21, 2019