1

 1

 2   SUPREME COURT OF THE STATE OF NEW YORK

 3   COUNTY OF NEW YORK:   TRIAL TERM PART 17

 4   - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

 5   REYNA ARROYO,

 6                              Petitioner,

 7          - against -

 8   NYC BOARD/DEPT. OF EDUCATION,

 9                              Respondent.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X
     Index No. 100741-2018
11
                           November 27, 2018
12                         60 Centre Street
                           New York, New York 10007
13

14   B E F O R E:   THE HONORABLE SHLOMO S. HAGLER, Justice

15   A P P E A R A N C E S:

16   REYNA ARROYO
     Petitioner Pro Se
17   651 Tilden Avenue
     Teaneck, New Jersey 07666
18
     NEW YORK CITY LAW DEPARTMENT
19   Office of the Corporation Counsel
     100 Church Street
20   New York, New York 10007-2601
     BY:  ALANA R. MILDNER, ESQ.
21
     ALSO PRESENT:  Mariella Torres,
22                  Official Spanish Interpreter

23

24

25
                           Terry-Ann Volberg, CSR, CRR
26                         Official Court Reporter

            Terry-Ann Volberg, CSR, CRR, Official Court Reporter

2

```
1                        Proceedings
2                 THE COURT:   Good morning.  Welcome.  I am
3        Judge Hagler.
4                 I believe we have a Spanish interpreter here.
5                 THE INTERPRETER:  Yes.
6                 THE COURT:   Please state your name.
7                 THE INTERPRETER:  Mariella Torres, Court
8        Interpreter, Spanish.
9                 THE COURT:   Thank you so much for helping
10       out today.
11                THE INTERPRETER:   You're welcome.
12                THE COURT:   Your name, please.
13                MS. R. ARROYO:   Reyna Arroyo.
14                THE COURT:   Ms. Arroyo, are you ready to
15       proceed today?
16                MS. R. ARROYO:   Yes, sir, I am ready.
17                THE COURT:   Counsel, please state your name.
18                MS. MILDNER:   Alana Mildner, New York City
19       Law Department.
20                THE COURT:   Are you ready to proceed today?
21                MS. MILDNER:   Yes, your Honor.
22                THE COURT:   I have read the papers.  This is
23       an Article 75 proceeding wherein Ms. Arroyo --
24                THE INTERPRETER:   I am sorry, sir, I lost
25       track.
26                THE COURT:   This is an Article 75 proceeding
```

```
 1                        Proceedings
 2      wherein Ms. Arroyo is seeking to vacate the
 3      determination by the arbitrator.  The arbitrator found
 4      the specifications by the respondent to be mainly
 5      sustained.  The penalty unfortunately for Ms. Arroyo
 6      was termination.
 7                  Ms. Arroyo is challenging both the
 8      determination in the specifications, the findings of
 9      fact with regard to the specifications, and, more
10      importantly, the penalty which was termination.
11                  I have received --
12                  THE INTERPRETER:  I'm having a hard time
13      hearing you.
14                  THE COURT:  I will speak louder.
15                  I have received the papers in this case, and
16      now we are ready to proceed.
17                  Ms. Arroyo, do you want to tell me why I
18      should vacate the arbitrator's determination both as to
19      the findings and the penalty?
20                  Whenever you are ready, Ms. Arroyo.
21                  MS. R. ARROYO:  I have here an oral argument
22      which I would like to read.  If you will allow me to, I
23      have my friend and my son.  Perhaps one of them could
24      read this.
25                  THE COURT:  She wants her son to read it?
26                  THE INTERPRETER:  Yes, or her friend, in the
```

4

Proceedings

1
2       back.
3               THE COURT:   I prefer that Ms. Arroyo speak
4       for herself, I think.
5               THE INTERPRETER:   It's written in English.
6       The document she's holding is written in English.
7               THE COURT:   I assume if it's written in
8       English you can read it.
9               MS. R. ARROYO:   Okay.  I may read it.
10              THE COURT:   I will allow you some leeway.
11      Normally I don't allow prepared written speeches, but
12      since you are not represented by counsel, I will give
13      you a little leeway.
14              The reason that I have oral argument is not
15      merely to reread your papers.  I have read your papers.
16      I read it.  I know what your papers say.  I know what
17      the respondent's papers say.  I do my homework.  I read
18      the determination by the arbitrator.  I am ready to
19      proceed.
20              I want you to really highlight some of your
21      main arguments and persuade me why I should vacate the
22      arbitrator's determination.  If you want to read, I
23      will allow you to read because, as I said earlier, I
24      will give you a lot of leeway because you are not
25      represented by counsel.  This is important, an
26      important decision for you, and I will accommodate you

