No. 19 Civ. 7416 (ER)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REYNA ARROYO,

                                        Plaintiff,

-against-

THE DEPARTMENT OF EDUCATION OF THE
CITY OF NEW YORK,

                                        Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street, Room 2-146*
*New York, New York 10007*

*Of Counsel: Alana R. Mildner*
*Tel.: (212) 356-1177*
*Matter No.: 2019-062549*

William S.J. Fraenkel,
Alana R. Mildner,
    Of Counsel.

# Table of Contents

PRELIMINARY STATEMENT ................................................................. 3

STATEMENT OF FACTS ...................................................................... 3

ARGUMENT ......................................................................................... 7

    POINT I ............................................................................................. 7

      COLLATERAL ESTOPPEL BARRS PLAINTIFF'S DUE PROCESS CLAIMS ............... 7

    POINT II ............................................................................................ 9

      PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION ..................................................... 9

    POINT III ......................................................................................... 11

      PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION ...................................... 11

    POINT IV ......................................................................................... 12

      PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION .......................... 12

    POINT V ........................................................................................... 17

      PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISSED ....................................... 17

CONCLUSION ................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. N.Y. State Educ. Dep't*,
    752 F. Supp. 2d 420 (S.D.N.Y. 2010).....................................................................13

*Matter of Amorosi v. S. Colonie Ind. Cent. Sch. Dist.*,
    9 N.Y.3d 367 (2007) ........................................................................................18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................11

*Cardinale v. New York City Dept. of Educ.*,
    Index No. 85165/2017 (N.Y. Sup. Ct. Richmond Cnty., March 29, 2018) ..............6, 8, 14, 15

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532 (1985).........................................................................................14

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006)...........................................................................................9

*Green v. Dep't of Educ.*,
    18 Civ. 10817 (AT), 2019 U.S. Dist. LEXIS 127545 (S.D.N.Y. Jul. 31, 2019)
    (adopted in 2019 U.S. Dist. LEXIS 163313 (S.D.N.Y. Sept. 23, 2019)) ..............11, 14, 15, 17

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010)...............................................................................12

*Koehler v. New York City*,
    04 Civ. 6929 (RMB), 2005 U.S. Dist. LEXIS 35045 (S.D.N.Y. Dec. 20, 2005) ..................17

*Kuczinski v. City of New York*,
    352 F. Supp. 3d 314 (S.D.N.Y. 2019)...................................................................16

*LB v. Hines*,
    No. 15-cv-5238 (NSR), 2018 U.S. Dist. LEXIS 61534 (S.D.N.Y. Apr. 10,
    2018) ...........................................................................................................7

*Massaro v. N.Y. City Dep't of Educ.*,
    481 Fed. Appx. 653 (2d Cir. 2012).......................................................................10

*McGuinn v. Smith*,
    523 Fed. Appx. 764 (2d Cir. 2013)........................................................................7

*Melzer v. Bd. of Educ.*,
    336 F.3d 185 (2d Cir. 2003)...............................................................................10

*Moore v. Cnty. of Rockland*,
 192 A.D.2d 1021 (N.Y. App. Div. 3d Dep't 1993) ..............................................................18

*Rigle v. County of Onondaga*,
 267 A.D.2d 1088 (N.Y. App. Div. 4th Dept. 1999), *lv. denied*, 94 N.Y.2d 764
 (2000)..................................................................................................................................19

*Smith v. City of N.Y.*,
 130 F. Supp. 3d 819 (S.D.N.Y. 2015)..............................................................................9, 10

**Statutes**

N.Y. Educ. Law § 3813(2).............................................................................................................18

New York Civil Service Law § 75-b ........................................................................................18, 19

New York State Education Law § 3020-a ........................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ......................................................................................5

Restatement (Second) of Torts Section 767...................................................................................18

UNITED STATES CONSTITUTION FIRST AMENDMENT........................................9, 10, 11

UNITED STATES CONSTITUTION FOURTH AMENDMENT.............................................11

UNITED STATES CONSTITUTION FOURTEENTH AMENDMENT ........................... *passim*

## PRELIMINARY STATEMENT

Defendant, the Board of Education of the City School District of the City of New York, operating as the New York City Department of Education ("DOE"), submits this memorandum of law in support of its motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Complaint must be dismissed on multiple grounds. Plaintiff's due process claims are barred by the doctrine of collateral estoppel, as they were actually and necessarily decided by the New York State Supreme Court. Plaintiff's Constitutional claims and state law claims, including due process claims, must be dismissed because the Complaint fails to plead facts that would plausibly support such claims. Therefore, the Complaint should be dismissed.

