UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REYNA ARROYO,

                                        Plaintiff,

                – *against* –

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK,

                                        Defendant.

**OPINION & ORDER**

19 Civ. 7416 (ER)

RAMOS, D.J.:

        Reyna Arroyo, proceeding *pro se*, commenced this action against the Department of

Education of the City of New York (the "DOE"), alleging employment discrimination and

retaliation, deprivation of liberty and property interests, and intentional or negligent infliction of

emotional distress, in violation of the U.S. Constitution and New York state law.  Compl., Doc. 1.

Before the Court is the DOE's motion to dismiss the action.  Doc. 13.  For the following reasons,

the motion is GRANTED, with leave to replead.

I.        **BACKGROUND**

        Arroyo joined the DOE in 1998.  Compl. ¶ 10.  She began working as a bilingual high

school chemistry teacher at the College Academy in Manhattan in 2005, eventually achieving

tenure.  *Id*. ¶ 2, 11.  For the 2015–2016 school year, she was removed from the College Academy

and placed in Absent Teacher Reserve ("ATR")[1] due to a decline in enrollment and budget

constraints at the College Academy.  Compl. ¶ 11; Mildner Decl., Ex. A ("3020-a Op."), Doc.

14, at 10.  She returned to the College Academy in the fall of 2016.  Compl. ¶ 11.

---

[1] While in ATR, Arroyo taught at different schools.  3020-a Op. at 10.

## A.    Teaching Evaluations

Teachers employed by the DOE are evaluated through a number of methods, including formal and informal observations.  3020-a Op. at 11.  Formal observations entail a pre-observation lesson, if requested by the teacher, and a post-observation feedback lesson.  *Id*. Informal observations are similar but with no pre-observation lesson and last for at least fifteen minutes.  *Id*.  Each year, the teacher chooses the method of evaluation by which administrators will review her pedagogy.  *Id*.  Arroyo requested a minimum of six informal observations for the 2014–2015 school year and a minimum of one formal observation and three informal observations for the 2016–2017 school year.  *Id*. at 11, 23.  It is unclear based on the § 3020-a opinion how many observations Arroyo requested for the 2015–2016 school year, while she was in ATR.  Several administrators observed her, sometimes jointly, and in eleven of these observations, Arroyo was found to have failed to "properly, adequately, and/or effectively plan and/or execute separate lessons."  *Id*. 4–5.

## B.    Termination Hearing

Based on these evaluations, Principal Timothy Sigerson initiated termination proceedings against Arroyo under Education Law § 3020-a.[2]  Pl.'s Opp., Ex. B.  On June 19, 2017, he sent her a "Notice of Determination of Probable Cause on Education Law § 3020-a Charges" with attached "Specifications" that included:  "[j]ust cause for disciplinary action under § 3020-a," "[i]ncompetent and/or inefficient service," "[c]onduct unbecoming Arroyo's position," "[c]onduct prejudicial to the good order, efficiency, or discipline of the service," "[n]eglect of duty," "[s]ubstantial cause rendering Arroyo unfit to properly perform obligations to the

---

[2] Tenured teachers can only be removed "for just cause."  Pl.'s Opp. at 11.  Section 3020-a hearings are compulsory arbitration actions brought by the DOE against a charged teacher as a disciplinary measure for poor performance with the potential penalty of dismissal.  *Id*. at 11, 30.

service," and "[j]ust cause for termination."  Pl.'s Opp., Exs. A, B.  Arbitrator Lisa Pollack was assigned to Arroyo's § 3020-a hearing.[3]  Compl. ¶ 2.

On June 28, 2017, Arroyo sent a letter to the NYC Special Commissioner of Investigation ("SCI")[4] in order to "report some unusual and illegal behavior between 2011 [and] 2017."  Pl.'s Opp., Ex. I.  In the letter, she alleges that (a) she was "a victim of bullying by the administration," particularly Assistant Principal Karen Remer, (b) five students' grades were changed in order to allow them to graduate in 2017, (c) the principal allowed a student, in the same school year, to take a Regents exam at a later date than the one assigned, and (d) the named valedictorian in that school year was replaced by another student.  *Id*.

On November 8, 2017, represented by attorney David Barrett, Arroyo filed a motion to dismiss the proceedings, arguing procedural deficiencies in the case because, even though § 3020-a(2)(a) requires a vote by the school board in an executive session to charge a tenured employee, Arroyo's charging papers were only signed by her school's principal, Sigerson, and did not refer to any executive session by the school board.  Pl.'s Opp., Exs. B, C.

The proceedings started with a prehearing conference on November 15, 2017.  3020-a Op. at 1.  At the prehearing conference, Arroyo, represented by Barrett, requested any

---

[3] Arbitrators for teachers in New York City sit on one of two permanent panels — the Administrative Trials Unit ("ATU") or the Teacher Performance Unit ("TPU") — and are paid $1,400 per day. Compl. ¶ 21.  For teachers' § 3020-a hearings, an arbitrator from one of these panels is assigned to the case.  *Id*.  The United Federation of Teachers ("UFT"), of which Arroyo was a member, agreed to this arbitrator selection method in Article 21G(2) of their Collective Bargaining Agreement with the DOE (the "CBA").  *Id*. ¶¶ 1–2, 21.  Article 21G(2) of the CBA reads "[a]s discussed and agreed upon, all parties would be served better by the implementation of a permanent arbitration panel" and describes the two panels as well as the arbitrator selection process.  Mildner Decl., Ex. D (the "UFT CBA") at 150–52.

Assistant principals and principals are subject to a different procedure.  They are permitted to choose an arbitrator from a list provided by the New York State Department of Education or the American Arbitration Association. Compl. ¶ 20.  The Counsel for Supervisors and Administrators (the "CSA"), the union for assistant principals and principals, agreed to this arbitrator selection process in their CBA with the DOE.  *Id*.

[4] The SCI "has broad authority to investigate fraud, misconduct, and other wrongdoing within the DOE."  *Giscombe v. N.Y.C. Dep't of Educ.*, 39 F. Supp. 3d 396, 398 (S.D.N.Y. 2014).

disciplinary records and Individualized Education Plans ("IEPs") for students in her class.  *Id*. at 1–3.  During this telephonic conference, Pollack denied the request as overbroad unless Barrett had a specific student in mind.  *Id*.  By November 28, 2017, neither Barrett nor Arroyo asked for the records of any specific students and Barrett admitted that there were no specific problems — behavioral or otherwise — with any of Arroyo's students, so Pollack ruled the issue irrelevant to the question of Arroyo's pedagogy.  *Id*. at 2.

The § 3020-a hearing took place over eleven days, spanning from November 28, 2017 to January 18, 2018.  *Id*. at 1.  The DOE called five witnesses and proffered 46 exhibits.  *Id*. at 5. Arroyo called six witnesses (in addition to presenting her own testimony) and proffered eight exhibits.  *Id*.  Eight joint exhibits were also admitted.  *Id*.  The DOE's five witnesses were all DOE administrators who had conducted the observations and evaluations of Arroyo upon which the charges were based:  former College Academy Principal Peter Sloman, College Academy Assistant Principal Karen Remer, College Academy Assistant Principal Wendy Poveda, College Academy Principal Timothy Sigerson, and current Assistant Principal at the Global Learning Center Stacey Batista.[5]  *Id*. at 6.  Pollack found that all five witnesses testified credibly, giving "thoughtful and honest answers," providing no evidence of collusion, and standing up to "vigorous cross" by Arroyo's attorney.  *Id*. at 6.  Pollack specifically noted that Remer's testimony was consistent with what she wrote in her evaluations three years earlier and "gave credit . . . to [Arroyo] wherever possible."  *Id*.

