UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
REYNA ARROYO,

                                  **Case No.:  19 CIV 7416 (ER)**

        Plaintiff,

            v.

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK,

        Defendant.
------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION TO DISMISS**

STEWART LEE KARLIN
LAW GROUP, P.C.

<u>s/ Stewart Lee Karlin</u>
STEWART LEE KARLIN, ESQ.
NATALIA KAPITONOVA, ESQ.
Attorney for Plaintiff
111 John Street, 22nd Floor
New York, N.Y.  10038
(212) 792-9670

# **TABLE OF CONTENTS**

*Item*                                                                                                                       *Page*

Table of Contents.................................................................................................................... i

Table of Authorities ..........................................................................................................ii-iv

Preliminary Statement........................................................................................................1

Statement of Facts............................................................................................................. 1-9

    1.  Procedural History ...................................................................................................1

    2.  Factual Background ............................................................................................... 2-6

    3.  Termination Proceedings ...................................................................................... 6-7

    4.  Equal Protection and Stigma Plus.......................................................................... 7-9

Argument       ................................................................................................................ 9-22

        Point I: Standard of Review ................................................................... 9-10

        Point II: The Amended Complaint Complies with The Court Order....................10

        Point III: Plaintiff's First Amendment Retaliation Claim States a
           Cause of Action................................................................................. 11-16

            A.  Plaintiff's First Amendment Retaliation Claim States A Cause
               of Action ................................................................................... 11-16

               i.   Plaintiff's Complaints to The Press Were Protected Speech . 12-13

               ii.  Plaintiff's Complaints Were Causally Related...................... 13-14

               iii. The Cause of Action Did Not Arise Until Plaintiff's
                    Termination and Thus, The First Amendment Claim
                    is Timely ................................................................ 15-16

        Point IV: Plaintiff's Fourteenth Amendment Claim Concerning Race
           and National Origin States A Plausible Claim ............................... 16-18

        Point V: Plaintiff's Fourteenth Amendment Stigma Plus States A Cause
           of Action ......................................................................... 18-22

Conclusion     ...................................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

*Item*                                                                                          *Page*

## *Laws and Statutes*

Federal Rule of Civil Procedure 8(a) ..............................................................................9

Federal Rule 12 (b)(6)..........................................................................................9, 22

## *Cases*

*Albright v. Oliver,*
510 U.S. 266,  1994) ...........................................................................................13, 22

*Appel v. Spirfdon,*
531 F.3d 138, 140 (2d Cir. 2008)..............................................................................12

*Ashcroft v. Iqbal,*
129 S. Ct. 1937, 1949 (2009) ...............................................................9, 10, 14, 16, 18

*Bell Atl Corp. v. Twombly,*
550 U.S. 544, 570 (2007)...........................................................................9, 16, 18

*Bd. of Regents of State Colls. v. Roth,*
408 U.S. 564, 573(1972)..........................................................................................19

*Birch v. City of New York,*
184 F. Supp. 3d 21, 26-27 (EDNY 2016) ..................................................................15

*Brandt v. Bd. of Coop. Educ. Servs.,*
820 F.2d 41, 43 (2d Cir. 1987)..................................................................................19

*Breuer v. Hart,*
909 F.2d 1035, 1039 (7th Cir.1990) ..........................................................................13

*Conley v. Gibson,*
355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).........................................11

*Conn. Dep't of Pub. Safety v. Doe,*
538 U.S. 1(2003)......................................................................................................19

*Connolly v. McCall,*
254 F.3d 36, 40-41 (2d Cir.2001) ..............................................................................15

*Connick v. Myers,*
461 U.S. 138, 147-48 and n. 7, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)......................................12

*Doe v. Dep't of Pub. Safety ex rel. Lee,*
271 F.3d 38, 47 (2d Cir. 2001)..............................................................................................19

*Donato v Plainview-Old Bethpage Central School District,*
96 F.3d 623, (2nd Cir. 1995)................................................................................................21

*Eagleston v. Guido,*
41 F. 3d 865 (2nd Cir. 1994)................................................................................................15

*Garcetti v. Ceballos,*
547 U.S. 410, 421, 126 S. Ct. 1951, 1959-60, 164 L . Ed. 2d 689 (2006).....................................13

*Irrera v. Humpherys et. al,*
859 F.3d 196 at 198 (2nd Cir. 2017).........................................................................................14

*Kassner v. 2nd Ave. Delicatessen Inc.,*
496 F.3d 229, 237 (2d Cir. 2007).......................................................................................9, 16

*Knox v New York City Dept. of Educ.,*
2011 NY Slip Op 04735 ......................................................................................................21

*Komlosi v. N.Y. State Office of Mental Retardation and Developmental Disabilities,*
64 F.3d 810, 817 (2d Cir. 1995).............................................................................................19

*Lewis v. Cowen,*
165 F.3d 154, 163 (2d Cir.1999).............................................................................................12

*Massaro v. Department of Education of the City of New York,*
18-2980-cv (2d Cir. 2019) ....................................................................................................14

*Matter of Swinton v. Safir,*
93 NY2d 758, 763-765 [1999]) .............................................................................................21

*Neu v. Corcoran,*
869 F.2d 662, 667 (2d Cir. 1989)...........................................................................................19

