UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REYNA ARROYO,

                Plaintiff,

    – against –

THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK,

                Defendant.

**OPINION & ORDER**

19 Civ. 7416 (ER)

RAMOS, D.J.:

    Reyna Arroyo joined the Department of Education of the City of New York (the "DOE") as a teacher in 1998 and worked in various positions until she was terminated in 2017. She first brought this action against the DOE *pro se*, alleging employment discrimination, First Amendment retaliation, deprivation of liberty and property interests, and intentional and negligent infliction of emotional distress in violation of the United States Constitution and New York state law. *See* Complaint, Doc. 1. The Court granted the DOE's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), with leave to amend specific claims. Arroyo, now represented by counsel, subsequently filed an amended complaint. Before the Court is the DOE's motion to dismiss the amended complaint.

    For the following reasons, Defendant's motion is GRANTED.

**I.    BACKGROUND**

    **A. The First Complaint and Motion to Dismiss**

    The Court assumes familiarity with its prior opinion in this case. *Arroyo v. Dep't of Educ.*, No. 19 Civ. 7416 (ER), 2020 WL 4570380 (S.D.N.Y. Aug. 6. 2020).

    As initially alleged in her *pro se* complaint, Arroyo joined the DOE in 1998. Doc. 1 ¶ 10. She began working as a bilingual high school chemistry teacher at the College Academy in Manhattan in 2005, eventually achieving tenure. *Id.* ¶¶ 2, 11. She was removed from the College Academy and placed in Absent Teacher Reserve ("ATR") for the 2015–2016 school year due to a decline in enrollment and budget constraints at the

College Academy. *Id.* ¶ 11; Doc. 14, Ex. A at 10. She returned to the College Academy in the fall of 2016. Doc. 1 ¶ 11.

Teachers employed by the DOE are evaluated through a variety of methods, including formal and informal observations. Doc. 14, Ex. D at 61–72. After Arroyo received evaluations finding that she failed to "properly, adequately, and/or effectively plan and/or execute separate lessons," the principal initiated termination proceedings against her pursuant to N.Y. Educ. Law § 3020-a on June 19, 2017.[1] Doc. 14, Ex. A at 4–5; Doc. 17, Exs. A, B.

On June 28, 2017, Arroyo sent a letter to the NYC Special Commissioner of Investigation ("SCI")[2] to "report some unusual and illegal behavior between 2011 [and] 2017." Doc. 17, Ex. I at 33. In the letter, she alleged that (a) she was "a victim of bullying by the administration," particularly Assistant Principal Karen Remer; (b) five students' grades were changed in order to allow them to graduate in 2017; (c) the principal allowed a student, in the same school year, to take a Regents exam at a later date than the one assigned; and (d) the named valedictorian in that school year was replaced by another student. *Id.*

At her 3020-a hearing, Arroyo was terminated from her position. Doc. 1 ¶¶ 11, 13. Soon after she was terminated, Arroyo alleges that she was placed on the "Problem Code" or "Ineligible Inquiry List." *Id.* ¶¶ 12, 16–17. This list is kept by the DOE and she alleges that it prevents those on it from getting another job with the DOE. *Id.* ¶ 17. Arroyo's placement on this list provided the basis of her stigma plus claim. *Id.* ¶¶ 16–17.

---

[1] Tenured teachers can only be removed "for just cause." Doc. 24 at 2 n.2 (citing Doc. 17 at 11). Section 3020-a hearings are compulsory arbitration actions brought by the DOE against a charged teacher as a disciplinary measure for poor performance with the potential penalty of dismissal. *Id.*

[2] The SCI "has broad authority to investigate fraud, misconduct, and other wrongdoing within the DOE." *Giscombe v. N.Y.C. Dep't of Educ.*, 39 F. Supp. 3d 396, 398 (S.D.N.Y. 2014).