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

Proceedings

1
2    as much as I can.
3              MS. R. ARROYO:   So then I shouldn't read it,
4    right?
5              THE COURT:   Sorry?  I didn't say that.  What
6    I said was, I prefer if you highlight the major points.
7    If you would like to read, I will accommodate that.  I
8    am giving you a choice.  I am not restricting you.
9              I want you to have your opportunity here in
10   court, it's going to be one time, and I want you to
11   make the most of that one time.
12             MS. R. ARROYO:   Okay.  I am going to read
13   it.
14             Thank you, your Honor, for this opportunity
15   to address the unjust penalty handed down at my 3020-a
16   by Arbitrator Lisa Pollack.
17             The basis of the petition is essentially
18   three arguments.  The first is a procedural argument
19   that the New York City Department of Education --
20             THE COURT:   You have to say it slower and
21   you have to pronounce it a little better.  I understand
22   what you are saying, but I don't have to type it.
23             MS. R. ARROYO:   New York City Department of
24   Education circumvented and skirted procedural
25   safeguards that are in place before a teacher is given
26   any penalty.

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

1                        Proceedings

2              Second is the apparent --

3              THE COURT:   You are doing it again.

4              MS. R. ARROYO:   -- is the apparent improper

5      motivations of the Department inferred from --

6              THE INTERPRETER:   Inferred.

7              THE COURT:   Let's stop for a second.

8              Ms. Arroyo, what you are saying is

9      incomprehensible.  I can't understand you.  You are

10     saying very big words that you are having difficulty

11     enunciating, and it's actually blurring your arguments.

12     The reporter can't take it down.  I can't understand it

13     as well.  I understand the first argument, but the

14     second one, I didn't hear a word you said.

15             I normally don't do this.  If you want your

16     son to read it, I will allow your son to read it if you

17     want to give me the highlights, but we are not making

18     progress this way because I don't understand it.

19             Counsel.

20             MS. MILDNER:   Your Honor, I would ask that

21     somebody else read it, the interpreter, perhaps, or

22     that Ms. Arroyo submit it.

23             THE COURT:   Do you want the interpreter to

24     read it?  How is that?  Would you like to do that?

25             THE INTERPRETER:   Okay.

26             THE COURT:   This is not a bad idea.

| | Proceedings |
|---|---|
| 1 | |
| 2 | THE INTERPRETER:  Second is the apparent |
| 3 | improper motivations of the Department inferred from |
| 4 | inconsistencies, implausibilities, and contradictions |
| 5 | in the record. |
| 6 | Third is objective data which shows that I am |
| 7 | actually an effective teacher. |
| 8 | The procedural errors are rampant in this |
| 9 | case starting with the violation of Education Law |
| 10 | 3020-a(2)(a) with the omission of an Executive Session |
| 11 | and vote on probable cause by the Panel For Educational |
| 12 | Policy.  Arbitrator Pollack was appointed to hear this |
| 13 | case pursuant to ED Law 3020-a, but the Department |
| 14 | never brought my charges to an Executive Session for a |
| 15 | vote on probable cause. |
| 16 | The Department insists that the Department |
| 17 | gave the Chancellor all the duties of the school board. |
| 18 | Okay, then the Chancellor should have held an Executive |
| 19 | Session and vote on Probable Cause as mandated by the |
| 20 | law. |
| 21 | She, Former Chancellor Carmen Farina, never |
| 22 | did this.  Thus, Arbitrator Pollack had no |
| 23 | subject-matter jurisdiction to make any decision in my |
| 24 | case. |
| 25 | Judge Desmond Green ruled in the Article 75 |
| 26 | Petition brought by Rosalie Cardinale in Richmond |

1                        Proceedings

2        County Supreme Court, Index Number 85165/2017 on

3        March 9, 2018, that "The Court of Appeals speaking on

4        the necessity of teachers tenure stated:  Tenure is a

5        legislative expression of a firm public policy

6        determination that the interests of the public in the

7        education of our youth can best be served by a system

8        designed to foster academic freedom in our schools and

9        to protect competent teachers from the abuses they

10       might be subjected to if they could be dismissed at the

11       whim of their supervisors.  In order to effectuate

12       these convergent purposes, it is necessary to construe

13       the tenure system broadly in favor of the teacher, and

14       to strictly police procedures which might result in the

15       corruption of that system by the manipulation of the

16       requirements for tenure."  Ricca v. Board of Education,

17       47 NY2d 385, 391 (1979).