## STATEMENT OF FACTS[1]

Plaintiff, Reyna Arroyo, began working for DOE as a per diem substitute teacher in 1998. *See* Complaint, ECF No. 1, at ¶ 10. Plaintiff was subsequently hired as a Chemistry teacher in 2001. *Id*. From 2005 until 2015, Plaintiff taught at a DOE high school in the Washington Heights neighborhood of Manhattan. *Id*. This school was known as International Business and Finance High School until 2010, when it was renamed The College Academy. *Id*.

In June 2015, Plaintiff received a letter informing her that she would be excessed from The College Academy.[2] Complaint, ECF No. 1, at ¶ 11. For the 2015-2016 school year,

---

[1] Defendant's statement of facts is derived from the allegations of the Complaint and the documents and materials incorporated by reference into the Complaint, and are taken as true only for the purpose of this Motion to Dismiss.

[2] At Plaintiff's § 3020-a hearing, it was established that Plaintiff was excessed for the 2015-2016 school year due to a decline in student enrollment at The College Academy.

Plaintiff was assigned to DOE's Absent Teacher Reserve[3] ("ATR").  *See* Complaint, ECF No. 1, at ¶ 11.  In the fall of 2016, Plaintiff returned to The College Academy.  *Id.*

From 2014 to 2017, DOE administrators at both The College Academy and the ATR had concerns regarding Plaintiff's pedagogical skills.  Pursuant to New York State Education Law § 3020-a, DOE charged Plaintiff with two specifications regarding poor performance.  One Specification concerned Plaintiff's failure to properly plan and/or execute lessons on eleven occasions between November 2014 and May 2017.  The other Specification concerned Plaintiff's failure to implement recommendations in seven distinct pedagogical areas.  *See* Decision of Hearing Officer Lisa D. Pollack, dated May 30, 2018, annexed to the Declaration of Alana R. Mildner, dated December 30, 2019, as Exhibit A, at p. 4.[4]

A hearing was held before Hearing Officer Lisa D. Pollack over eleven hearing dates from November 2017 to January 2018.  Ex. A at p. 1.  At the hearing, Plaintiff and DOE were each represented by counsel and each had the opportunity to make statements on the record, call witnesses, and cross-examine the other's witnesses.  *See generally* Ex. A.  DOE called five witnesses, each of whom had observed Plaintiff's classroom at least one time in an evaluative capacity.  DOE's witnesses were: The College Academy's former principal, Peter Sloman; The College Academy's current principal, Timothy Siegerson; Assistant Principal Karen Remer; Assistant Principal Wendy Poveda; and, ATR administrator Stacey Batista.  Ex. A at p. 6.  Plaintiff testified on her own behalf and presented six other witnesses: teachers: Marlene

---

[3] Teachers in the Absent Teacher Reserve are rotated to short and long term assignments at various DOE schools.

[4] Plaintiff references Hearing Officer Pollack's decision numerous times in the Complaint and the Complaint includes large block quotes from the decision.  *See* Complaint, ECF No. 1, at ¶ 13, 15, 16.

Sanchez; Jose Tomas Garcia; Jose Medina; and, Rodolpho Santos, as well as two student witnesses who had taken Plaintiff's chemistry course at The College Academy. Ex. A at p. 6.

On May 30, 2018, Hearing Officer Pollack issued a comprehensive 47-page decision. Ex. A. Hearing Officer Pollack sustained both specifications, noting that DOE had demonstrated by a preponderance of the evidence that Plaintiff failed to properly plan and/or execute lessons on eleven occasions and that she had failed to remedy her pedagogy. *Id*. at pp. 42 – 43. In sustaining the specifications, Hearing Officer Pollack noted that all five DOE witnesses appeared credible. *Id*. The hearing officer noted that Defendant's witnesses had all personally observed Plaintiff's lessons and had evaluated Plaintiff's performance using DOE's evaluation criteria, the Danielson framework. *Id*.

Hearing Officer Pollack found that although several of Plaintiff's witnesses appeared to offer credible testimony, they nonetheless did not have firsthand knowledge of Plaintiff's teaching performance during the school years at issue. Nor had these witnesses observed Plaintiff's classroom in an evaluative capacity. Ex. A at pp. 6 – 9. For example, Hearing Officer Pollack noted that Marlene Sanchez, Plaintiff's colleague from 2005 to 2012, was "at most…a character witness...", as she had not observed Plaintiff teach at any point during the period from 2014 to 2017. *Id*. at p. 7. Hearing Officer Pollack found irrelevant the testimony of two students who each testified that Plaintiff assisted them in passing Chemistry examinations. The Hearing Officer explained that the students were not familiar with the DOE's criteria for evaluating teachers' performance and there was no indication that these students would have failed the examinations were it not for Plaintiff. *Id*. at pp. 8 – 9.