In addition to herself, Arroyo called four witnesses who were teachers — Marlene Sanchez, Jose Tomas Garcia, Jose Medina, and Rodolfo Santos — and two witnesses who were

---

[5] Batista was formerly a supervisor for the ATR and Arroyo's immediate supervisor during the 2015–2016 school year.  3020-a Op. at 18–19.

students — referred to as Students "I" and "J." *Id*. at 6.  Pollack found that while Arroyo's witnesses testified "credibly as to what they believed to be the truth" and none of them "intentionally misrepresented any fact," their testimony was not relevant to the observations being reviewed. *Id*.  Pollack noted that the teachers either were not teaching at the College Academy during the school years in question, never conducted a rated observation, were not present during the observations in question, and/or were not administrators. *Id*. at 6–8.  Both students testified that they felt Arroyo was an excellent teacher who helped them pass the Regents exam, but Pollack stated that they had no familiarity with the rubric used to evaluate teachers and that there was no indication either of them would have failed the Regents exam without Arroyo's help. *Id*. at 8–9.  Finally, Pollack did not find Arroyo's testimony credible: Arroyo didn't remember attending feedback meetings even when her signature was on the documents that memorialized the meetings, stated she never received certain documents even though the documents bore her signature, and submitted backdated rebuttals to feedback she received and claimed they were written at the time of the observation conferences. *Id*. at 9.

Closing statements were presented on January 18, 2018. *Id*. at 5.

Pollack denied Arroyo's motion to dismiss and issued a 47-page decision terminating her on May 30, 2018. *Id.* at 5, 47.  Pollack first found that the proceeding was properly initiated by the College Academy's principal. *Id*. at 2–3.  Pollack stated that § 3020-a(2)(a)[6] should be read in conjunction with New York Education Law § 2590-h(19), which grants the Chancellor the same powers as the DOE Board and the power to "[d]elegate any of his or her powers and duties to such subordinate officers or employees as he or she deems appropriate." *Id*. at 2.  Pollack

---

[6] The relevant portion of which states that "[T]he employing board . . . shall determine . . . whether probable cause exists to bring a disciplinary proceeding against an employee pursuant to this section."  3020-a Op. at 2.

found that this gave the Chancellor the power to delegate authority to bring charges against tenured employees to subordinate officers like school principals. *Id*. Pollack emphasized the language of § 2590-h(19) which "on its face contains no restriction on the Chancellor's ability to delegate 'any of his or her powers and duties'" and cited other § 3020-a decisions and an Article 75 hearing in state court which rejected similar arguments made by other teachers. *Id*. at 3.

Next, Pollack found that the DOE met its burden of establishing that Arroyo was objectively evaluated and found to be incompetent by a preponderance of evidence. *Id*. at 42–43. Pollack found that the DOE and the school administrators offered Arroyo a number of opportunities for professional development, but she did not change her practices or improve her pedagogy, "fail[ing] to implement the directives, recommendations, and professional development provided to her through the post-observation conferences, teacher improvement plans, and one-on-one instructional sessions." *Id*. at 43, 45. Based on all of these findings and Arroyo's statement that she "[did] not believe there [was] any problem [with] her pedagogy," Pollack determined that "there [was] no prospect that [Arroyo] could improve her performance to an effective level if she [was] offered further remediation." *Id*. at 46–47.

Finally, Pollack rejected Arroyo's arguments that she was unlawfully terminated because she was Hispanic and a bilingual teacher. *Id*. at 43. Arroyo's witnesses Garcia and Medina stated that Remer did not like bilingual teachers, but Pollack noted that both teachers admitted that other bilingual teachers were not treated in a disparate manner. *Id*. Garcia testified that he felt Remer treated Arroyo and another teacher, Mr. Pena, with "a little bias because they did not speak [English] well," but Pollack found the evidence did not support this since Garcia, also Hispanic, had never been rated poorly and several other Dominican teachers at the school had not required teaching improvement plans. *Id*. at 7. Further, Pollack found there was no evidence

that Remer's feelings towards Arroyo affected her review of Arroyo's pedagogy, particularly as

other observers concurred with Remer.  *Id*.  Medina testified that Remer spoke to Arroyo and

Pena in a condescending manner and that there was friction between Remer and the bilingual

staff.  *Id*. at 8.  However, Pollack noted that Arroyo was not the only Dominican teacher at the

school, and one of the observing administrators, Poveda, is also Dominican.  *Id* at 43.  Pollack

further noted that while Arroyo believed Remer had been targeting her since 2010, she did not

find that Arroyo provided relevant evidence to support this claim, noting that Remer rated

Arroyo as "Satisfactory" until 2013.  *Id*. at 43–44.

Pollack determined that the proper penalty in this case was termination.  Compl. ¶¶ 2, 13;

3020-a Op. at 47.

Soon after she was terminated, Arroyo states that she had been placed on the "Problem

Code" or "Ineligible Inquiry List."  Compl. ¶¶ 12, 16–17.  This list is kept by the DOE and

prevents those on it from getting another job with the DOE.  *Id*. ¶ 17.  Arroyo being on this list is

the basis of her stigma plus claim in the instant action.  *Id*. ¶¶ 16–17.

**C.**     **State Action**

Arroyo filed an appeal, appearing *pro se*, to vacate Pollack's arbitration award under

Article 75[7] of the New York Civil Practice Law and Rules in New York State Supreme Court

before Justice Shlomo Hagler.  *Id*. ¶ 13.  Arroyo filed the Notice of Petition on June 5, 2018 and

submitted an amended petition on June 15, 2018.  Mildner Decl., Ex. B ("Art. 75 Pet.").  In her

petition, Arroyo alleged multiple procedural and substantive errors in Pollack's decision,

focusing on the lack of a school board vote to bring the § 3020-a charges.  *Id*.  Arroyo further

---

[7] An Article 75 appeal is the only statutory avenue to appeal an arbitrator's decision in a § 3020-a hearing and must be filed in New York state supreme court "[n]ot later than ten days after receipt of the hearing officer's decision." *Hunt v. Klein*, 476 F. App'x 889, 892 (2d Cir. 2012); N.Y. C.P.L.R. § 7511.

charged that Pollack and the DOE violated her protected rights by (a) not considering

information about Arroyo's student outcomes or facts relating to student performance,[8] (b)

ignoring the testimony of Arroyo and her witnesses, (c) showing "clear bias" against her, (d)

only using the administrators' 15 minute observations to determine the effectiveness of her

teaching, (e) terminating her without subject matter jurisdiction, and (f) imposing the

disproportionate penalty of termination.  *Id*. ¶¶ 3, 15, 20, 23, 25, 27, 29–30.