*O'Connor v. Steeves, et al.,*
994 F.2d 905, 913-14 (1st Cir.1993).......................................................................................12

*Paul v. Davis,*
424 U.S. 693, 711 (1976)................................................................................................18, 19

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,*
602 F.3d 57, 64 (2d Cir. 2010)...............................................................................................10

*Pickering v. Bd. of Educ.,*
391 U.S. 563, 568 (1968)........................................................................................................11

*Ruotolo v. City of New York,*
514 F. 3d 184 (2008)..................................................................................................11, 12, 13

*San Diego v. Roe,*
543 U.S. 77 at 83-84. (2004) ..................................................................................................13

*Skehan v. Village of Mamaroneck,*
465 F.3d 96, 106 (2d Cir. 2006).............................................................................................12

*Velez v. Levy,*
401 F.3d 75, 87 (2d Cir. 2005)...............................................................................................19

*Washington v. County of Rockland,*
211 F. Supp. 2d 507 (S.D.N.Y. 2002)....................................................................................15

*Zahra v. Town of Southold,*
48 F.3d 674, 683 (2d Cir. 1995)..............................................................................................16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
REYNA ARROYO,

                                          Case No.:  19 CIV 7416 (ER)

                    Plaintiff,

        v.

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK,

                    Defendant.
---------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO PLAINTIFF'S MOTION TO DISMISS

## PRELIMINARY STATEMENT

Plaintiff Reyna Arroyo ("Plaintiff' or "Ms. Arroyo") through her attorneys Stewart Lee Karlin Law Group, P.C.  submits this memorandum in opposition to Defendant's Motion to dismiss.  For the reasons outlines in this memorandum of law, the motion to dismiss should be denied in its entirety.

## STATEMENT OF FACTS

**1.  Procedural History**

Plaintiff commenced this case *pro se* on or about August 2019 (Dkt #1).  On or about August 2020, this Court granted Defendant motion to dismiss, but Plaintiff was granted leave to replead her first Amendment retaliation claim concerning her letter to SCI, her fourteenth Amendment equal protection claims regarding the arbitrator selection process, discrimination on the basis of race and national origin, and her stigma plus claim based her being on the "ineligible List" (Dkt #24).  On September 2020, Plaintiff retained counsel, one year after this litigation commenced. (Dkt #25).  Thereafter, on October 9, 2020, Plaintiff amended her complaint. (Dkt#35).

2. **Factual Background**

Plaintiff earned her undergraduate degree in Chemistry in the Dominican Republic in 1990. She began working for Defendant in 1998 as a per diem teacher, and during this time, she took 18 credits in education and earned her Public School Teacher Certification.   In 2002, Plaintiff received her Master's degree in Bilingual education.   In 2001-2002 she worked as a chemistry teacher in Health Careers and Science High School on the GWHS Campus. Throughout her career Plaintiff has received satisfactory ratings and her performance was exemplary. Am. Compl. ¶7-8.

Plaintiff worked in PS 143 in Washington Heights as a community leader during the summers of 2002-2005, helping students with Regents Examination preparation. In September 2005, Plaintiff began to work in International Business and Finance High School, a name that was changed in 2010 to The College Academy. She continued to work there until 2015. Am. Compl. ¶9-10.

In 2014, Mrs. Karen Remer became the Assistant Principal of the school where Plaintiff worked. Up until that time, Plaintiff was an exemplary teacher, with satisfactory evaluations. Plaintiff had a good relationship with her colleagues, and her superiors.  Between the 2014-2015 and 2015-2016 school year, on several occasions, Plaintiff complained to the Principal and to the Superintendent regarding the administration making fun of Plaintiff's accent, and about improperly changing student's grades to comply with mandated standards.  Am. Compl. ¶11-12.   In addition, Plaintiff wrote a letter to the New York State Division of Human Rights about Defendant discriminating against her and mocking Plaintiff's accent.  Plaintiff also reported Defendant changing students' grades.  Plaintiff further informed the New York Post and NY1

(local news station in New York City) regarding the improper changing of grades.  This was around the beginning of 2015.  Am. Compl. ¶13-14.

Thereafter, upon information and belief, the NY Post and NY1 contacted Defendant for comment.  At least one of the school secretaries confirmed this to Plaintiff.  Thereafter, Defendant retaliated as set forth below against Plaintiff until her termination.  After   these   complaints, Remer's ultimate goal was to terminate Plaintiff notwithstanding her satisfactory job performance. Plaintiff was never offered any meaningful professional help for her alleged deficiencies.  Am. Compl. ¶15-18.

In June 2015 Respondent received a letter that she was excessed.  For the next year, she was an ATR, and then in the fall of 2016 she returned to College Academy.  She always received satisfactory ratings until suddenly she was given the label of "incompetent" and charged with "unwillingness and/or inability to follow procedures and carry out normal duties".  Am. Compl. ¶19.