Arroyo appealed her termination in an Article 75[3] petition filed in New York Supreme Court, alleging multiple procedural and substantive errors in her 3020-a hearing. *Id.* ¶ 13. Her appeal was ultimately dismissed. *Id.* Arroyo then brought this suit *pro se* on August 8, 2019. Doc. 1. In her original complaint, Arroyo asserted a First Amendment retaliation claim, alleged violations of the Fourth and Fifth Amendment, violations under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and a Title VII discrimination claim. Doc. 1; Doc. 24. On December 30, 2019, the DOE moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 13. The Court granted the DOE's motion to dismiss this complaint on August 6, 2020. *See Arroyo*, 2020 WL 4570380. In its opinion, the Court dismissed the complaint in its entirety, but granted Arroyo leave to replead (1) her First Amendment retaliation claim concerning her letter to SCI, (2) her Fourteenth Amendment Equal Protection Clause claims, and (3) her Fourteenth Amendment "Stigma Plus" claim. *Id.* at *16.

### B. The Amended Complaint

On October 7, 2020, now represented by counsel, Arroyo filed the operative Amended Complaint. Doc. 35. In the Amended Complaint, Arroyo asserted a First Amendment retaliation claim based on her letter to SCI, in addition to various other communications; two Fourteenth Amendment Equal Protection Clause claims; a Fourteenth Amendment "Stigma Plus" claim; and a claim under Article I of the New York State Constitution, alleging violation of her freedom of speech. *Id.*

Arroyo made various factual allegations in support of her First Amendment retaliation claim in addition to the SCI letter discussed above. First, she alleges that during the 2014-2015 and 2015-2016 school years she had, on several occasions, complained to the principal and superintendent that members of the administration made

---

[3] An Article 75 appeal is the only statutory avenue to appeal an arbitrator's decision in a § 3020-a hearing and must be filed in New York state supreme court "[n]ot later than ten days after receipt of the hearing officer's decision." *Hunt v. Klein*, 476 F. App'x 889, 892 (2d Cir. 2012); N.Y. C.P.L.R. § 7511.

fun of her accent, and that the administration improperly changed the grades of certain students. *Id.* ¶ 12. Second, she alleges that she wrote a letter to the New York State Division of Human Rights, making the same complaints. *Id.* ¶ 13. Third, she alleges that in the beginning of 2015 she had informed the New York Post and NY1 of the improper grade changes, and that they had subsequently contacted the Defendant for comment. *Id.* ¶¶ 14–15. Finally, she realleges her claim regarding her June 2017 letter to SCI. *Id.* ¶ 35.

In support of her Equal Protection Clause claim, Arroyo asserts the following facts: "unlike with other teachers," Arroyo was subject to visits to her classroom from Assistant Principal Remer, who would interrupt Arroyo and was disrespectful towards her in front of her students. *Id.* ¶ 25. She alleges that both the assistant principal and principal would show up to her classroom unannounced, but that they never did so with other non-Dominican teachers. *Id.* ¶ 38. Arroyo alleges that she was mocked for her accent, making it difficult to participate during staff meetings. *Id.* ¶ 26. She further alleges that upon her return from ATR at the beginning of the 2016–2017 school year, she was originally assigned to her usual classroom of many years, but by February 2017, her classroom was "taken and given to a Caucasian teacher." *Id.* ¶¶ 31–32. Finally, Arroyo alleges that her non-Dominican colleagues "did not experience[] the same harassment or unfair treatment" that she did, nor were they removed from their teaching positions. *Id.* ¶ 37.

Arroyo also reasserts her previous claim that she was placed on the "Problem Code" or "Ineligible Inquiry List" maintained by the NYC Department of Education. *Id.* ¶¶ 68–69. She further alleges that as a result of being placed on this list, she is unable to obtain another job at the Department of Education and therefore unable to work in New York City public or private schools. *Id.* ¶ 73–74.

On December 18, 2020, Defendants filed the instant motion to dismiss Arroyo's amended complaint. Doc. 40.

## II.   LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard set forth in Rule 8, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (quotation marks omitted).