18                Judge Green added, "The DOE's failure to make

19       a finding of probable cause and adhere to the

20       procedural protections guaranteed to petitioner in

21       Education Law 3020-a violates petitioner's due process

22       rights and violates New York's strong public policy

23       protecting the integrity of the tenure system."

24       Decision, p. 10.

25                "This Court finds the DOE's interpretation of

26       the statutory framework, even had they presented

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

```
1                        Proceedings
2      evidence permitting such delegations, runs afoul of the
3      clear legislative intent.  The concentration of all
4      disciplinary authority into the hands of a single local
5      administrator creates the very 'arbitrator imposition
6      of formal decision' the legislature sought to prevent
7      when enacted Education Law 3020-a.  (Holt v. Board of
8      Ed of Webutuck Central School Dist., 52 NY2d 625, 632,
9      [1981].  (Decision, p. 11-12)
10               Judge Green then granted Ms. Cardinale's
11     Verified Petition and vacated her termination.  I
12     submitted the exact same Motion to Dismiss For Lack of
13     Subject-Matter Jurisdiction in my hearing, your Honor,
14     and, therefore, I ask you to do the same.
15               It is clear from the record that the
16     circumstances and facts presented in this matter did
17     not deserve any kind of penalty.  Arbitrator Lisa
18     Pollack, Esq. was far from neutral in the 3020-a
19     arbitration.  She neglected to address the fact that my
20     prior record of teaching for 19 years was exemplary,
21     and I had never been disciplined before.
22               Her decision to terminate my employment is
23     based solely on the nonfinal opinions of the Principal
24     and Assistant Principal in and observations.  What is
25     competency?  To Arbitrator Pollack, who willingly and
26     recklessly refused to honor my tenured status,
```

```
1                        Proceedings
2       incompetency is anything that the principal said it
3       was.  She terminated me on hearsay alone which is not
4       permitted in these proceedings.
5               The Department did not bring in any grades of
6       students or outcomes of student performance.  Thus,
7       there is no evidence that I could not teach my
8       students.  In fact, my student witnesses testified that
9       I made a very big impact on their learning.  Pollack
10      was not interested.  She was predisposed to terminate
11      me from the first day of hearings.  I had no voice.
12              Danielson mandates that an observation is a
13      minimum of 15 minutes.  What can an administrator see
14      in 15 minutes of a lesson? Very little.  As I wrote in
15      my Verified Petition, observation reports are only
16      opinions.  There are no facts or data in observation
17      reports.  This was the ruling in the Kings County case
18      called Elentuck v. Green cited in my petition.
19              Arbitrator Pollack ignored the mandates for
20      "just cause, strict scrutiny as a standard of review,
21      and progressive discipline," and she also showed no
22      concern that the Department did not reach the high
23      standard for a preponderance of the evidence in this
24      matter.
25              One more point I would like to make here
26      today.  I was charged with 11 observations.  Assuming
```

1                          Proceedings

2      each observation lasted 20 minutes as an average, over

3      the three charged years I was assessed for 120 minutes

4      by the administrators who wanted to terminate my job,

5      but three years of teaching is more than 222,000

6      minutes.  Therefore, your Honor, Arbitrator Pollack

7      terminated my employment because of the hearsay,

8      nonfinal opinions from 120 minutes.  Does this make

9      sense?  No, it does not.

10               Arbitrator Pollack used only the biased

11     opinions and hearsay statements of the administrators

12     over the straightforward factual information given in

13     testimony by me and my witnesses.  This is

14     unconscionable and cause to vacate the baseless penalty

15     in favor of a less extreme penalty or none at all.

16               Thank you, your Honor.

17               THE COURT:   Okay.  Thank you.

18               Ms. Arroyo also handed me a written version

19     of the oral argument which I read.  I listened to it.

20     I believe counsel received a copy as well, correct?

21               MS. MILDNER:   Yes, your Honor.

22               THE COURT:   Ms. Arroyo, have you concluded

23     your argument?