Hearing Officer Pollack found that Plaintiff was not a credible witness. Ex. A at p. 9. Although Plaintiff testified to "minute details" on direct examination, she was unable to

answer questions involving a similar level of detail on cross examination. *Id.* Hearing Officer Pollack also expressed concern over Plaintiff's testimony of not receiving a Teacher Improvement Plan ("TIP") for the 2016-2017 school year, despite her signature appearing on the document. *Id.* Finally, Hearing Officer Pollack was particularly troubled by Plaintiff's attempt to "backdate" rebuttal letters to observation reports in order to make it appear that these letters had been submitted shortly after receiving feedback, when, in reality, they were submitted shortly before the 3020-a hearing. *Id.* Hearing Officer Pollack noted that in some cases, rebuttal letters were dated *prior* to the post-observation conferences at which Plaintiff received feedback from administrators. *Id.* Additionally, metadata from the files indicated that the letters were prepared on the computer of an individual who worked for Plaintiff's 3020-a attorney, suggesting that the letters were drafted in anticipation of the hearing and not contemporaneously to the post-observation feedback. *Id.*

Hearing Officer Pollack credited DOE administrators' testimony regarding Plaintiff's poor pedagogy. For example, in sustaining Specification 1(b), Hearing Officer Pollack credited the testimony of The College Academy's assistant principal, Karen Remer, that Plaintiff's May 14, 2015 Chemistry lesson did not sufficiently engage the entire class of students. Ex. A at p. 17. Assistant Principal Remer noted that although Plaintiff effectively incorporated material from the upcoming Chemistry Regents Examination into her lesson, only four or five students in a class of 30 were answering Plaintiff's questions. *Id.* After observing this lesson, Assistant Principal Remer recommended that Plaintiff visit the classroom of another teacher to observe his use of certain pedagogical techniques and that Plaintiff ask questions to more students, not only those students who volunteer. *Id.* Similarly, in sustaining Specification 1(f), Hearing Officer Pollack credited the testimony of ATR Field Supervisor Stacey Batista, who

observed Plaintiff's May 18, 2016 Chemistry lesson and testified that most students were off-task and Plaintiff asked questions of low cognitive challenge. *Id*. at p. 22.

In determining an appropriate penalty, Hearing Officer Pollack noted that Plaintiff's pre-2014 Satisfactory performance ratings did not excuse her poor performance from 2014 to 2017. Ex. A at p. 45. Hearing Officer Pollack noted that Plaintiff refused to believe she had any pedagogical deficiencies and was unreceptive to administrators' recommendations for improvement. *Id*. Plaintiff did not submit lesson plans for administrators' review and did not engage in substantive discussions with administrators during post-observation conferences. *Id.* Additionally, Plaintiff did not observe the teacher recommended by Assistant Principal Remer. *Id*. at p. 38. Accordingly, Hearing Officer Pollack did not believe that Plaintiff would make any improvements to her teaching if given another opportunity. *Id*. at p. 47. Therefore, Hearing Officer Pollack determined that Plaintiff should be terminated from DOE employment. *Id.*

On June 15, 2018, Plaintiff filed a Petition in New York State Supreme Court, New York County, seeking to vacate Hearing Officer Pollack's decision pursuant to New York Civil Practice Law and Rules Article 75. *See* Verified Amended Petition, dated June 15, 2018, annexed to the Mildner Declaration as Exhibit B.[5] In her Petition, Plaintiff alleged, *inter alia*, that Hearing Officer Pollack lacked subject matter jurisdiction to preside over the hearing, that Hearing Officer Pollack was biased, and that Plaintiff was denied due process throughout the hearing. *Id.*

Oral argument was held in Plaintiff's Article 75 matter on November 27, 2018 before Justice Shlomo S. Hagler. *See* Transcript of Supreme Court of the State of New York, County of New York, Trial Term Part 17, dated November 27, 2018, Index No. 100741-2018,

---

[5] Plaintiff's Article 75 petition to the New York State Supreme Court is incorporated by reference in the Complaint and is a judicial filing of which this Court can take notice.

annexed to the Mildner Declaration as Exhibit C.[6]  Plaintiff appeared *pro se* in that matter and was assisted by an Official Spanish Interpreter.  *Id*.