The hearing on the Article 75 appeal took place on November 27, 2018.  Mildner Decl.,

Ex. C ("Art. 75 Tr.").  According to the transcript, Justice Hagler reviewed written submissions

and, contrary to his customary practice,[9] permitted Arroyo to read a lengthy statement through

the help of an interpreter.  *Id*. at 2:21–11:24.  Justice Hagler found that Pollack's decision to

terminate Arroyo was reasonable under the circumstances, denying her petition and affirming

Pollack's findings.  *Id.* at 23.

Specifically, Justice Hagler determined that the Chancellor may properly delegate

authority to commence termination proceedings to principals, referencing cases within the New

York First Department and at least one Appellate Division court that had decided such,[10] and

therefore the principal did have the authority to propound charges.  *Id*. at 15:18–17:13.  Justice

Hagler further considered the arbitrator's review of the credibility of the witnesses and relevant

data in her lengthy decision and dismissed Arroyo's claim of error by the arbitrator.  *Id*. at 17:14–

18:8.  Justice Hagler determined that Arroyo failed to present any evidence of arbitrator bias

---

[8] Arroyo argued that "unless more than half of [her] students were kept back because they could not learn the curriculum, . . . [Arroyo] was a successful teacher."  *Id.* ¶ 15.  It is unclear where this standard comes from.

[9] Justice Hagler stated that he normally does not allow prepared written speeches in oral argument because he prefers that petitioners "highlight some of [their] main arguments and persuade [him] why [he] should vacate the arbitrator's determination," but he granted Arroyo leeway as she was appearing *pro se*.  Art. 75 Tr. at 4:10–25.

[10] Justice Hagler referred to these cases generally but did not cite to the specific opinions.  Art. 75 Tr. at 16:23–17:7.

other than the decision which terminated her employment, stating "the mere fact that the arbitrator ruled against [Arroyo] does not give rise to an allegation of bias." *Id*. at 18:9–26. Justice Hagler also disagreed with Arroyo's argument that an administrator cannot properly judge an individual with 15 minutes of observation, citing the three year span of time over which Arroyo was observed at least 11 times and found to have failed to adequately and effectively plan and execute lessons. *Id*. at 19:2–23.  Finally, in response to Arroyo's argument that the penalty "shocks the conscience and should be vacated," Justice Hagler determined that, based on Arroyo's past failure to improve identified pedagogical weaknesses, termination was a proper penalty. *Id*. at 19:24–23:10.  Accordingly, Justice Hagler dismissed Arroyo's petition. *Id*. at 23:10–11.  Justice Hagler's decision was filed on January 15, 2019.  Compl. ¶ 13.

Arroyo alleges that she was ridiculed by Justice Hagler "for not being able to understand or speak English well enough for him."  Compl. ¶ 13.  Arroyo does not specify how Justice Hagler ridiculed her, and while the transcript reflects that there were some moments where the judge stated that he was unable to understand what Arroyo was saying, the judge permitted the interpreter to read Arroyo's written statement instead.  Art. 75 Tr. at 5:20–6:25.  Justice Hagler also allowed Arroyo to read her written statement, contrary to his usual practice.  *Id*. at 3:21–5:11.  Arroyo has not asserted that she filed an appeal in the New York State court system from Justice Hagler's decision.

## D.    *Gulino* Litigation

*Gulino v. Board of Education*, 96 Civ. 8414 (KMW) (the "*Gulino* litigation") is a Title VII class action against the Board of Education of the City School District of the City of New York (the "BOE") regarding the Liberal Arts and Sciences Test ("LAST") that teachers were required to pass "as a condition of employment, even though the tests were not properly

validated and had a disparate impact on African-American and Latino teachers."  Pl.'s Opp., Ex. 1 of Ex. H, Report and Recommendation for Claimant Reyna Arroyo at 2.  In 2012, Judge Wood of the Southern District of New York found that the use of LAST violated Title VII, and in 2013, the judge certified a remedy-phase class.  *Id*. at 1–2.  On August 23, 2018, the plaintiffs' counsel in the *Gulino* litigation submitted Arroyo's demand for damages as a member of the class.[11] Pl.'s Opp., Ex. 1 of Ex. H, Proposed Findings of Fact and Conclusions of Law for Reyna Arroyo, at 1.  On October 18, 2019, the court-appointed Special Master assigned to oversee the remedial phase recommended that the court adopt the Findings of Fact and Conclusions of Law for Arroyo.  *Id*. at 2, 8.  It is unclear based on the documents submitted what the current status is of Arroyo's demand for damages.  Arroyo, in the instant action, relies on the *Gulino* litigation in her Fourteenth Amendment equal protection claim as an example of how DOE teachers who are Black or Latina are treated differently than other similarly situated District employees.  Pl.'s Opp. At 46.

**E.     Instant Action**

Arroyo filed the instant action on August 8, 2019.  Compl.  In her complaint, Arroyo alleges a First Amendment retaliation claim, asserting her termination was related to the letter she wrote to the SCI on grading fraud at the College Academy.  Pl.'s Opp. At 42.  Arroyo also alleges Fourth and Fifth Amendment violations, although she does not clarify the basis for these violations.  Compl. ¶¶ 1, 27.  Arroyo further alleges Fourteenth Amendment violations under both the Due Process and Equal Protection Clauses for procedural deficiencies with her § 3020-a

---

[11] Arroyo's demand for damages included backpay equal to what her salary and bonuses would have been had the BOE not discriminated against her using the LAST test, the fees she paid to take the LAST test, Annuity Savings Accumulation Fund ("ASAF") damages, and pension-related relief, all with a tax component.  Pl.'s Opp., Ex. 1 of Ex. H, Proposed Findings of Fact and Conclusions of Law for Reyna Arroyo.

hearing, disparate treatment based on differences in arbitrator selection for teachers and for principals/assistant principals, disparate treatment based on her race and national origin, and ongoing stigma after being placed on the "Ineligible Inquiry List."  Compl., Pl.'s Opp.  Arroyo also claims discrimination on the basis of national origin and race, a state tort claim, and violations of New York state law, specifically New York Education Law § 3020-a and New York State Civil Service Law § 75-b(1)(b).  Compl., Pl.'s Opp.

Arroyo does not assert that she filed a charge with the Equal Employment Opportunity Commission ("EEOC").

## II.     LEGAL STANDARD

## A.     Rule 12(b)(6) Motion to Dismiss

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).  However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. vle. Twombly*, 550 U.S. 544, 555 (2007)).  In order to satisfy the pleading standard set forth in Rule 8, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557).

Courts must construe a *pro se* complaint liberally and interpret its claims as "rais[ing] the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d. Cir. 2006)). When a plaintiff's claims involve civil rights violations, the Court applies this standard "with particular force." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level." *Id.* (citing *Twombly*, 550 U.S. at 555). To survive a motion to dismiss pursuant to Rule 12(b)(6), a *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678.