However, Mrs. Remer's discriminatory animus towards Plaintiff was due to her national origin and protected activity and was obvious, even to Plaintiff's colleagues.  Plaintiff was ostracized and false accusations were asserted against Plaintiff, without any evidence.  For instance, Assistant Principal, Remer had a meeting with all the science teachers and she falsely publicly claimed that Plaintiff's bilingual students were not passing their exams which she attributed to "Plaintiff's struggle with the English language".  Ms. Remer further falsely claimed that other teacher's students had a higher success rate, because she in fact spoke the language and Plaintiff did not.  Plaintiff respectfully pointed out that records showed differently, at which point Remer interrupted Plaintiff and stated, "you will get yours".  This was a threat which was acted

upon by subjecting Plaintiff to a hostile work environment due to her race/national origin and accent and her protected activity.  Am. Compl. ¶20-24.

In addition, unlike with other teachers, Mrs. Remer would often show up at Plaintiff's classroom in the middle of her lessons without any warning.  Remer would interrupt Plaintiff, attempt to make corrections, and was disrespectful towards Plaintiff in front of her students. Further, during staff meetings, Remer would make it difficult for Plaintiff to express her concerns and mocked her accent, even before her colleagues.  This was humiliating and was psychologically injurious.  It took an emotional toll on Plaintiff, making Plaintiff become highly guarded and anxious. Plaintiff started holding back from being vocal during meetings, but this was also an issue for her so she would then call Plaintiff out in front of others, saying Plaintiff never had anything to say.  Further, Remer's behavior towards Plaintiff was obvious to others.  Plaintiff's colleagues often approached Plaintiff and often apologized to her for how Plaintiff was being treated by Mrs. Remer.  On several occasions, multiple people informed Plaintiff that that she would give them the "results" of the evaluations and made fun of what she believed was wrong with Plaintiff. Remer believed and said that Plaintiff did not speak English and could not be a teacher; that Plaintiff's accent was difficult to understand; that Plaintiff had no control over the students or how to appropriately discipline them. Additionally, she would become very hostile when presenting Plaintiff's evaluation results to her, and made it seem like Plaintiff had no choice but to sign her findings. Ms. Remer told Plaintiff she was the problem. Am. Compl. ¶25-30.

At the beginning of the 2016-2017 school year (the school year following Plaintiff's complaints), Plaintiff was assigned to her usual classroom of many years but that quickly changed. By February of 2017, Plaintiff's classroom was taken and given to a Caucasian teacher, causing Plaintiff to have to transfer to different classrooms during the day to teach.  This same teacher

approached Plaintiff and was apologetic, stating she did not want Plaintiff to think she had anything

to do, and informing Plaintiff that they had told her not to worry as that was going to be Plaintiff's

last year at the school.  In other words, there was already a plan set in motion to terminate Plaintiff.

Again, this was not communicated directly to Plaintiff, instead it was talked about with others.

Am. Compl. ¶31-34.

On June 28, 2017 Plaintiff also wrote a letter to "SCI" (New York City Special

Commission of Investigations) in order to report unusual and illegal activity occurring from 2011-

2017.  The letter alleged that Plaintiff was subjected to bullying due to her race and national origin

by Defendant's administration; that five student's grades were changed in order to allow them to

graduate in 2017; that the school principal allowed a student in the same school year to take the

regents exam at a later date than the date assigned for the regents exam; and that the named

valedictorian for the school was replaced by another student.  Am. Compl. ¶35

After this complaint, Plaintiff was retaliated continued as she continued to be targeted on

an ongoing basis.  Plaintiff's non Dominican colleagues did not experienced the same harassment

or unfair treatment that Plaintiff, and neither were they removed from their teaching positions.

Further, Plaintiff colleagues did not engage in protected activity.  Ms. Remer and the Principal

would both show up to Plaintiff's classroom unannounced, something they never did with other

non-Dominican teachers who did not engage in protected activity.  Plaintiff was given negative

evaluations and microscopically managed.  The administration constantly bullied Plaintiff at

school, made fun of her accent and stated that she did not speak English.  Additionally, Plaintiff

was never told what areas allegedly required improvement and what to change to meet their

expectations. Plaintiff was set up for failure. Am. Compl. ¶36-41.

The following evaluative procedures were not followed on the observations.  The DOE did not develop strategies for improvement.  The timeframe of many of the observations prevented implementation of recommendations.  The observations were biased.  The evidence did not align with components and or component ratings in many observations.  The evidence is cut and pasted from the Danielson Rubric.  The evidence was not lesson specific or is merely a conclusion. Observable components were not rated, and Plaintiff was rated on components not observed. Component rating at times contradicted each other.  Am. Compl. ¶42-48.

**3.  <u>Termination Proceedings</u>**

On June 19, 2017, Principal Timothy Sigerson initiated Plaintiff's termination proceedings by sending Plaintiff a "Notice of Determination of Probable Cause on Education Law 3020-a charges" alleged incompetence.  This was a pretext.  Arbitrator Lisa Pollack was arbitrarily assigned to preside the 3020-a hearing.  Ms. Pollack was not an attorney and is paid by Defendant. Am. Compl. ¶49-50.