### B. Extrinsic Materials Considered for a Rule 12(b)(6) Motion to Dismiss

"When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." *Silsby v. Icahn*, 17 F. Supp. 3d 348, 354 (S.D.N.Y. 2014) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

The DOE attaches the following documents in support of its motion:  (1) the decision by Hearing Officer Lisa Pollack in Arroyo's § 3020-a hearing, and (2) the Collective Bargaining Agreement ("CBA") between the United Federation of Teachers (of which Arroyo was a member) and the DOE, dated 2008–2019. In considering the DOE's motion, the Court takes judicial notice of the § 3020-a hearing decision and the

CBA, "not for the truth of the matters asserted . . . but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see also Verdi v. City of New York*, 306 F. Supp. 3d 532, 550 n.17 (S.D.N.Y. 2018) (taking judicial notice of a CBA between the DOE and a teachers union, of which the plaintiff was a member); *Moore v. City of New York*, No. 08 Civ. 8879 (PGG), 2010 WL 742981, at *3 (S.D.N.Y. Mar. 2, 2010) (taking judicial notice of the § 3020-a hearing decision that was incorporated by reference in the complaint); *Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*, 742 F. Supp. 2d 446, 452 (S.D.N.Y. 2010) (taking judicial notice of state court documents); *Tokio Marine & Nichido Fire Ins. Co. v. Canter*, No. 07 Civ. 5599 (PKL), 2009 WL 2461048, at *4 (S.D.N.Y. Aug. 11, 2009) (same).

### III.  DISCUSSION

#### A. First Amendment Retaliation Claim

Public employees do not surrender their First Amendment rights by virtue of their employment by the government. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). However, "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions" to ensure that employees do not "contravene governmental policies or impair the proper performance of governmental functions." *Garcetti v. Ceballos*, 547 U.S. 410, 418–19 (2006). A government entity in the form of an "employer charged with providing such essential services as public safety and education, rather than a sovereign governing its citizens, . . . has greater leeway under the Constitution to control employees' speech that threatens to undermine its ability to perform its legitimate functions." *Jackler v. Byrne*, 658 F.3d 225, 234 (2d Cir. 2011) (citation and internal quotation marks omitted).

"[T]he First Amendment protects the rights of public employees 'as citizens to comment on matters of public interest' in connection with the operation of the government agencies for which they work." *Connick v. Myers*, 461 U.S. 138, 156 (1983)

(quoting *Pickering*, 391 U.S. at 568). In public employee freedom of speech cases under the First Amendment, courts must achieve a balance between the interest of the public employee "as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568.

Courts employ a two-step approach to evaluate whether the First Amendment protects employees from retaliation based on their speech. First, the court assesses "whether the employee spoke as a citizen on a matter of public concern." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotation marks and citation omitted). If the answer to this question is no, then "the employee has no First Amendment cause of action based on . . . her employer's reaction to the speech." *Garcetti*, 547 U.S. at 418. If the answer is yes, the court must then decide "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Ruotolo*, 514 F.3d at 188 (internal quotation marks and citation omitted); *see also Garcetti*, 547 U.S. at 418.

The first factor, "whether the employee spoke as a citizen on a matter of public concern," consists of two subcomponents: "(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as an employee." *Jackler*, 658 F.3d at 235. Speech is of public concern if it relates to political, social or other community concerns, rather than an employee's personal concerns. *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (citing *Connick*, 461 U.S. at 146); *Hoyt v. Andreucci*, 433 F.3d 320, 330 (2d Cir. 2006) (same). Because "discussion regarding current government policies and activities is perhaps the paradigmatic matter of public concern"; if the government entity cannot show that such speech would impact or disrupt the government employer's functions, then it may receive First Amendment protection. *See Harman v. City of New York*, 140 F.3d 111, 118 (2d Cir. 1998) (citation and internal punctuation omitted). Matters of public concern also include

"speech aimed at uncovering wrongdoing or breaches of the public trust." *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) (quoting *Glass v. Dachel*, 2 F.3d 733, 741 (7th Cir. 1993)).

Importantly, however, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421; *see also Healy v. City of N.Y. Dep't of Sanitation*, 286 F. App'x 744, 745–46 (2d Cir. 2008) (holding that speech is not protected where it "ar[i]se[s] in the course of official job duties."). The Second Circuit has held that determining whether the employee's speech "is on a matter of public concern" is to be determined by the court as "a question of law." *Jackler*, 658 F.3d at 235 (citing *Connick*, 461 U.S. at 148 n.7). While "[t]here is no categorical approach," courts evaluate the "content, form, and context of a given statement." *Norton v. Breslin*, 565 F. App'x 31, 33–34 (2d Cir. 2014) (quoting *Johnson*, 342 F.3d at 112).