24               MS. R. ARROYO:   I said everything here.

25               THE COURT:   Okay.

26               Counsel, opposition, please.

1                       Proceedings
2                MS. MILDNER:   Your Honor, Ms. Arroyo has not
3       shown that Education Law 3020-a was violated in any way
4       at her hearing.
5                Regarding the procedural argument, I believe
6       it was Exhibits 5 and 6 to my answer --
7                THE INTERPRETER:   Could she go slower for
8       me?
9                THE COURT:   Speak a little slower.  It has
10      to be interpreted as well.
11               MS. MILDNER:   I believe it was Exhibits 5
12      and 6 to respondent's answer which contained two
13      delegation memoranda.  One of those memorandum was
14      delegating authority from the Chancellor to the
15      Community School Superintendent, Ms. Nunez, the other
16      memorandum --
17               THE INTERPRETER:   I can't keep up with here.
18               THE COURT:   You really have to slow down a
19      little.
20               THE INTERPRETER:   Can I have the last portion
21      read back?
22               THE COURT:   Please.
23               (The testimony as requested was
24          read by the reporter.)
25               MS. MILDNER:   -- was delegating authority
26      from the Community Superintendent to principals.  So

```
 1                          Proceedings
 2          here Principal Timothy Sigerson did have the authority
 3          to bring charges.
 4                          Addressing any arguments regarding any sort
 5          of improper motivation, petitioner has not demonstrated
 6          that there was any individual who was out to get
 7          petitioner.  There were five administrators who
 8          testified at the hearing, two principals, two assistant
 9          principals, and a field supervisor from the ATR
10          Reserve, and all of them testified consistently
11          regarding Ms. Arroyo's classroom performance.
12                          Although Ms. Arroyo states that Arbitrator
13          Pollack wanted to terminate petitioner from the first
14          day of the hearing, there is nothing in the record to
15          indicate any bias on the part of Arbitrator Pollack nor
16          has petitioner pointed to anything that would show that
17          Hearing Officer Pollack administered the hearing in any
18          way other than a fair way.
19                          Then regarding petitioner's third point,
20          under the evaluation system that the Department of
21          Education uses, informal observations can be a minimum
22          of 15 minutes, and depending on the option that a
23          teacher chooses, teachers are observed six times per
24          year.  So there is nothing that was done in observing
25          Ms. Arroyo that was against state law or the procedures
26          of the Department of Education.
```

Proceedings

1                           Proceedings

2              Moreover, the penalty does not shock the

3    conscience.  Ms. Arroyo engaged in a pattern of

4    ineffective instruction over the course of three school

5    years.  Additionally, upon being provided with

6    professional development opportunity, Ms. Arroyo's

7    teaching failed to improve to the level that would be

8    necessary for her to be an effective chemistry teacher.

9    Therefore, the penalty of termination is appropriate.

10              I have nothing else, your Honor, unless the

11   Court has questions.

12              THE COURT:   Ms. Arroyo, do you want to say

13   anything else as the last word?  You get reply.  Do you

14   want to say anything else in reply?

15              MS. R. ARROYO:   Yes.

16              The three years of teaching that I had, it

17   was the same person who observed me 15 minutes.  That

18   person would go in, would go out.  She didn't know what

19   happened before, what took place after those 15

20   minutes, the results of my students.  At the end of the

21   year my students' end results were good including that

22   they passed the regents exams.  That means that

23   somebody was teaching because regents -- I did not

24   grade the regents, somebody else graded the regents.

25              THE COURT:   Have you completed your

26   presentation?

```
1                         Proceedings
2              MS. R. ARROYO:    Yes.
3              THE COURT:    Thank you.
4              Stay here, please.  The parties have been
5      waiting for a decision on this matter.  I am going to
6      render a decision now.
7              Let's set forth the standard by which the
8      Court decides these type of cases.  This is a
9      proceeding brought under Article 75 of the CPLR.  There
10     are narrow grounds to vacating an arbitrator's award.
11             Since the arbitration was mandatory, it also
12     implicates due process requirements under Article 78 of
13     the CPLR which provides a secondary layer of protection
14     in that the award cannot be arbitrary or capricious or
15     irrational under the circumstances.  The Court must
16     take into consideration the penalty by viewing it as
17     whether it is shocking to the conscience.
18             Petitioner essentially has three arguments.
19     The first one is a procedural argument.  Essentially
20     petitioner argues as she did before the arbitrator --
21             THE INTERPRETER:    That she?
22             THE COURT:   The petitioner argues as she did
23     before the arbitrator that the principal did not have
24     authority to propound charges, specifications under
25     Education Law 3020-a.  The arbitrator denied it
26     indicating that Educational Law Section 2590-h provided
```

Proceedings

2    for delegation by the Chancellor to the district
3    superintendent who then delegated authority to the
4    local school principals.  In the record counsel
5    indicated such delegation memoranda was presented to
6    both the arbitrator as well as this Court that provides
7    for the requisite delegation of duties and
8    responsibilities from the Chancellor, to the
9    superintendents, to the local school principal.