The Court issued a ruling from the bench.  In the Petition and at Oral Argument, Plaintiff argued that Hearing Officer Pollack lacked subject matter jurisdiction as the charges were preferred by the school principal and not an executive session of the "school board".  Ex. B, Ex. C.  The Court explicitly rejected this argument, finding that authority to bring charges had been properly delegated from the DOE Chancellor to district superintendents to local principals. Ex. C at 15:22 – 16:9.  The Court also rejected Plaintiff's reliance on a case from New York State Supreme Court, Richmond County, *Cardinale v. New York City Dept. of Educ.*, noting that the New York State Appellate Division, First Department, in which New York County is located, has issued contrary decisions to *Cardinale*.  *Id*. at 16:10 – 26.

The Court noted that although Plaintiff may have been displeased with Hearing Officer Pollack's credibility assessments, Plaintiff had failed to demonstrate any bias on the part of the hearing officer.  The Court instructed Plaintiff, "[T]he mere fact that the arbitrator ruled against you does not give rise to an allegation of bias."  Ex. C at 18:24 – 26.  On January 15, 2019, the Court issued an Order formally denying Plaintiff's Article 75 Petition and dismissing the proceeding. Plaintiff filed a Notice of Appeal with the New York State Appellate Division, First Department, but did not perfect her appeal in a timely manner and it was subsequently dismissed.

On August 8, 2019, Plaintiff filed the Complaint in the instant matter.

---

[6] The transcript of proceedings before the New York State Court is a document of which judicial notice may be taken.

**ARGUMENT**

**POINT I**

**COLLATERAL ESTOPPEL BARRS PLAINTIFF'S DUE PROCESS CLAIMS**

Under the principle of issue preclusion, this Court should dismiss claims that were "actually and necessarily" decided by the state court. *McGuinn v. Smith*, 523 Fed. Appx. 764, 766 (2d Cir. 2013), *quoting Vargas v. City of New York*, 377 F.3d 200, 205-06 (2d Cir. 2004). A party seeking to assert collateral estoppel must show that in the prior proceeding: (1) the identical issue was raised; (2) the issue was actually litigated and decided; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits. *LB v. Hines*, No. 15-cv-5238 (NSR), 2018 U.S. Dist. LEXIS 61534, at *5-7 (S.D.N.Y. Apr. 10, 2018), *quoting Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

Plaintiff's Article 75 Petition alleged that her § 3020-a hearing was tainted by procedural inadequacies. *See* Ex. B. In the Article 75 proceeding, Plaintiff had a fair and full opportunity to litigate the issues. In addition to written submissions, the New York State Supreme Court held an oral argument on November 27, 2018. There, Plaintiff, with the assistant of an interpreter, was permitted to read a lengthy statement into the record. Ex. C at pp. 5 – 11. The state court considered, but explicitly rejected, Plaintiff's contentions that Defendant violated Plaintiff's procedural due process rights. *See* Ex. C. In that the Article 75 proceeding sought to vacate Hearing Officer Pollack's decision, the issues of whether the hearing officer was biased, or if there were procedural inadequacies, were necessary to the resolution of the State Court proceeding.

In the instant matter, Plaintiff again asserts that Hearing Officer Pollack's decision was "biased, arbitrary and capricious" (Complaint, ECF No. 1, at ¶ 2). This was the very contention that the New York State Supreme Court explicitly rejected. *See* Ex. C. Under the doctrine of collateral estoppel, Plaintiff cannot reassert a claim of arbitrator bias in federal court simply because she disagrees with the finding of the New York State Supreme Court.

Plaintiff also had the opportunity to appeal the state court's decision, yet did not perfect her appeal in a timely manner. Therefore, Plaintiff is incorrect when alleging that she had "no recourse" to challenge the state court's decision "but to seek relief in Federal Court" (Complaint, ECF No. 1, at ¶ 13).

Similarly, Plaintiff attempts to reassert several other claims that were made and rejected in the Article 75 proceeding. Plaintiff reasserts that Hearing Officer Pollack lacked subject matter jurisdiction and that the charges against her were defective because the school board did not hold an "Executive Session." Complaint at ¶ 14 – 15. These arguments were explicitly rejected by the New York State Supreme Court. Ex. C. The State Court found that no such "executive session" was necessary as the DOE Chancellor has the authority to prefer charges against tenured pedagogues. The Court held that the chancellor had adequately delegated that authority to district superintendents, who in turn delegated that authority to school principals. Ex. C at 15:22 – 16:9.[7]

---

[7] Plaintiff's continued reliance on *Cardinale v. New York City Dept. of Educ.*, Index No. 85165/2017, (N.Y. Sup. Ct. Richmond Cnty., March 29, 2018), is misguided. Plaintiff brought her Article 75 Petition in New York County. The Court (Hagler, J.) noted that there was contrary precedent in the New York State Appellate Division, First Department. Ex. C, 16:10 - 17:13. Richmond County is located in the New York State Appellate Division's Second Department. Additionally, the decision in *Cardinale* is on appeal to the Second Department.