**B.    Extrinsic Materials Considered for a Rule 12(b)(6) Motion to Dismiss**

"When presented with a motion to dismiss pursuant to Rule 12(b)(6), the court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." *Silsby v. Icahn*, 17 F. Supp. 3d 348, 354 (S.D.N.Y. 2014) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). Similarly, a court may consider a *res judicata* or collateral estoppel defense on a Rule 12(b)(6) motion to dismiss "when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498–99 (2d Cir. 2014) (citing *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) ("[W]hen all relevant facts are shown by the court's own records, of which the court takes notice, the defense [of res judicata] may be upheld on a Rule 12(b)(6) motion.")); *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344,

360 (S.D.N.Y. 2014) (noting that in a 12(b)(6) motion where collateral estoppel or *res judicata* is

an issue, "dismissal is appropriate when it is clear from the face of the complaint, and

consideration of matters which the court may take judicial notice of, that the plaintiff's claims are

barred as a matter of law") (internal citations omitted).

Local Civil Rule 12.1 of the Southern District of New York directs represented parties

who move to dismiss by referring to matters outside the pleadings to provide notice to a *pro se*

party that the matter may be treated as a motion for summary judgment and to further explain

what the plaintiff must do to oppose summary judgment. *See* S.D.N.Y. Civil Local Rule 12.1;

*see also Hernandez v. Coffey*, 582 F.3d 303, 308 n.2 (2d Cir. 2009). Here, the DOE has served

the requisite notice on Plaintiff. *See* Mildner Decl. However, the Court need not convert the

motion to one for summary judgment because the Court can take judicial notice of the extrinsic

materials relied upon by the DOE.

Specifically, the DOE attaches the following documents in support of the motion: (1) the

decision by Hearing Officer Lisa Pollack in Arroyo's § 3020-a hearing, 3020-a Op., (2) the

amended Article 75 petition filed by Arroyo in the Supreme Court, Index No. 100741/2018,

dated June 15, 2018, Art. 75 Pet., (3) the transcript of Justice Hagler's decision dismissing the

case, dated November 29, 2018, Art. 75 Tr., and (4) the CBA between UFT (of which Arroyo

was a member) and the DOE, dated 2008–2019, UFT CBA. Accordingly, in considering the

DOE's motion, the Court takes judicial notice of the § 3020-a hearing decision, public

documents filed in connection with the state court proceedings, and the CBA, "not for the truth

of the matters asserted . . . but rather to establish the fact of such litigation and related filings."

*Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see also Verdi v. City of New York*,

306 F. Supp. 3d 532, 550 n.17 (S.D.N.Y. 2018) (taking judicial notice of a CBA between the

DOE and a teachers union, of which the plaintiff was a member); *Moore v. City of New York*, No. 08 Civ. 8879 (PGG), 2010 WL 742981, at *3 (S.D.N.Y. Mar. 2, 2010) (taking judicial notice of the § 3020-a hearing decision as it was incorporated by reference in the complaint); *Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*, 742 F. Supp. 2d 446, 452 (S.D.N.Y. 2010) (taking judicial notice of state court documents); *Tokio Marine & Nichido Fire Ins. Co. v. Canter*, No. 07 Civ. 5599 (PKL), 2009 WL 2461048, at *4 (S.D.N.Y. Aug. 11, 2009) (same).

## III.   DISCUSSION

The Court finds that Arroyo's due process and Title VII claims are barred by the doctrine of collateral estoppel, and her complaint otherwise fails to allege facts sufficient to establish her constitutional causes of action.  The Court dismisses all federal claims and accordingly declines to exercise supplemental jurisdiction over Arroyo's claims arising under state law.

In addition to Arroyo's claims under the First, Fourth, Fifth, and Fourteenth[12] Amendments, the Court construes Arroyo to assert a violation of Title VII of the Civil Rights Act of 1964 because of her allegations of discrimination on the basis of race and national origin.

Arroyo's complaint alleges First and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983.  "Section 1983 provides a private cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Boyland v. Wing*, 487 F. Supp. 2d 161, 167 (E.D.N.Y. 2007) (quoting 42 U.S.C. § 1983). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal citations and quotation marks omitted).  To succeed under § 1983, Arroyo must allege

---

[12] While Arroyo alleges violations of the Fourth and Fifth Amendments in her complaint, Compl. ¶¶ 1, 27, she has failed to provide any facts underlying either claim in her complaint or opposition to the motion to dismiss and declines to consider them further.

that (1) the challenged action deprived her of a right secured by the Constitution or federal law, and (2) the DOE is a state actor or acted under color of state law at the time of the challenged action. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999); *see also Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 136–37 (2d Cir. 1999).

## A.      Claims Barred by Collateral Estoppel

The DOE argues that Arroyo's due process and Title VII claims are barred by collateral estoppel due to the decision by the New York State Supreme Court in the Article 75 proceeding and by Pollack in the § 3020-a hearing, respectively.

Collateral estoppel applies to actions under 42 U.S.C. § 1983. *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 797 (1986). Congress has directed federal courts to accord state judicial proceedings the same full faith and credit that state courts provide them, and this policy applies in § 1983 litigation. *See Allen v. McCurry*, 449 U.S. 90, 96 (1980); *Golino v. City of New Haven*, 950 F.2d 864, 869 (2d Cir. 1991). Collateral estoppel, otherwise known as issue preclusion, bars the relitigating of issues that have previously been before the court, "thereby producing finality in judgments" and preserving judicial economy. *Beck v. Levering*, 947 F.2d 639, 642 (2d Cir. 1991); *see also Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (internal citations omitted). The doctrine of collateral estoppel applies when:

> (1) [T]he issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*United States v. Hussein*, 178 F.3d 125, 129 (2d Cir. 1999) (internal citations and quotation marks omitted).

The Second Circuit has held that "collateral estoppel appl[ies] to issues resolved by arbitration 'where there has been a final determination on the merits, notwithstanding a lack of confirmation of the award.'" *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267–68 (2d. Cir. 1997) (quoting *Hilowitz v. Hilowitz*, 85 A.D.2d 621, 621 (N.Y. App. Div. 1981)).  Article 75 decisions have also been found claim preclusive under collateral estoppel in this Circuit.  *See, e.g.*, *Batyreva v. N.Y.C. Dep't of Educ.*, No. 07 Civ. 4544 (PAC) (DF), 2010 WL 3860401, at *15 (S.D.N.Y. Oct. 1, 2010) (adopting report and recommendation) (holding that collateral estoppel barred the plaintiff's claims regarding the findings or fairness of the plaintiff's § 3020-a hearing as the Article 75 court had already reviewed and necessarily decided these); *Blythe v. City of New York*, 963 F. Supp. 2d 158, 175–76 (E.D.N.Y. 2013) (holding that plaintiff's claims relating to lack of probable cause and hearing officer bias in her § 3020-a hearing were barred by collateral estoppel since those claims had been previously decided on by the Article 75 court).

The Second Circuit has similarly held that a "Section 3020-a hearing is a quasi-judicial administrative action whose findings are entitled to preclusive effect" so long as the standard requirements of collateral estoppel are met.  *Burkybile v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 308 (2d Cir. 2005).  In the case of unreviewed findings of state administrative tribunals, the Supreme Court has held that "when a state agency 'acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts."  *Univ. of Tenn.*, 478 U.S. at 799 (internal alterations and citations omitted); *see also Burkybile*, 411 F.3d at 310–12.

*1. Fourteenth Amendment Due Process Claims*

Arroyo alleges that Pollack lacked subject matter jurisdiction for the § 3020-a hearing due to the lack of an executive session vote, that Pollack was biased and discriminatory, and that Pollack did not fairly adjudicate the hearing and provide her with all evidence she requested. Compl. ¶ 15; Pl.'s Opp. at 5, 10, 30.