On or about June 28, 2017, Plaintiff sent a letter to the NYC Special Commissioner of Investigation (SCI) in order to report "unusual and illegal behavior between 2011-2017" outline above.  Plaintiff acted as a private citizen when she sent the letter and also when she complained to the New York Post, News 1 and New York State Division of Human Rights about Defendant's illegal activities as described above. Further, complaining of these illegalities was not part of Plaintiff's school duties as a teacher. Am. Compl. ¶51-54

Immediately after sending the letter Plaintiff was retaliated against as described above. This time the micromanagement, bullying, bad evaluations and humiliations augmented with the goal to speed up the process of terminating Plaintiff.  By May 29, 2018 Plaintiff received  the termination decision of Pollack.  The decision was arbitrary and without any facts sufficient

facts to justify termination of a tenured teacher.   Further, it created financial hardship and emotional distress of having Plaintiff's fingerprints flagged by the "no hire" list, or "problem code" note on her fingerprints at the DOE Office of Personnel Investigations.  Plaintiff appealed this decision via Article 75 in the New York Supreme Court, but it was denied.   Defendant was acting under the color of state law at all times relevant.  Am. Compl. ¶54-58

### 4.  Equal Protection and Stigma Plus

Plaintiff's equal protection rights were violated because she was a tenured teacher who could be terminated for cause under a 3020A hearing.  However, no proper determination of probable cause as required by the Statute was determined before bringing the 3020A charges against her.  Plaintiff did not waive her right to have probable cause hearing determined in her case as per Education Law 3020-a(2)(a). Am. Compl. ¶59-60.

The procedure used by Defendant in Plaintiff s 3020-a case omitted section (2)(a) of the Education Law, where the PEP must go in to an Executive Session and vote on probable cause for 3020-a charges, in order to speed up the process of getting tenured teachers removed. In Plaintiff's case she submitted her objection to the lack of a vote citing Judge Desmond Green's ruling in the Rosalie Cardinale decision which had issues analogous to the issues at hand.   This was overlooked by Arbitrator Pollack.   By not having probable cause determination as set forth in NYS Education Law 3020A before the 3020A hearing, Plaintiff was deprived of a constitutionally protected liberty or property interest and her employment, professional reputation and ability to become employ again was greatly damaged.   Arbitrator Pollack is not an attorney and was biased against Plaintiff in that she omitted proper protocol and went ahead and conducted the 3020A hearing when the procedural requirements were not met.   Further, Plaintiff produced credible witnesses, including

teachers and students who testified on Plaintiff's behalf as to her abilities and proficiency to teach. They were not considered in the 3020A decision. Am. Compl. ¶61-64. Plaintiff was terminated. As a result of the decision, Plaintiff lost her tenured job. As a result of the termination and defamatory statements alleging that Plaintiff was incompetent and not fit teach Plaintiff's professional reputation and job prospects were greatly injured. Plaintiff's name was placed in the ineligible list and her fingerprints were flagged. Am. Compl. ¶65-67.

At all relevant times the NYC DOE has kept the names and personnel file numbers of employees - who have been charged with any number of minor infractions or who have spoken out about wrong-doing by administrators - on a list called the "Problem Code" or "Ineligible Inquiry List". There is no information on the procedures used, no standards for placement on this list, and no method by which a person so placed may remove his/her name from this list. Plaintiff s name was placed on this list after Principal Timothy Sigerson targeted her for termination by observing her teaching as "incompetent". In actuality, Sigerson was changing student grades to make his school look better in the NY State Statistics, and Plaintiff complained about this patently illegal practice and was therefore punished. Upon information and belief, teachers do not get off of the problem code list once assigned. What can occur is, an employee at the Defendant's Office of Professional Investigations (OPI) will meet with the affected teacher and "interview" him/her if the person has been appointed to a job within the Department. OPI then decides whether the flag on the fingerprints can or cannot be lifted. There is no known relief without a challenge in Court. Am. Compl. ¶68-71

Further, upon information and belief, more than 97% of all visits to OPI are denied removal from the list and told that they cannot re-apply for 12 months. The teachers placed in this list cannot get a job during that time, and there is no grievance, hearing or meeting that any

affected teacher can request. As a result of the code, Plaintiff cannot obtain any job at the Department of Education and thus she is stigmatized and unable to work in NYC public schools. In addition, due to being on this list, Plaintiff cannot work at most other private schools in New York City; therefore, Plaintiff's job prospects and ability to work in New York City are for all practical purposes non-existent. Am. Compl. ¶72-74.

Further, Plaintiff lost all the salary she earned and her benefits which she is now unable to obtain due to being flagged in this list. As a result, Plaintiff is barred from taking advantage of any teaching job opportunities. At Plaintiff's hearing, Pollack did not understand that initiating charges and finding probable cause are two different things and did not comply with the Law. Am. Compl. ¶75-77.

## ARGUMENT

## POINT I

### STANDARD OF REVIEW

Under the Federal Rules, a claimant must provide a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). When deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule 12 (b)(6), the court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor. See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007)). In order to survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a Plaintiff must plead enough facts to state a claim to relief that is plausible on its face. See Bell Atl Corp. v. Twombly, 550 U.S. 544, 570 (2007). A facially plausible claim is one where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Where the court finds well-pleaded factual

allegations, it should assume their veracity and determine whether they plausibly give rise to an entitlement to relief.  Iqbal, 129 S. Ct. at 1950. In ruling on a motion to dismiss, a court may consider the facts asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.  Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010).