In her original complaint, Arroyo claimed that her letter to SCI prompted the school to take retaliatory action and terminate her employment. She argued that her letter was not made pursuant to her official duties and was "motivated by her concerns as a member of the community and by information available to the public." Doc. 17 at 42–45. However, relying on Second Circuit precedent, the Court found that "Arroyo's complaints of grading fraud, made within internal school channels, are 'part-and-parcel' of her concerns as a school teacher and therefore cannot constitute protected speech under the First Amendment." Doc. 24 at 24 (quoting *Adams v. N.Y. State Educ. Dep't.*, 752 F. Supp. 2d 420, 430 (S.D.N.Y. 2010)). The Court took further notice that the SCI letter was sent on June 28, 2017, *after* the DOE had initiated termination proceedings. As a result, "the allegations [did] not support a finding of a causal nexus between Arroyo's letter to the SCI and her termination." Doc. 24 at 25 n.14.

In her amended complaint, Arroyo has realleged that she wrote the letter to SCI to report unusual and illegal activity, including the fact that the school changed students' grades; that it allowed a student to take the regents exam at a date later than the assigned date; that the valedictorian was replaced by another student; and that Arroyo was subjected to bullying due to her race and national origin. Doc. 35 ¶ 35. However, she has proffered no new allegations regarding the content or timing of the letter. As such, the conclusion that these complaints fall within Arroyo's official duties as a teacher and are not protected speech under the First Amendment still holds. Furthermore, her claim in the letter that she was subjected to bullying due to her race and national origin remains "a single public employee's attempt to 'redress personal grievances' [and] lacks a 'broader public purpose'" that would be protected under the First Amendment. *Smith v. City of New York*, 130 F. Supp. 3d 819, 832 (S.D.N.Y. 2015) (quoting *Lewis v. Cowen*, 165 F. 3d 154, 163–64 (2d Cir. 1999)).

Arroyo has also alleged additional facts in support of her retaliation allegation. Federal Rule of Civil Procedure 15(a)(2) permits a court to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Furthermore, where a plaintiff is *pro se*, as Arroyo was at the time of the first motion to dismiss determination, "[she] should be afforded every reasonable opportunity to demonstrate that [s]he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984). However, district courts have discretion to dismiss new claims in amended complaints if they exceed the scope of the permission granted to replead. *See Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted.").

In her amended complaint, Arroyo alleges the following: (1) that between 2014-2016, she had made complaints to the principal and superintendent regarding the

9

administration making fun of her accent and improperly changing students' grades; (2) that she wrote a letter to the New York State Division of Human Rights regarding the administration discriminating against her, mocking her accent, and changing students' grades; (3) that in the beginning of 2015 she had informed the New York Post and NY1 of the improper grade changes, and that the DOE had been contacted for comment; and (4) that after these communications were made, the DOE retaliated against her, resulting in her termination.  Doc. 35 ¶¶ 12–16.  While the Court's instructions in the first motion to dismiss decision were technically limited to granting her leave to replead her "First Amendment retaliation claim concerning her letter to SCI," the Court will exercise its discretion to consider the new factual allegations relating to her retaliation claims.  *See Salzman*, 457 F. App'x at 43.

However, Arroyo's new retaliation allegations are still insufficient to state a claim upon which relief can be granted.  As with the SCI letter, Arroyo's complaints regarding her treatment by the administration and the changing of the student grades are communications that fall within her official duties as a teacher and do not constitute protected speech.  *Smith*, 130 F. Supp. 3d at 832 ("[A] teacher's communications made within internal school channels about the teacher's working conditions and the treatment of the teacher's students, are deemed to be pursuant to the teacher's official duties and therefore do not constitute First Amendment protected speech."); *see also* Doc. 24 at 23–24.  The complaints made to the principal and superintendent, and to the NYS Division of Human Rights, were made "within internal school channels," and were "part-and parcel" of her concerns as a school teacher.  *Smith*, 130 F. Supp. 3d at 832; *Adams*, 752 F. Supp. at 430.