10        I have read the decision and order of Justice
11    Desmond Green from Supreme Court County of Richmond
12    which was dated March 29, 2018.  Justice Green, for
13    one, did not indicate in the decision whether or not
14    the requisite memorandum was attached to the petition
15    or actually the answer to the petition which would
16    satisfy Educational Law requisites.  Moreover, there's
17    been countless decisions within the First Department, I
18    am not familiar with decisions of the Second
19    Department, that are contrary to the determination --
20        THE INTERPRETER:  That are what, sir?
21        THE COURT:  -- that are contrary to the
22    determination of Justice Green sitting in the Second
23    Department in Richmond County.  My recollection is that
24    I believe there's at least one Appellate Division
25    decision that has reviewed that issue in the First
26    Department.  It was one of my decisions that was

1                         Proceedings

2       affirmed wherein I ruled that there can be delegation

3       of authority from the Chancellor to the superintendent

4       directly to the local school principals.  I can't

5       remember the name of the decision.  They affirmed my

6       decision.  There are many of my colleagues here in New

7       York County that have ruled in that manner.  That issue

8       is no longer a disputed issue.  When I first started

9       doing these Article 75s about four or five years ago

10      there were really no decisions on point.  Now there

11      have been a multitude of decisions all concurring that

12      such duties and responsibilities can be delegated by

13      the Chancellor.

14               Let's move on to the second argument of Ms.

15      Arroyo.  Essentially the second argument challenges the

16      findings of the arbitrator.  The arbitrator in a

17      lengthy decision reviewed the witnesses credibility of

18      both petitioner's witnesses of which there were many, I

19      believe six or seven, and five witnesses from the

20      respondent.  The arbitrator reviewed and discussed each

21      of the respective witnesses, and found that

22      petitioner's witnesses were testifying truthfully, but

23      really had no ability to gauge the competency of Ms.

24      Arroyo's pedagogy.  In contrast, the arbitrator found

25      that the respondent's witnesses were properly trained,

26      did not exhibit or evince any bias towards Ms. Arroyo,

| | |
|---|---|
| 1 | Proceedings |
| 2 | citing an example wherein others that were similarly |
| 3 | situated were found to be effective and competent |
| 4 | teachers. |
| 5 | The case law is very clear that this Court, |
| 6 | even if it wished to do so, cannot substitute its |
| 7 | judgment, and review and change credibility findings of |
| 8 | an arbitrator. |
| 9 | Ms. Arroyo in her petition directly |
| 10 | challenges the arbitrator's ability to be impartial, |
| 11 | and states that the arbitrator had bias towards her. |
| 12 | The standard to show bias is a very high one.  The |
| 13 | petitioner fails to do so presenting no evidence of |
| 14 | bias other than -- |
| 15 | THE INTERPRETER:   I would need the last |
| 16 | portion read. |
| 17 | THE COURT:  Read it back. |
| 18 | (The testimony as requested was |
| 19 | read by the reporter.) |
| 20 | THE COURT:   -- other than a determination |
| 21 | that terminates her employment.  The very arbitration |
| 22 | decision which is negative and does not support your |
| 23 | position is insufficient alone to demonstrate bias.  In |
| 24 | other words, the mere fact that the arbitrator ruled |
| 25 | against you does not give rise to an allegation of |
| 26 | bias. |

Proceedings

1              I just want to review the specifications, the

2      charges against Ms. Arroyo.  They reflect three

3      different years, 2014 to '15, 2015 to 2016, 2016 to

4      2017.  They span a period of November 12, 2014, 2015,

5      2016, and last, May 22nd, 2017.

6              There are 11 dates wherein the respondent had

7      charged the petitioner with failing to properly,

8      adequately, and effectively plan and execute lessons on

9      those dates.  We are not talking about one isolated

10     incident, we are not talking about two, we are not

11     talking about one year or even two years, we are

12     talking about three years of observations spread over

13     11 different dates, and three years of teaching that

14     was reviewed and observed.

15              That brings me to the third point of Ms.

16     Arroyo, that one cannot properly judge an individual

17     with 15 minutes of observations.  This is hardly 15

18     minutes.  This is a three year span of time.