As the New York State Supreme Court actually and necessarily decided that DOE complied with all due process requirements in preferring § 3020-a charges and terminating Plaintiff's employment, Plaintiff is collaterally estopped from reasserting due process claims.

## POINT II

### PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

Plaintiff asserts that DOE has violated her rights under the First Amendment of the United States Constitution. In her "First Cause of Action", Plaintiff references the First Amendment, specifically "Freedom of Speech and Association". Complaint, ECF No. 1, at p. 13. Yet, the Complaint is devoid of any allegation that Plaintiff engaged in activity protected by the First Amendment.

To establish a First Amendment retaliation claim on the basis of protected speech, a plaintiff must prove that: (1) she engaged in constitutionally protected speech when speaking as a citizen on a matter of public concern; (2) that she suffered an adverse employment action; and (3) a causal connection between the protected speech and adverse employment decision. *See Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006); *Smith v. City of N.Y.*, 130 F. Supp. 3d 819, 831 (S.D.N.Y. 2015) (teacher's complaints to principal regarding assignment of students to his classes not protected under First Amendment).

Although Complaints of *pro se* litigants are to be liberally construed, there is nothing in the Complaint alleging that Plaintiff engaged in any speech, let alone protected speech. *See generally* Complaint, ECF No. 1. To the extent Plaintiff's First Amendment speech claim is premised on her alleged refusal to "go along" with Principal Siegerson's alleged attempts to change student grades, Plaintiff fails to plead that she made any statement regarding alleged grade-tampering. *See* Complaint, ECF No. 1, at ¶ 17.

Moreover, even if Plaintiff did speak with Principal Siegerson regarding grading policies at The College Academy, such speech would be unprotected job-related speech. *See Smith*, 130 F. Supp. 3d at 832; *Massaro v. N.Y. City Dep't of Educ.*, 481 Fed. Appx. 653, 656 (2d Cir. 2012) (affirming district court's finding that teacher was speaking as an employee, not a citizen, when complaining to school administrators about perceived unsanitary conditions). Additionally, Plaintiff has not plausibly pleaded any facts even suggesting that her speech was a motivating factor in DOE's decision to serve her with charges.

Similarly, Plaintiff fails to state a claim based on Freedom of Association. Plaintiff's Complaint fails to identify any group with which she associated, let alone plead facts suggesting that her association with a group motivated her discharge.[8]

Plaintiff's Complaint does not plausibly plead any causal connection between any activity protected by the First Amendment and the §3020-a charges that led to her discharge. To the extent Plaintiff seeks to assert that the charges against her were retaliatory for some opposition or non-compliance with Principal Siegerson's grading initiatives, Plaintiff cannot plausibly assert that Principal Siegerson "targeted her for termination by observing her teaching as 'incompetent'" (Complaint, ECF No. 1, at ¶ 17) as the events leading to Plaintiff's termination, i.e. documentation of her poor teaching performance, began well prior to Siegerson becoming principal of The College Academy in September 2016.

As Plaintiff has failed to identify any protected speech or association, and does not plausibly allege a connection between any First Amendment protected activity and her

---

[8] It should be noted that in certain circumstances, the decision of an educational institution, such as Defendant, to terminate an individual for her association may be justified if that association would cause a disruption to the school's mission. *See Melzer v. Bd. of Educ.*, 336 F.3d 185, 200 (2d Cir. 2003).

termination, Plaintiff has failed to state a claim for relief under the First Amendment. *See Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## POINT III

### PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION

Plaintiff's Fourth Amendment claims are frivolous and must be similarly

dismissed. The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Plaintiff does not allege that DOE engaged in any unlawful search or seizure. *See*

*generally* Complaint, ECF No. 1. Therefore, Plaintiff has failed to plead a claim under the

Fourth Amendment. *See Green v. Dep't of Educ.*, 18 Civ. 10817 (AT)(GWG), 2019 U.S. Dist.

LEXIS 127545, at n. 4 (S.D.N.Y. Jul. 31, 2019) (adopted in 2019 U.S. Dist. LEXIS 163313

(S.D.N.Y. Sept. 23, 2019)) (declining to consider Fourth Amendment claims in a Complaint

nearly identical to the instant complaint, which contained nothing more than a passing reference

to the "Fourth Amendment").

## POINT IV

## PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

### A.     Equal Protection

Plaintiff fails to state a Fourteenth Amendment Equal Protection claim.  The Complaint asserts that DOE principals who are facing disciplinary charges can choose the hearing officer who will preside over the arbitration, while DOE teachers are assigned a hearing officer from one of two panels.  *See* Complaint, ECF No. 1, at ¶ 20 – 21.  It appears that Plaintiff seeks to claim a violation of the Fourteenth Amendment's Equal Protection Clause due to the disparate treatment of teachers and principals.