Under the Fourteenth Amendment, "[a] procedural due process claim is composed of two elements:  (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process."  *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012).  The Second Circuit has determined that "employee[s] guaranteed continued employment absent 'just cause' for discharge," such as tenured teachers, "ha[ve] a property interest in continued employment."  *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002); *see also Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist.*, 902 F.2d 208, 211 (2d Cir. 1990) ("[Plaintiff's] position as a tenured teacher is indisputably a property interest protected by the Fourteenth Amendment.").  Arroyo thus satisfies the first element of her Fourteenth Amendment claim.

Under the Due Process Clause, prior to termination, a "tenured public employee is entitled to oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  With regards to § 3020-a hearings, courts in this Circuit have frequently found that "the procedures outlined by § 3020-a of the Education Law, when followed, are more than adequate procedural safeguards to satisfy the plaintiff's due process rights under the Fourteenth Amendment."  *Ramberran v. Dellacona*, No. 07 Civ. 304 (CBA), 2008 WL 905217, at *4 (E.D.N.Y. Mar. 31, 2008); *see also Morales v. Dep't of Educ. of City of*

*New York*, No. 17 Civ. 7414 (JMF), 2019 WL 1228075, at *2 (S.D.N.Y. Mar. 15, 2019) (finding

that plaintiff "received all the process she was due" in her properly held § 3020-a hearing);

*Adams v. N.Y. State Educ. Dep't.*, 752 F. Supp. 2d 420, 456–58 (S.D.N.Y. Nov. 18, 2010) (citing

*Ramberran* in dismissing plaintiffs' Fourteenth Amendment due process claims), *aff'd sub nom*,

*Ebewo v. Fairman*, 460 F. App'x 67 (2d Cir. 2012).  The Court finds these opinions persuasive

and concludes that § 3020-a procedures, when followed properly, satisfy the due process

requirements of the Fourteenth Amendment.

Arroyo's due process claims are barred by collateral estoppel based on the § 3020-a

hearing and the Article 75 proceeding in state court.  During that court proceeding, Arroyo was

afforded a full and fair opportunity to litigate.  She submitted written papers and was allowed to

read a written statement during the proceedings with the help of an interpreter.  Art. 75 Tr. at

2:21–11:24.

Moreover, in the state action, Justice Hagler necessarily decided that the § 3020-a hearing

followed all procedural requirements in denying Arroyo's petition and upholding Pollack's

decision to terminate her.  Justice Hagler necessarily found that Arroyo was given all due process

she was owed in her § 3020-a hearing, and she is barred by collateral estoppel from arguing

otherwise in this case.

As a result, this Court dismisses Arroyo's claims of procedural deficiencies under the

Due Process Clause of the Fourteenth Amendment.

*2.  Title VII Claim*

Arroyo argues that she was considered "a weak link at her school" because English was

not her first language and that she was terminated on the basis of her national origin and race.

Pl.'s Opp. at 31, 46.  The Court, in addition to discussing Arroyo's Fourteenth Amendment equal

protection claim *infra*, construes Arroyo as alleging employment discrimination on the basis of her race, color, and national origin which would constitute a violation of Title VII of the Civil Rights Act of 1964.

In its reply, the DOE moves to dismiss the Title VII claim on the basis that:  (1) Arroyo did not file a timely charge with the EEOC,[13] (2) even if she had, national origin and racial discrimination claims are precluded since Arroyo raised these issues in her § 3020-a hearing, and (3) even if the claim were not precluded, Arroyo fails to state a claim.  Doc. 22 at 8–10.

To state a *prima facie* case of discrimination under Title VII, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination.  *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010) (internal citations omitted).  The DOE does not dispute that Arroyo is a member of a protected class or that she suffered the adverse employment action of termination.  However, her lack of qualifications and the propriety of her termination have already been determined in Arroyo's § 3020-a hearing and upheld in the Article 75 proceeding and are thus barred by collateral estoppel.

---

[13] While Arroyo does not assert that she filed a timely claim with the EEOC, in the Second Circuit, failure to exhaust administrative remedies and to timely file a lawsuit after administrative dismissal is an affirmative defense; administrative exhaustion is not a jurisdictional pleading requirement.  *See Hardaway v. Hartford Pub. Works Dept.*, 879 F.3d 486, 491 (2d Cir. 2018) ("[T]he burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense.").  Although "[a]ffirmative defenses may be considered on a motion to dismiss where the defense appears on the face of the pleading and the documents incorporated therein," *Ashmeade v. Citizens Bank*, No. 17 Civ. 8994 (JGK), 2018 WL 3093963, at *6 (S.D.N.Y. June 22, 2018) (internal quotation removed), Arroyo's pleadings do not contain any mention of proceedings before the EEOC.  Therefore, it is impossible to determine whether Arroyo has an equitable defense to exhaustion at this time.  *Compare id.* (declining to dismiss Title VII complaint on exhaustion grounds even though *pro se* plaintiff made arguments concerning equitable tolling) *with Ziyan Shi v. N.Y. Dep't of State, Div. of Licensing Servs.*, 393 F. Supp. 3d 329, 339–43 (S.D.N.Y. 2019) (dismissing on summary judgment a Title VII claims based on failure to exhaust, after the benefit of discovery).

During the § 3020-a hearing, Arroyo had a full and fair opportunity to litigate.  She was at all times represented by an attorney.  3020-a Op. at 1; Pl.'s Opp., Ex. C.  Arroyo submitted a motion to dismiss prior to the pre-hearing conference which was denied in its entirety.  Pl.'s Opp., Ex. C; 3020-a Op. at 2–3.  Arroyo had a full opportunity to present evidence, including six witnesses and eight exhibits, and the hearing was held over the course of eleven days, resulting in a 47-page decision.  3020-a Op. at 1, 5; *see also Washington v. N.Y.C. Dep't of Educ.*, No. 16 Civ. 9588 (ER), 2017 WL 4687982, at *7 (S.D.N.Y. Oct. 16, 2017) (finding that plaintiff had "a full and fair opportunity to litigate in the § 3020-a hearing" since the plaintiff made a motion to dismiss before the pre-hearing conference, was represented by counsel, had the opportunity to present evidence and arguments, the hearing including nine days of testimony and evidence, and the hearing resulted in a 30-page decision).

In her thorough and well-reasoned opinion, Pollack found that the DOE proved Arroyo's incompetence and determined that termination was an appropriate penalty.  Accordingly, the issue of Arroyo's incompetence as a teacher was necessarily decided.

Moreover, Pollack specifically considered Arroyo's claim that she was "unlawfully terminated because she was Hispanic" and necessarily found that her termination did not take place under circumstances giving rise to an inference of discrimination.  § 3020-a Op. at 43.

Under these circumstances, the Court finds that Arroyo's Title VII claims based on national origin and racial discrimination are barred by collateral estoppel and are dismissed.

## B.    Remaining Federal Claims

### 1.  First Amendment Retaliation Claim

Arroyo alleges that the DOE retaliated against her for speaking against grading fraud at the College Academy in 2017.  Pl.'s Opp. at 42.