## POINT II

### THE AMENDED COMPLAINT COMPLIES WITH THE COURT ORDER

This Court allowed Plaintiff to replead her First Amendment claim.  She is now represented by counsel.  Accordingly, Plaintiff has not changed the theory of her case but added and clarified the facts relating to her First Amendment retaliation claim, which was not dismissed by this Court order.  Opinion & Order, ECF No. 24.  Accordingly, the facts regarding the local news outlets and adverse ramifications after her complaints is squarely within her First Amendment retaliation claim that is clearly protected speech which this Court allowed her to replead.  Thus, the motion to dismiss the First Amendment claim on that basis should be denied.

In regards to the cause of action regarding free speech again, this relates to her same theory of First Amendment retaliation that the Court did not dismissed and thus she should be allowed to replead.  Further, with regards to Plaintiff's claims on national origin, these claims are not Title VII claims but claims in the context of the Fourteen Amendment claim in accordance to this Court order.  Opinion & Order, ECF No. 24.  [1]

Therefore, the amended complaint complied with the Court order in that it replead the same original claims, but added additional facts related to the an already plead claim in the original complaint.

---

[1] Plaintiff withdraws her claims under the New York State Constitution free speech provision.

## POINT III

### PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM
### STATES A CAUSE OF ACTION

**A.    Plaintiff's First Amendment Retaliation Claim States a Cause of Action**

In the case at hand, Plaintiff (who commenced this proceeding *pro se*) has pleaded that she complained about the illegalities committed by the Board of Education.   Since her speech was done as a private citizen, as it was not required under her school duties, her speech was protected, or at the very least, she has plead facts to plausibly claim a cause of action.

The Supreme Court had held that a plaintiff's claims can be dismissed for failure to state a claim only if the Court finds that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Ruotolo v. City of New York, 514 F. 3d 184 (2008) *quoting* Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Public employees do not forfeit their First Amendment rights by virtue of their acceptance of government employment.  Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968).  In Pickering, the Court held that to sustain a claim of retaliatory discharge based upon infringement of free speech, a government employee must establish, by a preponderance of the evidence, that what he said or did was a matter of public concern, and that her speech was a motivating factor in the adverse action taken by the government employer. See 391 U.S. at 572-73.

In applying these principles, this Court has enunciated the parties' respective burdens upon a public employee's claim of employer retaliation for the exercise of First Amendment rights. Appellant, as a public employee, must prove that (1) she engaged in constitutionally protected

11

speech because he spoke as a citizen on a matter of public concern; (2) she suffered an adverse employment action; and (3) the speech was a `motivating factor' in the adverse employment decision. Skehan v. Village of Mamaroneck 465 F.3d 96, 106 (2d Cir. 2006), overruled on other grounds by Appel v. Spirfdon, 531 F.3d 138, 140 (2d Cir. 2008)

Thus, in order to survive a motion to dismiss a complaint, "a plaintiff asserting First Amendment retaliation claims must advance allegations ... (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Ruotolo at 492.  It follows that "whether an employee's speech addresses a matter of public concern is a question of law for the Court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir.1999) (citing Connick v. Myers, 461 U.S. 138, 147-48 and n. 7, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).

### i.    Plaintiff's Complaints to the Press were Protected Speech

Whether an employee's speech addresses a matter of public concern rather than one of purely private interest "must be determined by the content, form, and context of a given statement as revealed by the whole record."  Connick v. Myers, 461 U.S. 138,(1983) Connick, 461 U.S. at 147-48. To fall within the realm of "public concern,"  an employee's speech must "relate to a ... matter of political, social, or other concern to the community." Id. at 146.

Accordingly, Appellant satisfies the Pickering's threshold requirement. See O'Connor v. Steeves, et al., 994 F.2d 905, 913-14 (1st Cir.1993) (noting that "where public employee speaks out on topic which is clearly a legitimate matter of inherent concern ... the court may eschew further inquiry to employee's motives as revealed by 'form and context' of the expression"); accord

Breuer v. Hart, 909 F.2d 1035, 1039 (7th Cir.1990)  Public concern "is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication. San Diego v. Roe, 543 U.S. 77 at 83-84.(2004).

Plaintiff was speaking in a private capacity in the sense that her duties as a teacher did not require her to speak with the media. See Garcetti v. Ceballos, 547 U.S. 410, 421, 126 S. Ct. 1951, 1959-60, 164 L . Ed. 2d 689 (2006) (assistant district attorney was not speaking  as  a citizen when his expressions were made "pursuant to his duties"). The speech in this case was not indispensable to Plaintiff's role as a teacher, a "means to fulfill" her responsibilities, or "undertaken in the course of performing" her job, id. See also Garcetti, 547 U.S. at 422.  Second, Plaintiff's speech arguably related to an issue of public concern, illegally changing student's grades to allow the school to appear better to the public, in essence, misleading the public and the NYS Department of Education and the NYC Department of Education.

Here, viewed in the light most favorable to the Plaintiff, she pleaded in her amended complaint that she acted as a private citizen because complaining to SCI, NY Post, News 1 and the NYS Division of Human Rights regarding illegalities of the school was not part of her duties as a teacher.  Albright v. Oliver, 510 U.S. 266,  1994).  In addition, Plaintiff's was acting as a citizen as her duties as a teacher did not include making those complaints to theses outside entities. Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008).    Here, Plaintiff reported Defendant changing students' grades is clearly a matter of public concern.