As regards her allegations that she informed two media outlets of the improper grade changes, even assuming that this complaint was actionable as protected speech,[4] Arroyo has not established any plausible causal nexus between this speech and her termination. The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001). However, the Second Circuit has held that an eight-month, or even five-month lapse between the protected speech and retaliatory action may be too long. *See Morales v. City of New York*, No. 18-CV-1573 (JGK), 2021 WL 965335 (S.D.N.Y. Mar. 15, 2021) (holding that eight months between the speech and retaliatory action was insufficient to show retaliation, and stating that "[c]ourts in the Second Circuit have generally found periods greater than two months to be too long to support the inference of causation."); *see also Pitton v. New York City Dep't of Educ.*, 148 F. Supp. 3d 217, 229 (E.D.N.Y. 2015) (granting summary judgment for the City where a five month lapse between plaintiff's speech and termination was too attenuated to show a causal nexus). Arroyo allegedly contacted the New York Post and NY1 in early 2015, but termination proceedings were not initiated until June 2017, over two years later. Doc. 35 ¶¶ 14–15, 49.

Arroyo argues that this temporal gap is insignificant because she did not work on-site at College Academy during the 2015-2016 school year due to her placement in the Absent Teacher Reserve ("ATR"). Doc. 45 at 13–14. For that year, rather than working at College Academy, she was a "floating substitute teacher moving from school to school." *Id.* Due to this placement, she argues that "there was no opportunity to retaliate against Plaintiff until her return in the fall of 2016 to the College Academy." *Id.* at 14.

---

[4] *See Delano v. City of Buffalo*, 45 F. Supp. 3d 297, 305–06 (W.D.N.Y. 2014) (finding that Plaintiff's speech was made as a private citizen on a matter of public concern when his "speech was directed at the public at large [in a TV interview], and not up the chain of command within the department.").

However, setting aside the fact that this argument does not account for any months between the "beginning of 2015," when she allegedly made these media reports, and the beginning of the 2015-2016 school year, Arroyo was still a DOE employee even during the 2015-2016 school year and provides no reason why termination proceedings could not have commenced at any time before June 2017. These factors distinguish this case from *Massaro v. Bd. of Educ.*, cited by Arroyo, in which gaps for summer breaks were disregarded in the court's causality analysis. *Cf.* 774 F. App'x 18, 22–23 (2d Cir. 2019). Thus, due to the significant lapse in time between the statements and her alleged termination, Arroyo has not alleged a plausible retaliatory motive for her termination.[5]

Accordingly, Arroyo has failed to successfully allege a First Amendment retaliation claim.[6]

### B. Fourteenth Amendment Equal Protection Claims

*a. Arbitrator Selection*

Although Arroyo had alleged an Equal Protection Claim regarding the process by which an arbitrator is selected for teachers versus assistant principals and principals, she has since withdrawn this claim. Doc. 45 at 16 n.3. Defendant's motion is therefore granted for this claim.

*b. Selective Enforcement Claims*

The Fourteenth Amendment guarantees that "the state must treat similarly situated individuals similarly, in the absence of an adequate reason to distinguish between them." *Ramos v. Town of Vernon*, 353 F.3d 171, 174 (2d Cir. 2003). Courts begin their equal protection analysis "by ascertaining the appropriate level of [Constitutional] scrutiny."

---

[5] Arroyo has not taken the position that her placement in ATR was itself an act of retaliation. *See* Doc. 45 at 14 ("[Due to her ATR assignment,] there was no opportunity to retaliate against Plaintiff until her return in the fall of 2016 to the College Academy."); *see also id.* at 15 (arguing that the date Arroyo was "adversely affected" based on her protected speech was her termination). Thus, the Court does not address whether Arroyo could state a retaliation claim based on the ATR assignment alone.

[6] In Arroyo's opposition brief, she withdrew her claim concerning a violation of Article I of the New York State Constitution. Doc. 45 at 10 n.1.