19     Therefore, this Court cannot, even if it wished, change

20     the factual determinations by the arbitrator, and the

21     credibility findings as to the level of competence

22     during that lengthy period of time.

23              Let's move on to the real issue.  The

24     petitioner strenuously argues that the penalty shocks

25     the conscience and should be vacated.

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

Proceedings

1
2         I just want to read a portion of the
3     arbitration award by the arbitrator with regard to the
4     penalty.  I'm going to read the paragraph just above
5     penalty because it gives background.  "Having found
6     that the Department has proven respondent's
7     incompetency, I must now look at remediation efforts.
8     As set forth above, the evidence introduced documented
9     professional development meetings, training, action
10    plans, some coaching offers, and feedback and
11    suggestions from numerous formal and informal
12    observation.  As of 2016 through 2017, respondent had
13    not improved in any appreciable way.  All of these
14    admonitions and opportunities were designed to improve
15    respondent's teaching performance.  The respondent's
16    own testimony clearly established that she knew and
17    understood that the department was concerned with her
18    pedagogy, and that they wanted her to follow their
19    suggestions to better her pedagogy.  It is also clear
20    that respondent was aware of the consequences if she
21    did not improve her pedagogy."
22            "Despite all of the efforts to warn her that
23    she was not actually teaching effectively, she
24    persisted in ignoring administration and supervisors,"
25    it should be suggestions, the typo says suggests, "and
26    continued in teaching lessons improperly."

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

Proceedings

1

2           I'm going to skip to the last line, sorry,

3       the last paragraph on page 46.  "However, I have

4       reviewed the observations and find the same pedagogical

5       weaknesses again and again.  I find that the respondent

6       adamantly resisted any suggestion that her practice

7       needed improvement.  I find that the department made

8       significant efforts to provide respondent with

9       opportunities for professional development, and I find

10      the respondent consistently and adamantly resisted

11      those efforts.

12           While respondent argues there is no

13      progressive discipline here, she was made aware on

14      several occasions in the past three years that

15      discharge was a possibility if she failed to improve

16      her pedagogy.

17           I believe on the evidence before me that

18      there is no prospect that respondent could improve her

19      performance to an effective level if she is offered

20      further remediation.  She has not improved over three

21      years despite being under a TIP all three years.  Her

22      testimony showed that she does not believe that there

23      is any problem to her pedagogy, and there is no

24      indication that she will follow instructions under the

25      past TIPs.

26           If she were going to change, she would have

1                            Proceedings

2           done so when she was put on notice that she was

3           vulnerable when she received TIP, and she would have

4           engaged in substantive discussions with administrators

5           in post-observation conferences.  She would have

6           submitted lesson plans for review with the

7           administrators which she did not.

8                    Termination is not a disproportionate penalty

9           when measured against the seriousness and harm to the

10          children.  I do not believe that a fine or suspension

11          would change her.  Accordingly, I determine that the

12          proper penalty in this case is termination.

13                   The arbitrator considered the specifications,

14          the observations, the opportunity and warning that

15          petitioner had to improve her pedagogy.  She was given

16          three year's worth of developmental training.  The

17          petitioner, according to the arbitrator, did not

18          improve in any appreciable manner.  Moreover, the

19          arbitrator found that remediation, further training,

20          would not be successful as the petitioner believes

21          adamantly that she needs no further improvement in her

22          pedagogy.

23                   The arbitrator found that the past

24          performance showed that she will not remediate and had

25          not made any effort to do so not even providing lesson

26          plans for the administrators to review.

Proceedings

1
2          Given that petitioner had ample opportunity
3      for improvement over the course of three years, that
4      petitioner has not improved in any appreciable manner,
5      and that remediation would not be effective given her
6      adamant rejection that she needs improvement in the
7      areas of pedagogy, the arbitrator's determination and
8      penalty of termination does not shock one's conscience,
9      and was reasonable and rational under the
10     circumstances.   Therefore, this Court denies the
11     petition and dismisses the proceeding.
12          Have a good day.
13          Good luck in the future.
14          MS. MILDNER:   Thank you, your Honor.
15                         ***
16                C E R T I F I C A T E
17  I, Terry-Ann Volberg, C.S.R., an official court reporter of
18  the State of New York, do hereby certify that the foregoing
19  is a true and accurate transcript of my stenographic notes.
20
21
22          Terry-Ann Volberg, CSR, CRR
            Official Court Reporter
23
24
25
26

Terry-Ann Volberg, CSR, CRR, Official Court Reporter