As Plaintiff does not assert that her equal protection claim is based on a suspect characteristic (such as race) or a fundamental right (such as the right to procreate), the Court must analyze DOE's different treatment of principals and teachers under the highly-deferential standard of rational basis review.  *See Hayden v. Paterson*, 594 F.3d 150, 169-70 (2d Cir. 2010).  Under rational basis review, the Court should not overturn a state or local policy unless it is so irrational that it bears no relation to a legitimate governmental purpose.  *Id. citing Vance v. Bradley*, 440 U.S. 93, 97 (1979).

Plaintiff herself articulates DOE's rational basis for having different arbitrator-selection procedures for teachers and principals.  Plaintiff's Complaint cites to Article 21G of the collective bargaining agreement ("CBA") between her collective bargaining unit, United Federation of Teachers ("UFT") and DOE.  That contract states that for § 3020-a hearings involving tenured teachers, the parties agree to utilize a rotational panel of arbitrators.  Complaint, ECF No. 1, at ¶ 21.  As noted in the excerpt from the CBA cited in Plaintiff's Complaint, UFT and DOE determined that "all parties would be served better by the

implementation of a permanent arbitration panel", as it would provide increased efficiency and expediency. *Id. See also* Collective Bargaining Agreement, annexed to the Mildner Decl. as Ex. D at pp. 150 – 54.

Thus, Plaintiff cannot demonstrate that DOE lacked a rational basis in using a rotational panel of arbitrators for arbitrations involving teachers and a different arbitrator-selection mechanism for other employees, such as principals, who are not covered by the DOE-UFT contract. [9] Indeed, Plaintiff herself notes that her collective bargaining unit agreed to such a mechanism in the interest of efficiency.

This Court, in *Adams v. N.Y. State Educ. Dep't*, dismissed an equal protection challenge[10] to this same arbitrator selection policy, noting that the policy's aim to increase efficiency constituted a legitimate governmental purpose. *Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 459-60 (S.D.N.Y. 2010). Although Plaintiff may wish that she had had the opportunity to select an individual other than Hearing Officer Pollack to preside over her § 3020-a hearing, Plaintiff cannot demonstrate that the use of a rotational arbitration panel for teachers, but not principals, lacks a legitimate governmental purpose.

Therefore, as there is a legitimate governmental purpose for treating teachers differently from principals in the arbitrator-selection process, Plaintiff has failed to state a claim under the Equal Protection Clause of the Fourteenth Amendment.

---

[9] DOE Principals and other administrators are represented by a different collective bargaining unit, Council of Supervisors and Administrators ("CSA"), and are not covered by the DOE-UFT CBA.

[10] In *Adams*, the plaintiffs alleged that New York State Education Law and Article 21G violated the Equal Protection Clause because teachers in the City of New York were treated differently than teachers elsewhere in New York State.

**B.    Procedural Due Process**

To the extent that any of Plaintiff's Fourteenth Amendment Procedural Due Process Claims are not so barred by the doctrine of collateral estoppel, as discussed in Part I *above*, Plaintiff has failed to state a claim for which relief can be granted.

Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, a tenured public employee must receive notice of the charges against her and an opportunity to be heard.  *See Green v. Dep't of Educ.*, 18 Civ. 10817 (AT)(GWG), 2019 U.S. Dist. LEXIS 127545, at *25 – 26, (S.D.N.Y. Jul. 31, 2019) (adopted in 2019 U.S. Dist. LEXIS 163313 (S.D.N.Y. Sept. 23, 2019)), *citing Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  Plaintiff does not allege that she was denied notice of the charges or the opportunity to be heard.  Rather, Plaintiff appears to take issue with the fact that the charges were preferred by a principal, rather than an executive session of a school board.  *See generally* Complaint.

As Plaintiff was aware of the charges against her, and had an opportunity to be heard before Hearing Officer Pollack, she cannot make a claim of denial of the due process to which she was entitled.  *See Green*, 2019 U.S. Dist. LEXIS 127545 at *27.

Plaintiff's argument concerning the need for DOE to meet in an executive board session also lacks merit and has been rejected by this very Court.  This Court has found reliance on the New York State Supreme Court's (Richmond County) decision in *Cardinale* unavailing.  *Green*, 2019 U.S. Dist. LEXIS 127545 at *27.  In *Green*, the Court (Gorenstein, M.J.) notes that the decision in *Cardinale* ignores the substance of the United States Supreme Court's decision in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) and that *Cardinale*, an unreported decision from a state court sitting in a different county, is not controlling.  *Green*, 2019 U.S. Dist. LEXIS 127545 at *27.