"Government employers, like private employers, need a significant degree of control over their employees' words and actions" to ensure that employees do not "contravene governmental policies or impair the proper performance of governmental functions." *Garcetti v. Ceballos*, 547 U.S. 410, 418–19 (2006).  A government entity in the form of an "employer charged with providing such essential services as public safety and education, rather than a sovereign governing its citizens, . . . has greater leeway under the Constitution to control employees' speech that threatens to undermine its ability to perform its legitimate functions." *Jackler v. Byrne*, 658 F.3d 225, 234 (2d Cir. 2011) (citation and internal quotation marks omitted).

While government employees have diminished speech rights as compared with private citizens, "a public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Hale v. Mann*, 219 F.3d 61, 70 (2d Cir. 2000) (quoting *Connick v. Myers*, 461 U.S. 138, 140 (1983)).  Accordingly, in First Amendment, public employee freedom of speech cases, courts must achieve a balance between the interest of the public employee "as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

Courts employ a two-step approach to evaluate whether the First Amendment protects employee speech from retaliation.  First, the court inquires "whether the employee spoke as a citizen on a matter of public concern." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotation marks and citation omitted).  If the answer to this question is no, then "the employee has no First Amendment cause of action based on . . . her employer's reaction to the speech." *Garcetti*, 547 U.S. at 418.  If the answer is yes, the court must then decide "whether the relevant government entity had an adequate justification for treating the employee differently

from any other member of the general public." *Ruotolo*, 514 F.3d at 188 (internal quotation

marks and citation omitted); *see also Garcetti*, 547 U.S. at 418.

The first factor, "whether the employee spoke as a citizen on a matter of public concern,"

consists of two subcomponents:  "(1) whether the subject of the employee's speech was a matter

of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as an

employee." *Jackler*, 658 F.3d at 235.  Speech is of public concern if it relates to political, social

or other community concerns, rather than an employee's personal concerns. *Johnson v. Ganim*,

342 F.3d 105, 112 (2d Cir. 2003) (citing *Connick*, 461 U.S. at 146); *Hoyt v. Andreucci*, 433 F.3d

320, 330 (2d Cir. 2006) (same).  Generally, "discussion regarding current government policies

and activities is perhaps the paradigmatic matter of public concern"; if the government entity

cannot show that such speech would impact or disrupt the government employer's functions,

then it may receive First Amendment protection.  *See Harman v. City of New York*, 140 F.3d

111, 118 (2d Cir. 1998) (citation and internal punctuation omitted).  Matters of public concern

also include "speech aimed at uncovering wrongdoing or breaches of the public trust." *Wrobel v.

Cnty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) (quoting *Glass v. Dachel*, 2 F.3d 733, 741 (7th Cir.

1993)).

Importantly, however, "when public employees make statements pursuant to their official

duties, the employees are not speaking as citizens for First Amendment purposes, and the

Constitution does not insulate their communications from employer discipline." *Garcetti*, 547

U.S. at 421; *see also Healy v. City of N.Y. Dep't of Sanitation*, 286 F. App'x 744, 745–46 (2d

Cir. 2008) (holding that speech is not protected where it "ar[i]se[s] in the course of official job

duties.").  The Second Circuit has held that determining whether the employee's speech "is on a

matter of public concern" is to be determined by the court as "a question of law." *Jackler*, 658

F.3d at 235 (citing *Connick*, 461 U.S. at 148 n.7).  While "there is no categorical approach,"

courts evaluate the "content, form, and context of a given statement."  *Norton v. Breslin*, 565 F.

App'x 31, 33–34 (2d Cir. 2014) (quoting *Johnson*, 342 F.3d at 112).

In the instant case, Arroyo argues that her letter dated June 28, 2017 regarding grading

fraud was not one made pursuant to her official duties, that it was "motivated by her concerns as

a member of the community and by information available to the public."  Pl.'s Opp. at 42–45.

She further argues that her job description did not require her to bring up "inappropriate actions

by the school's administration."  *Id*. at 42.  Arroyo suggests that the charges Sigerson leveled

against her were in retaliation for this speech.  *Id*.  The DOE argues, in its reply, that the letter is

the speech "of a DOE teacher discharging her duty" and that it requests the SCI take action to

address Arroyo's concerns, making the letter one of "an internal workplace grievance."  Doc. 22

at 4.

The Second Circuit has determined that "speech can be 'pursuant to' a public employee's

official job duties even though it is not required by, or included in, the employee's job

description, or in response to a request by the employer."  *Weintraub v. Bd. of Educ. of City Sch.

Dist. of City of New York*, 593 F.3d 196, 203 (2d Cir. 2010).  Courts in this Circuit have

established that "a teacher's communications made within internal school channels about . . . the

treatment of the teacher's students" fall within the teacher's official duties and do not constitute

protected speech under the First Amendment.  *Smith v. City of New York*, 130 F. Supp. 3d 819,

832 (S.D.N.Y. 2015), *aff'd*, 664 F. App'x 45 (2d Cir. 2016); *see also Picinich v. N.Y. Dep't of

Educ.*, No. 16 Civ. 844 (CBA) (LB), 2016 WL 11265651, at *7 (E.D.N.Y. Oct. 14, 2016)

(finding that plaintiff speaking out against "grading policies" — plaintiff alleges he was asked to

change students' grades — to the principal and other supervisors was "made in the course of his

official duties as a teacher"), *report and recommendation adopted*, No. 16 Civ. 844 (CBA) (LB),

2017 WL 1079976 (E.D.N.Y. Mar. 22, 2017); *Adams*, 752 F. Supp. 2d at 430 ("Plaintiffs' cannot

plausibly establish that . . . complaining about a principal's falsification of student grades or

attendance records" to the Office of Special Investigations "is not 'part-and-parcel' of their

concerns as school teachers.").  This Court finds the reasoning of those opinions persuasive and

similarly finds that Arroyo's complaints of grading fraud, made within internal school channels,

are "part-and-parcel" of her concerns as a school teacher and therefore cannot constitute

protected speech under the First Amendment.

In connection to her letter's reference to treatment of her by the school's administration

and unfair behavior to the College Academy staff generally, courts in this district have similarly

distinguished that "communications made directly to the DOE's leadership and to [SCI] are

arguably analogous to citizen speech" and determined that "a single public employee's attempt

to 'redress personal grievances' lacks a 'broader public purpose.'"  *Smith*, 130 F. Supp. 3d at 832

(quoting *Lewis v. Cowen*, 165 F.3d 154, 163–64 (2d Cir. 1999)) (finding that a plaintiff's

complaint, first to a Chancellor and then to the Special Commissioner of Investigation, that he

had been personally mistreated did not fall under the category of public concern); *see also*

*Adams v. N.Y. State Educ. Dep't*, No. 08 Civ. 5996 (VM) (AJP), 2010 WL 624020, at *25

(S.D.N.Y. Feb. 23, 2010) (recommending that the plaintiff's grievances as reported to the

Human Resources department about how the DOE treated her discriminatorily did not qualify as

protected speech), *report and recommendation adopted in relevant part*, 705 F. Supp. 2d 298

(S.D.N.Y. Apr. 6, 2010).  This Court finds the reasoning of these opinions regarding the channel

and type of communication persuasive and finds that Arroyo's report of discriminatory treatment

falls within her official duties as a teacher and therefore does not constitute protected speech.