### ii.    Plaintiff's Complaints Were Causally Related

Thereafter, Defendant retaliated as set forth below against Plaintiff until her termination (See Points IV & V, *infra*).  For example, in June 2015 Respondent received a letter that she was excessed.  For the next year she was an ATR, which is a floating substitute teacher moving

13

from school to school.   Thus, there was no opportunity to retaliate against Plaintiff until her return in the fall of 2016 to the College Academy. Put simply, this was the next opportunity to retaliate against Plaintiff as she was a floating substitute teacher for a year and not at the school. In the context of a school calendar, judicial "experience and common sense," Irrera v. Humpherys et. al, 859 F.3d 196 at 198 (2nd Cir. 2017) (quoting Iqbal, 556 U.S. at 679), permitted the Court to recognize a school break. In that context, it is plausible that the earliest opportunity to retaliate against Plaintiff after June 2015 was her return in the Fall 2016. See also the summary order Massaro v. Department of Education of the City of New York, 18-2980-cv (2d Cir. 2019).

Plaintiff always received satisfactory ratings until suddenly she was given the label of "incompetent" and charged with "unwillingness and/or inability to follow procedures and carry out normal duties".   Am. Compl. ¶19.   The retaliation was continuous by receiving bad evaluations, treated differently, humiliated and mocked.   These events (continuous retaliatory conduct) occurred until Plaintiff was served with 3020a charges in June 2017 and subsequently terminated. (See Points IV & V, *infra*).  Thus, the protected speech is causally related to Plaintiff's termination.[2]

---

[2]   Defendant also claim she had some work related issues prior to Plaintiff going to the press. However, before Plaintiff went to the press Plaintiff was an exemplary teacher, with satisfactory evaluations. Plaintiff had a good relationship with her colleagues, and her superiors.  On several occasions, Plaintiff complained to the Principal and to the Superintendent regarding the administration making fun of Plaintiff's accent, and about improperly changing student's grades to comply with mandated standards.  Am. Compl. ¶11-12.

### iii.    The Cause of Action Did not Arise until Plaintiff's termination and thus the First Amendment Claim is timely

It is black letter law that in the context of First Amendment Lawsuits a claim for retaliation under the First Amendment accrues when a party suffers an adverse employment action. Eagleston v. Guido, 41 F. 3d 865 (2nd Cir. 1994).  Thus, even though Defendant points out a three-year statute of limitations for First Amendment claims in New York, the within claim is timely because it did not run from the time Plaintiff first exercised her free speech, but from the time she was adversely affected, in this case from her termination.  See also Birch v. City of New York, 184 F. Supp. 3d 21, 26-27 (EDNY 2016).  Even assuming arguendo that this Court will find that the time in which is Plaintiff was adversely affected to be when she was subjected to the  3020A hearing (June 2017), her action, was filed in 2019, would still be timely under the statute.  Courts have held that for purposes of tolling the statute of limitations, plaintiffs' claims accrued "when they were charged with disciplinary violations." holding that the statute of limitations period is three years from the time the claim accrued. See Connolly v. McCall, 254 F.3d 36, 40-41 (2d Cir.2001); Eagleston v. Guido, 41 F.3d 865, at 871. Under federal law, "[t]he claim accrues when the plaintiff knows or has reason to know of the harm." Eagleston, 41 F.3d at 871 (2nd Cir. 1994).  See Washington v. County of Rockland, 211 F. Supp. 2d 507 (S.D.N.Y. 2002) holding that even the 3020 charges are not an adverse employment action.

Therefore, Defendant's argument claiming that Plaintiff's claim is untimely should fail in its entirety as the statute of limitations to bring the action clearly did not run until Plaintiff's termination..  Accordingly, the motion to dismiss should be denied.

Here, since at this juncture Plaintiff's burden is not evidentiary, but is just to plead enough facts to state a claim to relief that is plausible on its face, Plaintiff has satisfied her burden.

Twombly, Id.  Further, this Circuit has held that on a motion to dismiss, the court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor.  See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007)).

Therefore, a  cause of action is clearly stated for first amendment protected speech and thus, the motion to dismiss should  be denied in its entirety.

### POINT IV

### PLAINTIFF'S FOURTEENTH AMENDMENT CLAIM CONCERNING RACE AND NATIONAL ORIGIN STATES A PLAUSIBLE CLAIM

A facially plausible claim is one where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Where the court finds well-pleaded factual allegations, it should assume their veracity and determine whether they plausibly give rise to an entitlement to relief.  Iqbal, 129 S. Ct. at 1950.[3]

Plaintiff has plead in her amended complaint various instances in which she was targeted due to her race and national origin in comparison to her similar counterparts who were not Hispanic.[4]  This selective process had no other purpose than to discriminate against Plaintiff and to cause injury.  Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995).

Here, Plaintiff specifically pleaded that A.P. Remer treated her differently than her Caucasian counterparts and mocked Plaintiff's accent and humiliated her at staff meetings in front of other Caucasian teachers. Amend. Compl. ¶13-24. Plaintiff also pleaded that she was often

---

[3]      Plaintiff's Fourteenth Amendment Retaliation Claim concerning Arbitrator's selection states a cause of action are withdrawn.