*Id.* (citing *Dunn v. Blumstein*, 405 U.S. 330, 335 (1972)). The Second Circuit has held that "the threshold question for any analysis under the Equal Protection Clause is whether the highly deferential rational basis review applies, or instead whether the legislation involves a suspect class or a fundamental right resulting in the application of a stricter form of scrutiny." *Hayden v. Paterson*, 594 F.3d 150, 170 (2d Cir. 2010). If a court concludes that the government used a racial classification or was motivated by racial discrimination, then the court must review the government action under strict scrutiny. *Hunt v. Cromartie*, 526 U.S. 541, 546 (1999).

Arroyo alleges that her non-Dominican colleagues did not experience the same harassment or unfair treatment that she did. Doc. 35 at ¶ 37. Selective enforcement requires a showing of similarly situated individuals or groups who were treated differently. *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011). Among courts in this Circuit, it is unsettled whether selective enforcement cases require a high degree of similarity, or whether a "slightly less stringent" standard applies wherein plaintiffs must show that the comparators are "similarly situated in all material respects." *Id.* at 696 (internal quotation marks omitted) (quoting *Vassallo v. Lando*, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008)). As one court put it:

> The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely or necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

*Id.* at 696 (quoting *T.S. Haulers, Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455, 463 (E.D.N.Y. 2002)).

This Court previously held that "Arroyo fail[ed] to allege facts that any other teachers were similarly situated in all material respects . . . . In fact, Arroyo [did] not

13

allege any facts regarding any similarly situated teachers who are not members of her protected class." Doc. 24 at 31–32.  In her amended complaint, Arroyo alleges that "unlike with other teachers," the assistant principal would show up to her classes and be disrespectful; that Arroyo was mocked for her accent; that her classroom of many years was "taken and given to a Caucasian teacher" and generally that her "non Dominican colleagues did not experience[] the same harassment or unfair treatment that Plaintiff [did]." Doc. 35 ¶¶ 25, 26, 31–32, 37–38.  However, these conclusory claims are insufficient to state a selective enforcement claim.

In reference to her claims that "unlike with other teachers," she was subjected to visits to her classroom by the Assistant Principal, and that her "classroom was taken and given to a Caucasian teacher," Arroyo fails to provide information regarding the other teachers and whether they share her protected characteristics.  *See Picinich v. N.Y. Dep't of Educ.*, No. 16-CV-844, 2016 WL 11265651, at *8 (E.D.N.Y. Oct. 14, 2016) ("Here, [Plaintiff] alleges that [] a new female Latin Teacher [in Plaintiff's department] engaged in comparable conduct but that [the new teacher] did not receive the same unfavorable treatment.  Plaintiff's allegations are vague and conclusory and, even at this stage, are insufficient to show that [he] was similarly situated to [the new teacher].").  Arroyo identifies that the other teacher assigned her classroom did not share her race or national origin, but fails to include any additional information about that teacher (or any others) to show that they are similarly situated.  For example, Arroyo does not state what subject or level the other teachers taught, how many classes they had, how many students are in their classes, or any information regarding their observations or evaluations.[7]  *See id.* (holding that conclusory statements regarding how plaintiff was similarly situated to other teachers was insufficient to state a claim).

---

[7] Teachers employed by the DOE are evaluated through a number of methods, including formal and informal observations.  Doc. 41, Ex. D at 61–72.  Teachers are able to decide what type and how many observations they will be subject to based on their evaluations.  *Id.*  This information directly impacts the number of visits a teacher can expect to have in her classroom, and thus would impact whether a teacher was similarly situated.

Arroyo has failed to allege sufficient facts to indicate the other teachers were similarly situated. Therefore, Arroyo's selective enforcement claim is dismissed.

### C. Fourteenth Amendment Due Process Clause — "Stigma Plus"

Ordinarily, "[a] person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983." *Patterson v. City of Utica*, 370 F.3d 322, 329–30 (2d Cir. 2004). However, the Second Circuit has determined that a plaintiff can bring a stigma plus claim, alleging that the stigma suffered amounts to a constitutionally recognized deprivation of liberty without due process, if she successfully "allege[s] (1) the utterance of a statement about her that is injurious to her reputation, that is capable of being proved false, and that he or she claims is false, and (2) some tangible and material state-imposed burden . . . in addition to the stigmatizing statement." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (internal quotation marks and citations omitted).