As in *Green*, the *Cardinale* decision was not controlling in Plaintiff's Article 75 proceeding, which was brought in New York State Supreme Court, New York County. As the Court (Hagler, J.) noted on the record in Plaintiff's Article 75 proceeding, the *Cardinale* decision is contrary to precedent in the New York State Appellate Division, First Department, in which the New York State Supreme Court, New York County, sits. Ex. C at 16:10 – 17:13. Moreover, in Plaintiff's Article 75 proceeding, the Court found that DOE had demonstrated that the authority to prefer disciplinary charges was properly delegated from the Chancellor to local principals. *Id*. Therefore, Plaintiff's citation to the *Cardinale* decision is misplaced and Plaintiff has failed to identify any deprivation of her Fourteenth Amendment Procedural Due Process rights.

Plaintiff's citation to a blog post and video that are critical of the UFT and DOE is similarly unavailing. Plaintiff alleges that a video posted on a blog called "NYC Rubber Room Reporter" depicts former DOE Chancellor Carmen Fariña urging for speedy completion of § 3020-a hearings. Complaint, ECF No. 1, at ¶ 18. Plaintiff alleges that this video was taken at a meeting at which DOE attorneys, NYSUT attorneys, and arbitrators were present on February 24, 2015, over two years before Plaintiff's § 3020-a hearing. *Id*. Plaintiff does not assert how a directive over two years earlier to expedite hearings had any impact on Plaintiff's procedural due process rights of notice and opportunity to be heard. To the contrary, the record reflects that Plaintiff's § 3020-a hearing took place over eleven hearing dates and that Plaintiff was represented by counsel and had the opportunity to testify on her behalf, as well as call numerous witnesses. *See* Ex. A.

Plaintiff appears to allege that the use of "permanent panels" for hearing officers creates a bias in favor of the DOE and that Hearing Officer Pollack made the "politically

expedient decision" to rule in favor of the DOE, as the DOE had "hired" Pollack for the panel. Complaint, ECF No. 1, at ¶ 19. Plaintiff asserts that the existence of arbitration panels represents a denial of "her due process right to a 'neutral' arbitrator." *Id.* at ¶ 21.

Plaintiff's assertion that the DOE controls the "hire" of hearing officers to panels is false. As stated in the DOE-UFT CBA, which is cited in Plaintiff's Complaint, DOE and UFT both participate in the selection of panel hearing officers. *See* Complaint, ECF No. 1, at ¶ 21; Ex. D at pp. 150 – 154. Plaintiff further acknowledges that the panels are selected by DOE and NYSUT[11] every September. Complaint, ECF No. 1, at ¶ 21. Therefore, there is no indication that Plaintiff was denied a neutral arbitrator, as the panel of arbitrators was jointly selected by DOE and Plaintiff's bargaining unit, UFT. Moreover, as Plaintiff was admittedly given notice of the charges against her, and had an opportunity to be heard during the course of an eleven day hearing, there is no basis for this Court to find that use of an arbitrator from a rotational panel had any bearing on Plaintiff's procedural due process rights.

## C. Liberty Interest / "Stigma-Plus"

Plaintiff alleges that DOE has flagged Plaintiff for a "no hire" list or "problem code" note for its internal records. Complaint, ECF No. 1, at ¶ 12. This Court has found that "[t]he loss of one's reputation can violate the Due Process Clause [of the Fourteenth Amendment] if the loss of reputation is associated with the deprivation of a federally protected liberty interest, such as government employment." *Kuczinski v. City of New York*, 352 F. Supp. 3d 314, 324 (S.D.N.Y. 2019), *citing Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972). This is commonly referred to as a "stigma-plus claim" and in the instant case, Plaintiff has failed to plead such a claim.

---

[11] Upon information and belief, Plaintiff is referring to the New York State United Teachers, a federation of local teachers unions, which includes UFT.

"[T]o plead a stigma-plus claim, a plaintiff must allege (1) the utterance of a statement about her that is injurious to her reputation, that is capable of being proved false, and that he or she claims is false, and (2) some tangible and material state-imposed burden…in addition to the stigmatizing statement." *Green*, 2019 U.S. Dist. LEXIS 127545 at *33 (internal quotations omitted). Additionally, "the defamatory statement must be sufficiently public to create or threaten a stigma." *Id.*, *quoting Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005). Here, as in *Green*, the allegations in the Complaint concern only the maintenance of DOE's internal records to reflect that Plaintiff was terminated. *Id.* at *34 ("The absence of any claim that these lists and codes are communicated to potential employers is fatal to [plaintiff's] 'stigma plus' claim.").