Accordingly, Arroyo has failed to successfully allege a First Amendment retaliation claim.[14]

2.   *Remaining Fourteenth Amendment Due Process Claim — "Stigma Plus"*

Arroyo alleges that she suffers a "stigma on her character and reputation" because the DOE placed her on the "Problem Code" list and flagged her fingerprints with a "no hire" note, asserting that the DOE violated her due process rights through a stigma plus claim.  Compl. ¶¶ 12, 16–17; *see also Green v. Dep't of Educ. of City of New York*, No. 18 Civ. 10817 (AT) (GWG), 2019 WL 3432306, at *10 (S.D.N.Y. July 31, 2019) (construing plaintiff's complaint that the DOE "flagg[ed] his personnel files with a 'no hire code' and [ ] plac[ed] him on a list called the "Problem Code" or "Ineligible Inquiry List" as a stigma plus claim), *report and recommendation adopted*, No. 18 Civ. 10817 (AT) (GWG), 2019 WL 4622077 (S.D.N.Y. Sept. 23, 2019).  "The loss of one's reputation can violate the Due Process Clause if the loss of reputation is associated with the deprivation of a federally protected liberty interest, such as government employment."   *Kuczinski v. City of New York*, 352 F. Supp. 3d 314, 324 (S.D.N.Y. 2019) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)).

"A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983."   *Patterson v. City of Utica*, 370 F.3d 322, 329–30 (2d Cir. 2004).  However, the Second Circuit has determined that a plaintiff

---

[14] Even if the letter was found to be protected speech, the allegations do not support a finding of a causal nexus between Arroyo's letter to the SCI and her termination.  Arroyo's letter to the SCI was sent on June 28, 2017, Pl.'s Opp., Ex. I, *after* Sigerson sent her the Notice of Determination of Probable Cause on Education Law § 3020-a Charges on June 19, 2017, Pl.'s Opp., Ex. B, and the § 3020-a hearing was the culmination of an ongoing disciplinary process that had begun three years prior.  "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."  *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).

can bring a stigma plus claim, alleging that the stigma suffered amounts to a constitutionally

recognized deprivation of liberty without due process, if she successfully "allege[s] (1) the

utterance of a statement about her that is injurious to her reputation, that is capable of being

proved false, and that he or she claims is false, and (2) some tangible and material state-imposed

burden . . . in addition to the stigmatizing statement." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir.

2005) (internal quotation marks and citations omitted).

To state a "stigma plus" claim, "[t]he defamatory statement must be sufficiently public to

create or threaten a stigma; hence, a statement made only to the plaintiff, and only in private,

ordinarily does not implicate a liberty interest." *Id*. An employee plaintiff must also allege that

her former employer made statements "against [her] that might seriously damage [her] standing

and associations in [her] community" and denied her of a chance to clear or redeem her

reputation. *Roth*, 408 U.S. at 573; *Donato*, 96 F.3d at 630 ("When a state fires an employee and

publicly charges that she acted dishonestly or immorally, due process guarantees the employee

an opportunity to defend her good name."). The statements and allegations must discuss the

employee's inability to do a particular job and not simply state that an employee performed

poorly. *O'Neill v. City of Auburn*, 23 F.3d 685, 692 (2d Cir. 1994). "A plaintiff must allege that

the defendant employers publicly attacked the professional competency of the plaintiff and that

the defendant employers publicized unfavorable reasons for plaintiff's dismissal." *White v. City

of New York*, No. 13 Civ. 7156 (ER), 2014 WL 4357466, at *13 (S.D.N.Y. Sept. 3, 2014).

In this case, Arroyo fails to allege that the DOE published stigmatizing remarks. She

alleges that she has been placed on the "Problem Code" or "Ineligible Inquiry List" by the DOE,

a list of "names and personnel file numbers of employees . . . who have been charged with any

number of minor infractions or who have spoken out about wrong-doing by administrators" and

that her "fingerprints are flagged."  Compl. ¶ 17.  Arroyo has failed to allege facts that the list is made public to future potential employers.  *See White*, 2014 WL 4357466, at *13 ("[B]ecause Plaintiff fails to allege facts indicating that the 'ineligible/inquiry' . . . list[ ] were public to future employers, she fails to state a 'stigma plus' claim.").  Neither "does she assert that the [Ineligible/Inquiry] List disclosed the stigmatizing grounds for her dismissal or that inclusion on the List gives rise to a *per se* inference that plaintiff was terminated for a reason sufficiently 'stigmatizing' to state a due process claim."  *McDonald v. Bd. of Educ.* No. 01 Civ. 1991 (NRB), 2001 WL 840254, at *7 (S.D.N.Y. Jul. 25, 2001).  Finally, Arroyo has not alleged that "she has been foreclosed from a range of other employment opportunities" outside the DOE.  *Koehler v. New York City*, No. 04 Civ. 6929 (RMB), 2005 WL 3502042, at *3 (S.D.N.Y. Dec. 20, 2005); *see also McDonald*, 2001 WL 840254, at *8 ("If a State employer internally disseminates erroneous information concerning an employee's termination, thereby making it more difficult for that employee to seek re-employment with that employer, the employer has not deprived the employee of his protected liberty interest.").

Other courts have regularly found that teachers have failed to state a Fourteenth Amendment due process violation based on a stigma plus claim due to being placed on the "Problem Code" or "Ineligible Inquiry List."  *See Green*, 2019 WL 3432306, at *10–11 (dismissing plaintiff's stigma plus claim where plaintiff was flagged with a "no hire code" and placed on the "Problem Code" or "Ineligible Inquiry List"); *Adams*, 752 F. Supp. 2d at 454–55 (dismissing plaintiffs' argument that the DOE deprived them of a constitutionally protected property right by placing them on the "'Ineligibility/Inquiry' List" and deciding that the same due process inquiry applied to their liberty interest claims as well).  Similarly, the Court finds that Arroyo has failed to state a claim based on being placed on the "Problem Code" or

"Ineligible Inquiry List." Accordingly, the Court dismisses Arroyo's stigma plus due process claim.

### 3. Fourteenth Amendment Equal Protection Claims

Arroyo argues that the DOE treats principals and teachers differently in terms of arbitrator choice for 3020-a hearings: principals and assistant principals are permitted to choose an arbitrator from a list based on NY State Commissioner regulations while teachers employed by the DOE are assigned an arbitrator from one of two permanent panels, the Administrative Trials Unit and the Teacher Performance Unit. Compl. ¶¶ 20–21. She references these arbitrators receiving $1400 a day and that "they all know that they must do whatever the [DOE] wants" in order to keep these "very lucrative" positions. *Id*. ¶ 21. Arroyo further argues that she was terminated on the basis that "her first language is Spanish and she is a Latina woman who has been treated differently than white teachers," referencing her participation in the *Gulino* litigation. Pl.'s Opp. at 31. Arroyo asserts that these are violations of the Equal Protection Clause of the Fourteenth Amendment. Compl. ¶ 20.