[4]      The facts underlying Plaintiff being targeted is equally applicable to the First Amendment Claim.

visited and interrupted in class unlike other teachers. In the case at hand, A.P. Remer's discriminatory animus towards Plaintiff was due to her national origin and protected activity and was obvious, even to Plaintiff's colleagues.  Plaintiff was ostracized and false accusations were asserted against Plaintiff, without any evidence.  For instance, Assistant Principal, Remer had a meeting with all the science teachers and she falsely publicly claimed that Plaintiff's bilingual students were not passing their exams which she attributed to "Plaintiff's struggle with the English language".  Ms. Remer further falsely claimed that other teacher's students had a higher success rate, because she in fact spoke the language and Plaintiff did not.  Plaintiff respectfully pointed out that records showed differently, at which point Remer interrupted Plaintiff and stated, "you will get yours".  This was a threat which was acted upon by subjecting Plaintiff to a hostile work environment due to her race/national origin and accent and her protected activity.  In addition, unlike with other teachers, Mrs. Remer would often show up at Plaintiff's classroom in the middle of her lessons without any warning.  Remer would interrupt Plaintiff, attempt to make corrections, and was disrespectful towards Plaintiff in front of her students.  Further, during staff meetings, Remer would make it difficult for Plaintiff to express her concerns and mocked her accent before her colleagues. This was humiliating and was psychologically injurious.  It took an emotional toll on Plaintiff, making Plaintiff become highly guarded and anxious. Plaintiff started holding back from being vocal during meetings, but this was also an issue for her so she would then call Plaintiff out in front of others, saying Plaintiff never had anything to say. AmCmp ¶20-27.

Further, Remer's behavior towards Plaintiff was obvious to others.  Plaintiff's colleagues often approached Plaintiff and often apologized to her for how Plaintiff was being treated by Mrs. Remer.   On several occasions, multiple people informed Plaintiff that that she would give them the "results" of the evaluations and made fun of what she believed was wrong with Plaintiff. Remer

believed and said that Plaintiff did not speak English and could not be a teacher; that Plaintiff's accent was difficult to understand; that Plaintiff had no control over the students or how to appropriately discipline them. Additionally, she would become very hostile when presenting Plaintiff's evaluation results to her, and made it seem like Plaintiff had no choice but to sign her findings. Ms. Remer told Plaintiff she was the problem.  AmCmp ¶28-30.

Also, the assignment of classrooms was different in regards to her only as she was given a classroom and then this was taken and given to a Caucasian teacher, causing Plaintiff to have to transfer to different classrooms during the day to teach.

In the case at hand, the disparate treatment was so obvious that this same teacher approached Plaintiff and was apologetic, stating she did not want Plaintiff to think she had anything to do with the unequal treatment and informed Plaintiff that Defendant had told this teacher not to worry as that was going to be Plaintiff's last year at the school.  In other words, there was already a plan set in motion to terminate Plaintiff.  Amd. Compl. ¶25-39.

On a motion to dismiss, Plaintiff need only to "state a claim to relief that is plausible on its face." Bell Atl., Corp. v. Twombly, 550 U.S. 544, *570 (2007);* Ashcroft v. Iqbal, *556 U.S. 662,* 684 (2009).  Because given all these facts Plaintiff has satisfied this requirement, a motion to dismiss should be denied.

## POINT V

### PLAINTIFF'S FOURTEENTH AMENDMENT STIGMA PLUS STATES A CAUSE OF ACTION

An individual is not deprived of liberty as a result of defamation by the government alone; a liberty interest is implicated only when the defamation is coupled with an "alter[ation]" or "extinguish[ment]" of a "right or status." Paul v. Davis, 424 U.S. 693, 711 (1976). Thus, a "serious additional harm, such as loss of employment, as a result of the defamatory remarks by a

government official" must be established before defamation may be deemed a constitutional deprivation. Komlosi v. N.Y. State Office of Mental Retardation and Developmental Disabilities. 64 F.3d 810, 817 (2d Cir. 1995). The legal standard has been referred to as the "stigma-plus" test: a liberty interest is implicated by public defamation coupled with the termination or loss of some legal right or status. See Neu v. Corcoran, 869 F.2d 662, 667 (2d Cir. 1989) ("[D]efamation . . . is not a deprivation of a liberty interest unless it occurs in the course of dismissal or refusal to rehire the individual as a government employee.").

To satisfy the stigma-plus test, plaintiff must allege: (1) the utterance of a defamatory statement about her that "is injurious to her reputation, that is capable of being proved false, and that . . . she claims is false," and (2) "some tangible and material state-imposed burden . . . in addition to the stigmatizing statement." Doe v. Dep't of Pub. Safety ex rel. Lee, 271 F.3d 38, 47 (2d Cir. 2001), rev'd on other grounds, Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1(2003); see also Paul, 424 U.S. at 701-702. The defamatory statement need not actually "create" an injury to plaintiff's reputation to be actionable; instead, the mere "threat" of such injury is sufficient to satisfy the first prong of the stigma-plus test. Velez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005). See, e.g., Brandt v. Bd. of Coop. Educ. Servs., 820 F.2d 41, 43 (2d Cir. 1987) (requiring the defamatory remarks to be of the type "`that *might* seriously damage [her] standing and associations in [her] community' or that *might* impose `on [her] a stigma or other disability that foreclose[s] [her] freedom to take advantage of other employment opportunities'"), quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 573(1972) (emphasis added).