To state a "stigma plus" claim, "[t]he defamatory statement must be sufficiently public to create or threaten a stigma; hence, a statement made only to the plaintiff, and only in private, ordinarily does not implicate a liberty interest." *Id.* An employee plaintiff must also allege that her former employer made statements "against [her] that might seriously damage [her] standing and associations in [her] community" and denied her of a chance to clear or redeem her reputation. *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972); *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630 (2d Cir. 1996) ("[W]hen the state fires an employee and publicly charges that she acted dishonestly or immorally, due process guarantees the employee an opportunity to defend her good name."). The statements and allegations must discuss the employee's inability to do a particular job and not simply state that an employee performed poorly. *See O'Neill v. City of Auburn*, 23 F.3d 685, 692 (2d Cir. 1994). "A plaintiff must allege that the defendant employers publicly attacked the professional competency of the plaintiff

and that the defendant employers publicized unfavorable reasons for plaintiff's dismissal." *White v. City of New York*, No. 13 Civ. 7156 (ER), 2014 WL 4357466, at *13 (S.D.N.Y. Sept. 3, 2014).

Arroyo's original complaint "failed to allege facts [showing] that the [Ineligible/Inquiry] list is made public to future potential employers. Neither 'does she assert that the [Ineligible/Inquiry] List disclosed the stigmatizing grounds for her dismissal or that inclusion on the List gives rise to a *per se* inference that plaintiff was terminated for a reason sufficiently "stigmatizing" to state a due process claim.'" Doc. 24 at 27 (quoting *McDonald v. Bd. of Educ.*, No. 01 Civ. 1991 (NRB), 2001 WL 840254, at *7 (S.D.N.Y. Jul. 25, 2001)). In her amended complaint, Arroyo has not included any additional information regarding either the nature of the list itself, or its dissemination to other potential employers. She relies on *Velez v. Levy*, 401 F.3d 75 (2d Cir. 2005) to argue that "[t]he defamatory statement need not actually 'create' an injury to plaintiff's reputation to be actionable; instead, the mere 'threat' of such injury is sufficient to satisfy the first prong of the stigma-plus test." Doc. 45 at 19. However, she does not allege what statements were made that would pose such a threat to her reputation. Without such allegations, Arroyo's argument boils down to the position that inclusion on the List *per se* states a claim for a stigma plus violation. However, the Court rejected this argument in its previous Opinion. Doc. 24 at 27–28.

Furthermore, Arroyo argues that publication is not strictly necessary to meet the requirements of a stigma plus claim, and cites *Knox v New York City Dept. of Educ.* in support. 924 N.Y.S.2d 389 (N.Y. App. Div. 2011). However, in that case, the plaintiffs alleged that the list had been disseminated outside of the NYC DOE to the Bronx County District Attorney's Office and the State Department of Education. *Id.* at 389. Arroyo makes no such allegations, and instead states only that dissemination occurred within the NYC Department of Education and "presumably" within the NYS Department of Education. Contrary to Arroyo's allegations, publication is a necessary component to

state a stigma plus claim. *See White v. City of New York*, No. 13 Civ. 7156 (ER), 2014 WL 4357466, at *13 (S.D.N.Y. Sept. 3, 2014) ("[B]ecause Plaintiff fails to allege facts indicating that the 'ineligible/inquiry' . . . list[ was] public to future employers, she fails to state a 'stigma plus' claim."); *Koehler v. New York City*, No. 04 Civ. 6929 (RMB), 2005 WL 3502042, at *3 (S.D.N.Y. Dec. 20, 2005) ("Plaintiff fails to allege that Defendants published stigmatizing statements. 'Stigmatizing statements by the government upon her discharge only implicate a liberty interest when there is also public disclosure.'" (quoting *Donato*, 96 F.3d at 631)).

Accordingly, the Court dismisses Arroyo's stigma plus due process claim.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 40, and enter judgment for Defendant.

It is SO ORDERED.

Dated:   September 20, 2021
         New York, New York

　　　　　　　　　　　　　　　　　　　　　　　EDGARDO RAMOS, U.S.D.J.