Therefore, Plaintiff's assertions that DOE has "flagged" her fingerprints, placed her on a list of individuals ineligible for rehire, and placed her on list of teachers with "problem codes" do not state a stigma plus claim. *See also Koehler v. New York City*, 04 Civ. 6929 (RMB), 2005 U.S. Dist. LEXIS 35045 at *9 – 10 (S.D.N.Y. Dec. 20, 2005) (dismissing stigma plus claim alleging that internal DOE files *could* be disclosed to prospective non-DOE employers, with no basis to believe that such disclosure had occurred).

As Plaintiff has not asserted that DOE has communicated any stigmatizing statements about her to anyone outside of the DOE, her stigma plus claim must be dismissed.

## POINT V

## PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISSED

Plaintiff's Fourth Cause of Action concerns the alleged violation of New York State Laws, including N.Y. Educ. Law § 3020-a, N.Y. Civil Service Law § 75-b(1)(b). Complaint, ECF No. 1, at p. 16. Plaintiff's Second Cause of Action references "Intentional and

Negligent InflICTION of Emotional Distress" and "Section 767 of the Restatement (Second) of Torts". *Id.* at p. 15.

Plaintiff failed to file a Notice of Claim concerning the claims in this matter. The filing of a Notice of Claim is a condition precedent to bringing a state law tort claim against a school district in New York State. *See* N.Y. Educ. Law § 3813(2); *Matter of Amorosi v. S. Colonie Ind. Cent. Sch. Dist.*, 9 N.Y.3d 367, 370-71 (2007). Therefore, to the extent that Plaintiff seeks to bring state law tort claims against DOE, such claims must be dismissed.

Even if Plaintiff had filed a Notice of Claim, Plaintiff fails to state a claim for which relief can be granted. Plaintiff does not allege any facts that would state a claim for relief under New York Civil Service Law § 75-b, commonly known as the "Whistleblower" statute. Plaintiff states that The College Academy Principal Timothy Siegerson "targeted her for termination" because Plaintiff would not "go along with" Siegerson's changes to students' grades to "make his school look better in the NYS State Statistics". Complaint, ECF No. 1, at ¶ 17.

Plaintiff does not plead that she made a report to a governmental body regarding her belief that Principal Siegerson was altering students' grades. *See generally* Complaint, ECF No. 1. Therefore, her § 75-b claim should be dismissed. *See Moore v. Cnty. of Rockland*, 192 A.D.2d 1021, 1024 (N.Y. App. Div. 3d Dep't 1993) (upholding grant of summary judgment on N.Y. Civ. Serv. Law § 75-b claim when plaintiff had not made a report of conduct she believed to be improper).

Moreover, even if Plaintiff had made a complaint to a governmental body regarding Principal Siegerson's grading policies, Plaintiff cannot plausibly plead any causal connection between such a complaint and her termination. The specifications with which

Plaintiff was charged include lessons that Plaintiff failed to properly plan and/or execute as early as November 2014. The majority of the specifications against Plaintiff concerned classroom observations that occurred prior to Siegerson becoming principal of The College Academy in September 2016. *See* Ex. A at p. 23. As the concerns about Plaintiff's pedagogy pre-date Principal Siegerson's arrival at The College Academy, even if Plaintiff *did* make a complaint that Principal Siegerson was engaged in grade-tampering, Plaintiff cannot demonstrate that such a complaint was the sole reason for her termination. *See*, *e.g.*, *Rigle v. County of Onondaga*, 267 A.D.2d 1088, 1089 (N.Y. App. Div. 4th Dept. 1999) (upholding dismissal of Section 75-b claim, because employer had a "separate and independent basis" for discharging employee), *lv. denied*, 94 N.Y.2d 764 (2000). Therefore, Plaintiff has failed to state a claim under N.Y. Civ. Serv. Law § 75-b, as she does not plead a causal connection between any complaint to a governmental body and the specifications with which she was charged.

## CONCLUSION

For the foregoing reasons, Defendant respectfully request that this Court grant its motion to dismiss Plaintiff's Complaint, together with such other and further relief as this Court deems just and proper.

Dated:          New York, New York
                December 30, 2019

                                        **JAMES E. JOHNSON**
                                        Corporation Counsel of the
                                          City of New York
                                        Attorney for Defendant City of New York
                                        100 Church Street, Room 2-146
                                        New York, New York 10007
                                        (212) 356-1177
                                        amildner@law.nyc.gov

                                        By:      _____/s/_____
                                                 Alana R. Mildner
                                                 Assistant Corporation Counsel

William S.J. Fraenkel,
Alana R. Mildner,
    Of Counsel.