The Fourteenth Amendment guarantees that "the state must treat similarly situated individuals similarly, in the absence of an adequate reason to distinguish between them." *Ramos v. Town of Vernon*, 353 F.3d 171, 174 (2d Cir. 2003). Courts begin their equal protection claim analysis "by ascertaining the appropriate level of scrutiny." *Id*. (citing *Dunn v. Blumstein*, 405 U.S. 330, 335 (1972)).

The Second Circuit has held that "the threshold question for any analysis under the Equal Protection Clause is whether the highly deferential rational basis review applies, or instead whether the legislation involves a suspect class or a fundamental right resulting in the application of a stricter form of scrutiny." *Hayden v. Paterson*, 594 F.3d 150, 170 (2d Cir. 2010). If a court

concludes that the government used a racial classification or was motivated by racial discrimination, then the court must review the government action under strict scrutiny. *Hunt v. Cromartie*, 526 U.S. 541, 546 (1999). Absent either condition, the government action is subject to rational basis review. *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 271–72 (1979). "Where rational basis scrutiny applies, the Government has no obligation to produce evidence . . . to sustain the rationality of a statutory classification . . . . Any reasonably conceivable state of facts will suffice to satisfy rational basis scrutiny." *Lewis v. Thompson*, 252 F.3d 567, 582 (2d Cir. 2001) (internal quotation marks and citations omitted). "The burden falls to the party attacking the statute as unconstitutional to 'negative every conceivable basis which might support it.'" *Id*. (quoting *Madden v. Kentucky*, 309 U.S. 83, 88 (1940)).

*a.   Arbitrator Selection*

With regard to Arroyo's argument that not being permitted to choose an arbitrator violated her equal rights, she relies on the undisputed fact that New York City teachers are treated differently than assistant principals and principals. Compl. ¶ 20–21. "Suspect classifications are those drawn on the basis of race, alienage, or national origin, or which discriminate against a group saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *Disabled Am. Veterans v. U.S. Dep't of Veterans Affs.*, 962 F.2d 136, 141 (2d Cir. 1992) (internal citations and quotation marks omitted). Courts in this district have determined that "New York City teachers do not represent a 'suspect class,'" and so the "rational basis" test applies. *Green*, 2019 WL 3432306, at *10.

Arroyo's complaint references Article 21G(2) of the CBA entered into by the UFT, of which Arroyo was a member, which provides for UFT's agreement to the rotating arbitrator panel.  Compl. ¶ 21; UFT CBA at 150–52.  Courts in this Circuit have considered, and rejected, a very similar issue to the one raised by Arroyo:  that the arbitrator selection process for DOE teachers who are bound by the CBA violates the Equal Protection Clause because other teachers in New York State are not bound by that CBA and have greater flexibility in choosing an arbitrator.[15]  *See Adams*, 752 F. Supp. 2d at 458 (dismissing plaintiffs' equal protection claims that they were deprived of the "right to . . . choose a[ ] Hearing Officer"); *Thomas v. Bd. of Educ. of City School Dist. of City of New York*, No. 09 Civ. 5167 (SLT) (RLM), 2011 WL 1225972, at *14–17 (E.D.N.Y. Mar. 29, 2011) (dismissing plaintiffs' equal protection claims regarding arbitrator selection).  In this case, the DOE, as in *Adams*, notes that the rationale behind the policy for DOE teachers was "increased efficiency and expediency" in handling the number of teacher § 3020-a hearings.  Doc. 15 at 13.  As the burden falls upon Arroyo to "negative every conceivable basis which might support [the policy]," *Lewis*, 252 F.3d at 582, and as she has failed to allege facts which negative the rationale of increasing efficiency, her claim that the arbitrator selection process violates equal protection cannot succeed.[16]

---

[15] In these cases, the non-DOE New York teachers in question were permitted to have a say in their arbitrator selection for § 3020-a hearings, closer to the arbitrator selection process for DOE administrators.  *See Adams*, 752 F. Supp. 2d at 458; *Thomas*, 2011 WL 1225972, at *3.

[16] Further, the arbitrator selection process that Arroyo was bound by was not the result of the state treating any individuals differently but rather the CBA between the UFT and the DOE.  To the extent that Arroyo's complaint challenges the UFT's and DOE's authority to modify § 3020-a procedures through the CBA, *Adams* held that § 3020(4)(a) "authorizes the DOE and the UFT to enter into a collective bargaining agreement modifying the procedures set forth in § 3020-a" and that § 3020(4)(a) does not violate the Equal Protection Clause.  *Adams*, 752 F. Supp. 2d at 458–60.  The Court finds the rationale in *Adams* persuasive and similarly dismisses any claim Arroyo makes challenging the UFT-DOE CBA as violating her equal protection rights.

*b.  Selective Enforcement Claims*

Arroyo alleges that the DOE engaged in selective enforcement by treating teachers who are Latina and Spanish speakers differently than other similarly situated teachers.  Pl.'s Opp. at 31, 46.  Selective enforcement requires a showing of similarly situated individuals or groups who were treated differently.  *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011).  Among courts in this Circuit, it is unsettled whether selective enforcement cases require the same high degree of similarity, or whether a "slightly less stringent" standard applies wherein plaintiffs must show that the comparators are "similarly situated in all material respects."  *Id*. at 696 (internal quotation marks omitted) (quoting *Vassallo v. Lando*, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008)).  As one court put it:

> The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely or necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

*Id*. at 696 (quoting *T.S. Haulers, Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455, 463 (E.D.N.Y. 2002)).

Arroyo cites the *Gulino* litigation as her basis for asserting that Black and Latina teachers are treated differently than similarly situated teachers.  Pl.'s Opp. at 46.  However, the *Gulino* litigation was limited to the disparate impact of the LAST examination on Black and Latina teachers.  Pl.'s Opp., Ex. 1 of Ex. H, Report and Recommendation for Claimant Reyna Arroyo, at 2.  Arroyo fails to allege facts that any other teachers were similarly situated in all material respects, therefore failing even the less stringent standard.  In fact, Arroyo does not allege any

facts regarding any similarly situated teachers who are not members of her protected class.

Therefore, her selective enforcement claim also fails.

**C.      Remaining State Law Claims**

Where, as here, all federal law claims are eliminated before trial, the "traditional 'values

of judicial economy, convenience, fairness, and comity'" weigh in favor of declining state law

claims. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-

Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having dismissed all federal claims in the

instant action, the Court declines to exercise supplemental jurisdiction over Arroyo's New York

state law claims.  They are dismissed without prejudice.

**IV.      CONCLUSION**

For the above reasons, the Court GRANTS the DOE's motion to dismiss in its entirety.

Arroyo is granted leave to replead only her First Amendment retaliation claim concerning her

letter to SCI, her Fourteenth Amendment equal protection claims on arbitrator selection and

discrimination on the basis of race and national origin, and her stigma plus claim based on her

being on the "Ineligible Inquiry List."  Arroyo's due process and Title VII claims are barred by

collateral estoppel and would thus be futile to replead.  Arroyo's Amended Complaint must be

filed, if at all, on or before September 10, 2020, and the DOE is directed to file an answer or any

objections to the complaint by October 1, 2020.  The Clerk of the Court is respectfully directed to

terminate the motion, Doc. 13.

It is SO ORDERED.

Dated:      August 6, 2020
            New York, New York

_____
            EDGARDO RAMOS, U.S.D.J.