In the case at hand, Plaintiff has plead facts to establish a prima facie case of stigma plus based on the placement of her name in the DOE's ineligible list. Plaintiff pleaded that she has been placed on a list called the "Problem Code" or "Ineligible Inquiry List" and that there is no

information on the procedures used, no standards for placement on this list, and no method by which a person so placed may remove his/her name from this list. Once the OPI decides to flag an ex employee's fingerprints, teachers placed in this list cannot get a job at the Department of Education, thus Plaintiff is stigmatized and unable to work in NYC DOE. More importantly, due to being on this list, Plaintiff cannot work at most other private schools and outside agencies in New York City; therefore, Plaintiff's job prospects and ability to work in New York City are for all practical purposes non-existent. AmCmp. ¶65-73.

In the case of Plaintiff, her name was placed on this list after Principal Timothy Sigerson targeted her for termination by observing her teaching as "incompetent". In actuality, Sigerson was changing student grades to make his school look better in the NY State Statistics, and Plaintiff would not go along with this and was therefore punished. Upon information and belief, teachers do not get off of the problem code list once assigned. What can occur is, an employee at the Defendant's Office of Professional Investigations (OPI) will meet with the affected teacher and "interview" him/her if the person has been appointed to a job within the Department. OPI then decides whether the flag on the fingerprints can or cannot be lifted. There is no known relief without a challenge in Court. Am. Compl. ¶68-71

Further, upon information and belief, more than 97% of all visits to OPI are denied removal from the list and told that they cannot re-apply for 12 months. The teachers placed in this list cannot get a job during that time, and there is no grievance, hearing or meeting that any affected teacher can request. As a result of the code, there should some hearing mechanism before the Office of Administrative Appeals (OATH) in which an impartial hearing officer decides whether the individual is placed on the list and whether it also would apply to the private sector schools and outside agencies located in New York City.

In <u>Donato v Plainview-Old Bethpage Central School District</u>, 96 F.3d 623, (2nd Cir. 1995) the United States Court of Appeals, Second Circuit, held that an individual may be entitled to a "name-clearing hearing." In this instance the court decided that Donato, who was terminated during her probationary period, was entitled to a name-clearing hearing because the statements made concerning her performance in the job impugn her professional reputation in such a fashion as too effectively put a significant roadblock in her continued ability to practice his or her profession. In Donato's case, said the court, her allegations had satisfied the test as the comments made concerning her performance were " . . . so harsh as to be likely to persuade any other school board not to hire [her] as a supervisor." In addition, courts have ruled that a name-clearing hearing is warranted **even if there has been no publication** concerning the reason for the employee's dismissal in cases where it determines that discharging the employee for the reasons stated does, in fact, stigmatize the individual and may adversely affect the individual's prospects for future employment. Here, there is no doubt, in light of the allegations, Petitioner's career in the education field is over in New York City due to the listing of Plaintiff on a problem code list.

Another case where dissemination was not required was in <u>Knox v New York City Dept. of Educ</u>. 2011 NY Slip Op 04735 Decided on June 7, 2011 Appellate Division, First Department the Court held that Petitioner demonstrated "stigma plus", i.e., defamation by the government, coupled with a likelihood of dissemination of the stigmatizing material that could significantly impair her ability to gain employment as a school psychologist in the future (see <u>Matter of Swinton v. Safir</u>, 93 NY2d 758, 763-765 [1999]). The report of the Special Commissioner of Investigation, which sets forth in detail the findings of dishonesty that led to the placement of petitioner's name on respondent's "Ineligible/Inquiry List" in New York City public school in the future, has already been disseminated not only within the Department of Education and the State Department of

Education.  Likewise, in the case at bar, the dissemination occurred within the Department of Education and presumably within the New York State Department of Education as well since by necessity the New York State Department of Education would have had to been notified.  Thus, Petitioner should be entitled to a name clearing hearing regarding being put on that list.

Plaintiff's name is "flagged" making her ineligible to work for most agencies and private schools in New York City because she would have to pass a background check in order to be eligible for employment.

Given these pleaded facts and that in considering a motion to dismiss under Rule 12(b)(6), this Court must accept all well-pled allegations in a complaint as true.  Albright v. Oliver, 510 U.S. 266, 268 (1994).  Accordingly, Plaintiff complied with these standards, and Defendant's Motion to Dismiss should be denied.

## CONCLUSION

Plaintiff respectfully submits that Defendant's motion be denied in its entirety and any other relief that is just and equitable.

Dated: New York, New York
        January 31, 2021

Respectfully submitted,

STEWART LEE KARLIN
LAW GROUP, P.C.


 s/ Stewart Lee Karlin
STEWART LEE KARLIN, ESQ.
NATALIA KAPITONOVA, ESQ.
*Attorney for Plaintiff*
111 John Street, 22nd Floor
New York, N.Y.  10038
(212) 792-9670

22